**KENNETH ROSELLINI (6047)**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
(973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff, Dennis Mazzetti*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS MAZZETTI, individually and on behalf of D.M. as the "Next Friend" of D.M. a minor, | CIVIL ACTION |
| | Case No. : |
|   Plaintiff, | JURY TRIAL DEMANDED |
|         v. | **COMPLAINT, JURY DEMAND and PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254** |
| THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY ("DCP&P") (formerly Division of Youth & Family Services), CHRISTOPER JAMES "CHRIS" CHRISTIE, in his individual and official capacities,  LISA VON PIER, in her official capacity as Director of DCP&P, ALLISON BLAKE, in her official capacity as the Commissioner of the Department of Children and Families, , in her individual capacity, BONNIE J. MIZDOL, in her individual capacity and official capacity, MARGARET FOTI, in her individual capacity and official capacity, VIRGINIA A. LONG, in her individual and official capacity, ELLEN BUCKWALTER, in her individual capacity, JOHN L. MOLINELLI, in his individual and official capacity, KIMBERLY ROBERTS, in her individual capacity, ERICA ZAPATA, in her individual capacity, and John Does 1-15, | |
|   Defendants. | |

     Plaintiff Dennis Mazzetti in the above-captioned matter, by and through his counsel of

record, for his cause of action against Defendants, states as follows:

## PARTIES and RELEVANT PERSONS

1. Plaintiff, Dennis Mazzetti is a resident of New Jersey currently residing in Elmwood Park, New Jersey, and has been a resident of New Jersey at all times relevant to this Complaint.

2. Plaintiff Dennis Mazzetti is the biological father, psychological father and the "Next Friend" of D.M.

3. D.M. is a minor child, aged seven, domiciled in Bergen County, New Jersey without any legal guardian or legal parent and has been Un-Constitutionally, and without jurisdiction, been made a Ward of the State of New Jersey;  D.M. is now, against his will and in violation of his liberty interests under the Constitution for the United States of America, in the wrongful custody of the Division of Child Protection and Permanency ("DCP&P") (formerly the Division of Youth and Family Services, hereinafter referred to at times throughout this complaint as "DYFS").

4. The actions of the Defendants in making D.M. a Ward of the State are in violation of D.M.'s Constitutional Rights and are harming him by forcing him to take the drug Ritalin, from which he had previously suffered negative physical and psychological side effects, harming his ability to function academically  (putting at risk his having to repeat the First Grade of Grammar School), and preventing him from residing under the Guardianship of, continuing his bond and freedom of association with, the Plaintiff, which D.M. has repeatedly expressed is his reasoned choice of guardian.

5. The Defendant, The Division of Child Protection and Permanency ("DCP&P") ("DYFS"), is New Jersey's child protection and child welfare agency within the Department of Children and Families.

6. The Defendant Lisa Von Pier ("Pier") is the current Director of DYFS and is liable for her actions in her official capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

7. The Defendant Allison Blake ("Blake") is the current Commissioner of the Department of Children and Families and is liable for her actions in her official capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

8. The Defendant Christopher James "Chris" Christie ("Christie" or "Governor Christie") is the 55th Governor of the State of New Jersey and during relevant times to this Complaint acted as a witness to events set forth in this Complaint is liable for his acts and omissions in his individual and official capacities done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

The Governor, by his actions, has acted in violation of the Plaintiff's Constitutional Rights, without jurisdiction, has facilitated and enabled DYFS to continuously and invidiously violate the rights of the Plaintiff, D.M., and others similarly situated as parents in the State of New Jersey, without consequence or enforcement of the Constitution for the United States of America.

9. Kathleen A. Lucas ("Lucas") is currently employed as a child protective services worker by DYFS and during relevant times to this Complaint and is liable for her acts and omissions in the pending related Complaint of *Mazzetti v. NJDCP&P*, Docket No.: 12-5347 (U.S.D.J. Newark Vicinage) in her individual capacity done under color of state law.  Kathleen A. Lucas is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

10. The Defendant Kimberly Roberts ("Roberts") is currently employed as a child protective services worker by DYFS and during relevant times to this Complaint and is liable for her acts and omissions in her individual capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

11. The Defendant Erica Zapata ("Zapata") is currently employed as a child protective

services worker by DYFS and during relevant times to this Complaint and is liable for her acts and omissions in her individual capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

12. Anna Severino ("Severino") is currently employed as a supervisor of DYFS child protective services workers and during relevant times to this Complaint and is liable for her acts and omissions in the pending related Complaint of *Mazzetti v. NJDCP&P*, Docket No.: 12-5347 (U.S.D.J. Newark Vicinage) in her individual capacity done under color of state law.  Anna Severino is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

13. Mary Weizel-Martin ("Martin") who, upon information and belief, is currently employed as a child protective services worker by DYFS and during relevant times to this Complaint and is liable for her acts and omissions in the pending related Complaint of *Mazzetti v. NJDCP&P*, Docket No.: 12-5347 (U.S.D.J. Newark Vicinage) in her individual capacity done under color of state law.  Mary Weizel-Martin is entrusted to protect the Constitutional rights of those she encounters and at

all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

14. The Defendant Ellen Buckwalter ("Buckwalter") who, upon information and belief, is currently a Deputy Attorney General in the State of New Jersey and during relevant times to this Complaint and acted as a witness to events set forth in this Complaint, is liable for her acts and omissions in her individual capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

15. The Defendant John L. Molinelli ("Molinelli") who, upon information and belief,  is currently the Bergen County Prosecutor in the State of New Jersey and during relevant times to this Complaint and acted as a witness to events set forth in this Complaint, is liable for his acts and omissions in his individual capacity done under color of state law, and has aided and abetted the Defendants by failing to prosecute the Defendant Kimberly Roberts after probable cause for assault and child endangerment was found against her in the Municipal Court of Elmwood Park, New Jersey.  This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law and acted in concert with one or more

of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

16. Susan M. Slaff ("Slaff") who, upon information and belief, is currently a Deputy Attorney General in the State of New Jersey and during relevant times to this Complaint and acted as a witness to events set forth in this Complaint, and is liable for her acts and omissions in the pending related Complaint of *Mazzetti v. NJDCP&P*, Docket No.: 12-5347 (U.S.D.J. Newark Vicinage) in her individual capacity done under color of state law. Susan M. Slaff is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions in violation of the Constitutional Rights of Plaintiff and D.M.

17. The Defendant Bonnie J. Mizdol ("Mizdol" or "Judge Mizdol") who, upon information and belief, is currently a Superior Court Judge sitting on the Superior Court of the State of New Jersey, Chancery Division, Family Part, as the Presiding Judge in the Bergen County Vicinage in the State of New Jersey and during relevant times to this Complaint, and acted as a witness to events set forth in this Complaint, is liable for her acts and omissions in her individual and official capacities done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their

actions. This Judge, by her actions, has acted in violation of the Plaintiff and D.M.'s Constitutional Rights without jurisdiction, has facilitated and enabled DYFS to continuously and invidiously violate the rights of the Plaintiff and D.M., and others similarly situated as parents in the State of New Jersey, without consequence or enforcement of the Constitution for the United States of America.

18. The Defendant Margaret Foti ("Foti" or "Judge Foti") who, upon information and belief, is currently a Superior Court Judge sitting on the Superior Court of the State of New Jersey, Chancery Division, Family Part, as a Judge in the Bergen County Vicinage in the State of New Jersey and during relevant times to this Complaint, and acted as a witness to events set forth in this Complaint, is liable for her acts and omissions in her individual and official capacities done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions. This Judge, by her actions, has acted in violation of the Plaintiff and D.M.'s Constitutional Rights without jurisdiction, has facilitated and enabled DYFS to continuously and invidiously violate the rights of the Plaintiff, and others similarly situated as parents in the State of New Jersey, without consequence or enforcement of the Constitution for the United States of America.

19. The Defendant Virginia A. Long, who upon information and belief, is the Chair of the Supreme Court of New Jersey Advisory Committee on Judicial Conduct and during relevant times to this Complaint, and acted as a witness to events set forth in this

Complaint, is liable for her acts and omissions in her individual and official capacities done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters in the consideration of Complaints for Unconstitutional Judicial Misconduct and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions. This Defendant, by her actions in failing to properly investigate the judicial misconduct of the Defendant Bonnie Mizdol and thereby aiding and abetting in Mizdol's violation of the Plaintiff and D.M.'s Constitutional Rights without jurisdiction, has facilitated and enabled DYFS to continuously and invidiously violate the rights of the Plaintiff, and others similarly situated as parents in the State of New Jersey, without consequence or enforcement of the Constitution for the United States of America.

20. Alice Schaeffer Nadelman ("Nadelman") who, upon information and belief, acted as a psychological expert for DYFS during relevant times to this Complaint, and is liable for her acts and omissions in the pending related Complaint of *Mazzetti v. NJDCP&P*, Docket No.: 12-5347 (U.S.D.J. Newark Vicinage) in her individual capacity done under color of state law. Alice Shaeffer Nadelman acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

21. Romana Kulikova, MD, who, upon information and belief, is a medical doctor practicing medicine at St. Joseph's Regional Medical Center in Paterson, New Jersey who, based on lies about the Plaintiff and his son D.M. provided to her by DYFS and

the Defendant Zapata, in November of 2014, has prescribed a form of the drug Ritalin to DM (who previously suffered side effects from the drug), against the wishes of Plaintiff, D.M. and the Mazzetti family, and has performed an improper Pediatric Neurological Evaluation of D.M. which will cause permanent harm to D.M. unless the Habeas Corpus Relief sought in this Complaint is granted and D.M. is released from the custody of DYFS.

22. John Does 1-15 to be named currently as fictitiously named defendants, who in their individual and/or official capacities are liable for their acts and omissions.

## JURISDICTION and VENUE

23. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 *U.S.C.* §§1331, 1333, 1343  and 1367 which confer original jurisdiction upon the Court on the grounds that the instant action arises under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, as amended, 42 *U.S.C.* §§1981, 1983, 1985, 1986 and 1988, and Title II of the Americans with Disabilities Act (42 *U.S.C.* §§12131-12165).

24. Venue in the New Jersey District is properly laid pursuant to 28 U.S.C. §1391, in so far as the following alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the claims of the Plaintiff, arose within the geographical limits of this District.

## FACTUAL BACKGROUND

25. On March 11, 2007, the child D.M. was born to Dennis Mazzetti, as the biological father, and C.M., as the biological mother.

26. C.M. and her husband (Plaintiff's twin brother and the biological uncle of D.M.), had

a previous case history with DYFS involving C.M.'s daughter.

27. D.M. was born with traces of cocaine in his system according to testing done at the hospital the day he was born.

28. As conceded by all parties to this action, Dennis Mazzetti had no knowledge that C.M. was using cocaine during any part of her pregnancy with D.M.

29. At the time of D.M.'s birth, C.M. was married to Dennis Mazzetti's identical twin brother (D.M.'s uncle), but they had been separated for well over a year.

30. C.M. and Dennis Mazzetti were openly together as a couple during this period of legal separation by C.M. and D.M.'s uncle (Dennis Mazzetti's twin brother).

31. Both Dennis Mazzetti's twin brother and Linda Mazzetti (D.M.'s paternal grandmother, former foster parent and deceased adoptive parent) had knowledge of this relationship.

32. At the time of D.M.'s birth, Dennis Mazzetti was residing with Linda Mazzetti.

33. At the time of D.M.'s birth, D.M.'s uncle was living with Linda Mazzetti as well.

34. At the time of D.M.'s birth, Dennis Mazzetti was placed on the birth certificate as D.M.'s father.

35. DYFS, Martin, Severino, and Slaff refused to honor the birth certificate and asserted that Dennis Mazzetti's twin brother, D.M.'s uncle, was D.M.'s father.  In fact, Slaff initially represented to the Court that she had investigated whether or not Dennis Mazzetti's name appeared on D.M.'s birth certificate and knowingly falsely represented to the Court that it was not.  In fact, Dennis Mazzetti's name was on the original birth certificate as D.M.'s father, and has been the only father listed on any birth certificate for D.M.

36. DYFS, Martin, Severino, and Slaff challenged Dennis Mazzetti's paternity of D.M. although they had no legal standing do so.

37. DYFS, Martin, Severino, and Slaff's challenging of Dennis Mazzetti's paternity served no legitimate purpose, and was done solely for the purpose of denying Dennis Mazzetti his fundamental constitutional and civil rights as a parent.

38. Because Dennis Mazzetti and D.M.'s uncle are identical twins, the DNA test that was performed was inconclusive as to who is D.M.'s father.

39. Dennis Mazzetti had no history of drug use, or child abuse and neglect, at the time of D.M.'s birth.

40. DYFS, Martin, Severino, and Slaff, fraudulently and with malice as against Dennis Mazzetti, refused to honor the birth certificate in March of 2007, and immediately proceeded to have D.M. removed from the hospital to be placed in a foster home.

41. DYFS, Martin, Severino, and Slaff interfered with Dennis Mazzetti's fundamental rights as a parent and interfered with Dennis Mazzetti's parental rights so that he has never had an opportunity to fully parent his child.

42. DYFS, Martin, Severino, and Slaff used the issue of paternity as a basis to improperly deny Dennis Mazzetti his parental rights.

43. Defendants refused to admit that Dennis Mazzetti was the biological father of D.M. until February 19, 2008, when D.M. was nearly a year old, for the sole improper purpose that they could assert sole supervision over D.M.

44. When DYFS did admit paternity in February of 2008, the evidence before the Court was unchanged from what it had been in March of 2007, proving that the Defendants denial of paternity and parental rights of Dennis Mazzetti served no legitimate

purpose.

45. DYFS, Martin, Severino, and Slaff immediately placed restrictions on Dennis Mazzetti's rights to visit with and raise his child, D.M.

46. D.M. was removed from Dennis Mazzetti's custody without any due process or fact finding hearing of any kind as to abuse or neglect of D.M. by Dennis Mazzetti, a jurisdictional requirement for DYFS's involvement.

47. As evidence of just how below the standards of due process Defendants actions against the Plaintiff have been, consider Current Directive #06-12, dated July 11, 2012, from Glenn A. Grant, J.A.D., Acting Administrative Director of the Courts of the State of New Jersey.  This Directive requires that a fact finding hearing take place in every case within 120 days after the child is removed from the home, and requires that there must be a finding as to whether or not DYFS has made reasonable efforts to prevent removal of the child and placement with a foster home.

48. In the within matter, not only was a fact finding hearing never held as to Dennis Mazzetti, DYFS, Martin and Severino never made any effort to prevent removal of the child and placement with a foster home.

49. In fact, DYFS, Martin and Severino actively sought removal of the child and placement with a foster home.

50. DYFS took custody of D.M. and blocked Dennis Mazzetti from obtaining assistance of counsel in that process, when Defendant Susan Slaff tore up Dennis Mazzetti's 5A public defender application in Court.

51. As evidence of just how below the standards of due process Defendants actions against the Plaintiff have been, consider Current Directive #06-12, dated July 11,

2012, from Glenn A. Grant, J.A.D., Acting Administrative Director of the Courts of the State of New Jersey.   This Directive requires that a 5A application be served on the defendant no later than the date of service of the Complaint an Order to Show Cause.

52. In the within matter, Martin, Severino, and Slaff not only failed to provide Dennis Mazzetti with a 5A public defender application by the time of service of the Complaint and Order to Show Cause, they actively blocked Dennis Mazzetti's effort to obtain counsel.

53. The Defendants Martin, Severino, and Slaff's actions in preventing Dennis Mazzetti from obtaining legal counsel resulted in a denial of legal representation to Plaintiff for several court appearances, an egregious and malicious denial of due process.

54. All Defendants, since D.M.'s birth, have conspired to deny Dennis Mazzetti's his fundamental rights as a parent and his Constitutional Rights under the Constitution for the United States of America, and are continuing to deny these rights to this day.

55. Several months after D.M. was born, DYFS, Martin, Severino, and Slaff placed D.M. with the child's paternal grandmother Linda Mazzetti.

56. As a condition of placing D.M. with Linda Mazzetti, instead of a stranger's foster home, DYFS, Martin, Severino, and Slaff required that Dennis Mazzetti and D.M's uncle move out of Linda Mazzetti's home.

57. Having no place else to stay, Dennis Mazzetti and D.M's uncle moved in with C.M. because it was their only available alternative.

58. After causing Dennis Mazzetti to move in with his twin brother and C.M., because he had nowhere else to stay, DYFS, Martin, Severino, and Slaff began a campaign of

harassment demanding that Dennis Mazzetti submit to random drug testing because he was living in a residence of known drug users—although DYFS was already involved in drug testing C.M.

59. In fact, Dennis Mazzetti had no history of drug use and was cleared by DYFS's drug use evaluation/screening procedures in March of 2007.

60. Martin went so far as to violate Dennis Mazzetti's rights of confidentiality pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) by repeatedly harassing Dennis Mazzetti's treating physician regarding his ability to submit to random urine screen drug testing, due to pain caused by his hernia condition.

61. At the time Dennis Mazzetti was working as a painter with his father, and also worked as a cable television installer.

62. In fact, the multiple random drug evaluations and procedures had no legitimate purpose except to harass Dennis Mazzetti.

63. In fact, the random drug evaluations contributed to Dennis Mazzetti's loss of employment during this period, because the frequent drug tests required Dennis Mazzetti to leave work for hours at a time and at unscheduled times.

64. During this time, Dennis Mazzetti was seeking treatment for hernia repair and treatment for a severely infected surgical mesh.

65. During this time, Dennis Mazzetti suffered from chronic pain and drainage from the infection.

66. Dennis Mazzetti did not receive proper medical treatment for his condition, and may have become permanently disabled as a result.

67. Plaintiff has filed a medical malpractice lawsuit against Randall Giles, D.O., Alan J. Sori, M.D. and St. Joseph's Regional Medical Center for the failure to properly treat his medical condition.

68. Defendants have asserted that Dennis Mazzetti's inability to independently parent his child, due to his inability to work because of his medical condition, is cause for termination of his parental rights.

69. Defendants failed to acknowledge that Linda Mazzetti, the paternal grandmother and proposed adoptive parent, is a resource of Dennis Mazzetti that was willing and able to help care for D.M. without the interference of the Defendants.

70. Defendants have caused Dennis Mazzetti to lose his parental rights in Superior Court of New Jersey, Bergen County Vicinage, Docket No FG-02-56-09 before the Honorable John A. Conte, J.S.C.

71. The Judge's reasoning for the termination of Dennis Mazzetti's parental rights was due to alleged potential harm, because Dennis Mazzetti, at the time, could not financially provide for his child without assistance from the paternal grandmother, Linda Mazzetti.

72. In terminating Dennis Mazzetti's parental rights, DYFS, Martin, Severino, and Lucas have committed fraud upon the Court by alleging that DYFS was granted care, custody and supervision of D.M. "due to incidents of abuse and/or neglect by . . . Dennis Mazzetti . . . ."

73. In fact, Dennis Mazzetti has never abused or neglected D.M.

74. In terminating Dennis Mazzetti's parental rights, DYFS, Martin, Severino, Lucas and Slaff maliciously committed fraud upon the Court and/or perjury by asserting that

"Dennis Mazzetti . . . failed . . . to plan for the future [of D.M.] although physically and financially able to do so."

75. In making this assertion, these Defendants knew that Dennis Mazzetti was suffering from chronic severe infections and from medical maltreatment of that infection.

76. In making this assertion, these Defendants knew that Dennis Mazzetti was not financially able to plan for the future of D.M. without the assistance of Linda Mazzetti or public assistance, and that Defendants had failed to provide any housing or employment services to Dennis Mazzetti—although it was their duty to do so at time.

77. In making this assertion, these Defendants knew that, in fact, their actions were the main cause of Dennis Mazzetti's inability to independently financially provide for D.M.

78. In fact, these Defendants made allegations against Dennis Mazzetti asserting facts regarding D.M.'s uncle that were not at all material to Dennis Mazzetti' parental rights in an effort to deny those parental rights by association.

79. In terminating Dennis Mazzetti's parental rights, DYFS, Martin, Severino, and Lucas have committed fraud upon the Court by alleging to the Court, or by omission influencing the Court to believe, that DYFS had provided Dennis Mazzetti with employment and housing services (as they were Court ordered to do) when in fact none were provided.

80. In terminating Dennis Mazzetti's parental rights, DYFS, Martin, Severino, and Lucas have committed fraud upon the and/or perjury by alleging that Dennis Mazzetti "abandoned  his minor child to the care of others" when they knew in fact that it was

their actions that removed D.M. from Dennis Mazzetti's custody.

81. In terminating Dennis Mazzetti's parental rights, Nadelman committed fraud upon the and/or perjury by lying about the time she spent evaluating Dennis Mazzeti, failing to provide Dennis Mazzetti with her notes and time records from the session and misrepresenting to the Court what occurred during that session.

82. In terminating Dennis Mazzetti's parental rights, DYFS, Martin, Severino, and Lucas have committed fraud upon the Court by alleging to Court, or by omission influencing the Court to understand, that DYFS had provided Dennis Mazzetti with employment and housing services, when in fact none were provided.

83. DYFS proceeded with terminating Dennis Mazzetti's parental rights despite him having successfully completed every parenting course, drug evaluation and drug testing that he was presented with by DYFS.

84. The one drug test which came up positive was a hair follicle test performed after DYFS had already began termination proceedings, by an out-of-state hair follicle testing service, which failed to maintain the sample it allegedly tested and failed to provide any evidence of the validity of its testing procedures. In fact, the testing procedure utilized is not acknowledged as valid for determining drug use by any federal agency.

85. Defendants continually falsified reports to assert false anonymous allegations of drug use by Dennis Mazzetti, even though no such reporting occurred and no such drug use existed.

86. Defendants have continued the conspiracy to deny Dennis Mazzetti's fundamental rights as parent through retaliation, because Dennis Mazzetti continued to fight for his

parental rights through legal appeals asserting his due process rights.

87. Defendants, without seeking any Court Order, asserted that that they had the right to terminate Dennis Mazzetti's visitation rights until disposition of Dennis Mazzetti's appeals.

88. Linda Mazzetti was continuously threatened with retaliatory action by the Defendants, specifically that if she would allow "too much" visitation with D.M by Dennis Mazzetti her ability to be a foster parent would be questioned by DYFS, and that D.M. would be placed with a stranger foster family—even though that would clearly not be in the best interests of D.M.

89. Defendants have retaliated against Dennis Mazzetti because of his assertion of due process rights and parental rights, as proved by the fact that Defendants continuously informed Linda Mazzetti, prior to her adoption of D.M., that Dennis Mazzetti could see D.M. as much as Linda Mazzetti wanted if he would have just dropped his appeals.

90. All evidence in the proceedings indicates that Dennis Mazzetti has a strong bond with his child.

91. All evidence indicates that Dennis Mazzetti spends an enormous amount of time with his son, D.M., participating in his care, and has very good relationship with his son.

92. Linda Mazzetti testified that D.M. cries in the middle of the night for his father Dennis Mazzetti.

93. DYFS's retaliatory purpose was demonstrated in an incident in the summer of 2010 when D.M. suffered from seizures which required overnight hospitalization and an MRI.

94. Dennis Mazzetti visited his son at the hospital during this hospitalization, and the nurse who was treating D.M. said that Dennis Mazzetti has a calming influence over his son so that D.M. was more trusting of the medical personal when he was present.

95. Rather than making an exception in their authority under the circumstances, DYFS told the paternal grandmother that her judgment as an adoptive parent would be questioned if she continued to allow Dennis Mazzetti to visit D.M. at the hospital.

96. DYFS went so far as to require hospital personnel to take extra precaution in identifying Dennis Mazzetti's twin brother (D.M.'s uncle) when he visited the hospital, to ensure that the Dennis Mazzetti could not see his child in a time of medical uncertainty regarding his son's health.

97. DYFS's actions in this regard are unacceptable, malicious and a clear violation of Dennis Mazzetti's Civil Rights. By preventing D.M.'s father from providing a calming and supportive presence for his son while he was hospitalized, DYFS posed an actual physical and psychological danger and/or neglect to this child's long term health and well-being.

98. In fact, Defendants were aware of Dennis Mazzetti's positive influence on D.M., since the very beginning of their involvement in D.M.'s life.

99. In fact, Dennis Mazzetti visited his child as soon as he was allowed to, and even brought to DYFS's attention the fact that D.M. was sick, as it turned out with a lung infection, when he was 5 months old, and Dennis Mazzetti provided as much comfort to D.M. as he could in ensuring that D.M. would receive and accept treatment.

100.    In fact, all testimony of Dennis Mazzetti's loving and caring parenting relationship with D.M. was so overwhelming and extensive, that the Law Guardian

offered to stipulate to it to move the trial along.

101.    Defendants continually attempted to chill Dennis Mazzetti's assertion of his parental rights by informing the paternal grandmother that he could see his child as much as he wanted if he would have just withdrawn his appeals.

102.    Defendants' continual retaliation and use of compulsive State authority to deny Dennis Mazzetti's rights so that Dennis Mazzetti is obstructed from caring for and bonding with his child has no legitimate purpose and is clearly retaliatory.

103.    DYFS's continued obstruction of Dennis Mazzetti's parental rights serves no legitimate purpose and is being done solely to harass and retaliate against Dennis Mazzetti for asserting his Civil Rights.

104.    Upon information and belief, DYFS has on prior occasions handled child abuse and neglect complaints in a manner that was violative of citizen's rights.

105.    Upon information and belief, DYFS has on prior occasions misrepresented factual allegations and anonymous reporting in order to violate citizen's rights.

106.    Upon information and belief, DYFS has on prior occasions knowingly misrepresented hearsay allegations in order to violate citizen's rights.

107.    In December of 2013, DYFS again began investigating and asserting jurisdiction over Plaintiff's son, even though there have never been any substantiated allegations of abuse or neglect.

108.    In fact, from January of 2014 to the present DYFS has continuously kept a case open for Plaintiff's son and has Un-Constitutionally asserted jurisdiction over him without the families' knowledge.

109.    During this time, under DYFS's supervision, Plaintiff's son was improperly

placed on a regiment of the prescription drug Ridalin, which caused harm to him and which has since been discontinued because it was not properly prescribed or monitored.

110.    DYFS's actions and role in this harm to Plaintiff's child have been covered up in the Verified Complaint filed by DYFS in the current case.

111.    There is further evidence of retaliation against Plaintiff for exercising his Civil Rights.

112.    During Linda Mazzetti's July 2014 hospital stay, DYFS again, without cause, began investigating the Mazzetti family, including Plaintiff's disabled adult brother who has resided at Linda Mazzetti's home and assisted with D.M.'s care, and who has been on the same prescription medications known to DYFS when the child was adopted in May of 2013.

113.    On June 27, 2014, Kenneth Rosellini, Esq., Plaintiff's attorney in the medical malpractice case concerning a hernia infection Plaintiff suffered from while his parental rights were being Un-Constitutionally interfered with by DYFS in 2009, asserted before the Bergen County Superior Court that the Mazzetti family and Plaintiff, as D.M.'s father, have been getting along well since Plaintiff's hernia infection has healed and Plaintiff has been able to care for his son.

114.    DYFS, through the Attorney General's Office, attended this hearing.

115.    Immediately thereafter DYFS's latest investigation into the Mazzetti family intensified, culminating in the illegal removal and kidnapping by DYFS of D.M. on July 1, 2014.

116.    On July 1, 2014, DYFS again asserted unlawful jurisdiction over the relationship

between the Plaintiff Dennis Mazzetti and his son, D.M., by unlawfully removing D.M. from his adoptive mother and paternal grandmother, Linda Mazzetti.

117. In that case, the Honorable Bonnie J. Mizdol, P.J.F.P. acted under the Color of the Superior Court of New Jersey, Bergen County Vicinage, without either subject matter jurisdiction or personal jurisdiction over Dennis Mazzetti, Linda Mazzetti or D.M., and Un-Constitutionally Prohibited Dennis Mazzetti from visitation with his biological son, without any notice or service of process to him personally and without any allegations against him whatsoever.

118. If Judge Mizdol is not prohibited from exercising Un-Constitutional Jurisdiction, Judge Mizdol will continue to issue Un-Constitutional Orders that will irreparably and permanently harm Dennis Mazzetti and his son without any adequate remedy at law.

119. For this reason, and the reasons set forth more fully below, Plaintiff is seeking legal and equitable remedies against Honorable Bonnie J. Mizdol, P.J.F.P. to prove to the People of the State of New Jersey that judges in the State of New Jersey can and will be held accountable for the unlawful exercise of jurisdiction, starting with the matter of *New Jersey's Division of Child Protection & Permanency ("D.C.P.&P."/" DYFS") v. L.M., et al.*, FN-02-55-15, in the New Jersey Superior Court, Bergen County Vicinage.

120. Dennis Mazzetti asserts these claims pursuant to the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments of the Constitution for the United States of America and pursuant to the Rights of the People of the State of New Jersey under the Common Law as retained by the People of the State of New Jersey under the Rights

of Sovereignty of all Americans since the American Revolution, in which, upon information and belief, Plaintiff's ancestors participated.

121. It is respectfully submitted that there is no lawful jurisdiction being maintained by Judge Mizdol, and the succeeding judge on the case, the Honorable Margaret M. Foti, J.S.C., and that there is no other adequate relief available to the Plaintiff other than to pursue the within Civil Rights Action by way of an Amended Complaint, which will protect Plaintiff's son, D.M. from irreparable harm and from the unlawful assertion of jurisdiction in the subject case which is being exercised for the purpose of retaliation against Plaintiff's exercise of his First Amendment Rights under the Constitution for the United States of America.

122. Without relief from this Court, Plaintiff's son D.M. will continue to suffer irreparable psychological and emotional harm, and there will be irreparable harm to the strong father-son bond that he has developed with Plaintiff.

123. Proof of the unlawful assertion of jurisdiction is the fact that Plaintiff's son was unlawfully seized by DYFS without due process or any notice of process, when caseworker Kimberly Roberts of DYFS seized him after stating to Plaintiff that DYFS could do whatever it wants to do without repercussion, that Plaintiff will never see his son again, and that there is nothing Plaintiff can do about it.

124. On Tuesday, July 1, 2014, the DYFS, without notice to his family, and without cause or any allegations of child abuse or neglect, seized seven year old D.M. from the Mazzetti family of Elmwood Park, New Jersey, with the aid of the Elmwood Park Police Department, who came in armed with the threat of force and several patrol cars that lit up the entire neighborhood.

125.   When asked why she was there, the caseworker Kimberly Roberts only indicated that she had been before the Honorable Bonnie Mizdol, Presiding Family Division Judge in Bergen County, New Jersey earlier that day, but refused to provide any paperwork or explanation for her conduct.

126.   In that moment the child's uncle was forcibly pushed aside, after asserting that DYFS had no right to take the child, and D.M. was physically seized without explanation by a DYFS caseworker.

127.   D.M. was terrified and crying for Plaintiff, his father.

128.   The caseworker took D.M., and his older sister, into custody and placed them in an unknown foster home.

129.   DYFS, aided and abetted by Ellen Buckwalter, D.A.G., claimed in its Verified Complaint in New Jersey Superior Court, Count IV, Paragraph jjjjj, that Linda Mazzetti, the child's paternal grandmother and adoptive mother, was "no longer able to care for [D.M.] due to her hospitalization."

130.   DYFS knew this to be false, as Linda Mazzetti had already, based on DYFS's recommendation, stated that D.M. would be in summer camp during the day and that she or the child's family members would be able to care for him at all other times.

131.   At no time did DYFS ever inform Linda Mazzetti that her plan to care for her child would, in the opinion of DYFS, somehow place D.M. in "imminent danger" so that DYFS would assert the right to remove the child from his family on an emergent basis.

132.   Judge Mizdol furthered fabrication of DYFS's justification for the emergent removal stating that "Ms. Mazzetti told the Division worker she did not have the

energy or ability to care for [D.M.] anymore as he was such an active [child]."

133.    Linda Mazzetti never made such a statement, and this finding directly contradicts the statement contained in the Verified Complaint of DYFS, which was the only evidence before the Court.

134.    Since at least June 27, 2014, DYFS was aware that Plaintiff was taking care of his son while Linda Mazzetti and one of Plaintiff's brothers who also assists with caring for Plaintiff's son, was in the hospital.

135.    DYFS, knowing this, did not take any action against Plaintiff or his son, as Plaintiff's son, who is in the first grade, is healthy, and well cared for.

136.    Linda Mazzetti expressed to DYFS that she wished that Plaintiff take care of his son until she returned from the hospital.

137.    As Linda Mazzetti had the right as a parent to decide who should take care of D.M. while she was in the hospital and Plaintiff was giving excellent care supervising his son, DCP&P had no right to assert Un-Constitutional *Parens Patriae* jurisdiction over Plaintiff's son and seize him in violation of the First and Fourth Amendments of the Constitution for the United States of America.

138.    After briefly being able to speak to his distraught son by phone, the DYFS and Judge Mizdol, Un-Constitutionally and without any notice or allegations as to Plaintiff, issued an Order on July 3, 2014, ceasing all visitations between D.M., and Plaintiff, his father, and DCP&P has asserted that no visitation in this case means no contact whatsoever.

139.    Plaintiff was not served with any papers in connection with this proceeding.

140.    Both Plaintiff, and his lawyer, Kenneth Rosellini, Esq., were told that Plaintiff

was not a part of this proceeding and had no right to appear.

141.    Judge Mizdol had no jurisdiction, either subject matter or personal, to issue such an Order, and, upon information and belief, Judge Mizdol will continue to assert unlawful jurisdiction over Plaintiff and his son which is Un-Constitutional.

142.    It is clear not only that the best interests of D.M. have not been considered, but that D.M., who is old enough to express himself, has been completely ignored while DYFS has done nothing but abuse and neglect this child.

143.    With the exception of one phone call and at the Repast for his paternal grandmother's funeral (gone into in more detail *infra*), Plaintiff has been unable to communicate with his child since he was Un-Constitutionally seized on July 1, 2014.

144.    The only knowledge Plaintiff has of his current condition is from D.M.'s previous visitations with his grandmother, Linda Mazzetti, and from the Law Guardian, who have informed Plaintiff that D.M. wants to be with Plaintiff, his father, and that he does not understand why he can't be with his father.

145.    The actions by DYFS, Kimberly Roberts, Buckwalter, Judge Mizdol, and Judge Foti (who stated on the record that Plaintiff's counsel should call her when the federal court makes a decision in the civil rights case, when she was informed of Plaintiff's concerns about DYFS retaliation) constitute blatant retaliation for Plaintiff's exercise of his Constitutional Rights and pursuing a Civil Rights Case against DYFS.

146.    In the previous DYFS case, Judge Mizdol failed to provide Plaintiff with a court appointed attorney at the initial hearing and DYFS and Judge Mizdol, without jurisdiction to do so, Un-Constitutionally challenged Plaintiff's paternity to his son— which was later acknowledged by DYFS without any additional evidence and

approved by the Court—proving that the sole reason for the challenge of paternity was to improperly assert jurisdiction over Plaintiff's child, and then interfered with a later proceeding by taking the Judge off the bench in the middle of trial.

147.    DYFS proceeded to falsify evidence and fraudulently asserted that Plaintiff abused and neglected his son.

148.    DYFS then forced Plaintiff to seek public assistance and then used his financial condition against him as a reason to terminate his rights.

149.    The fact that Plaintiff's health at the time of the termination of his rights was poor (due to medical malpractice) and Plaintiff was unable to financial provide for his child without the assistance of his family, was Un-Constitutionally used as a justification to terminate his rights.

150.    The fact the financial justification was used to terminate Plaintiff's rights in being unable to obtain a separate household in 2009 from Linda Mazzetti is expressly stated in Judge Mizdol's Order as the only finding against him in the current proceeding.

151.    Plaintiff had maintained a separate household right across the street from Linda Mazzetti, his mother, so that he could care for his son.

152.    On July 17, 2014, Plaintiff presented to the Governor of the State of New Jersey, Chris Christie, through his attorney and in person, a petition for the investigation and ceasing of the continued Constitutional Violations of DYFS and Judge Mizdol, including a petition for Governor Christie to seek the impeachment of Judge Mizdol.

153.    The Petition fully informed Governor Christie of the ongoing Un-Constitutional conduct of DYFS and Judge Mizdol.

154.    Governor Christie has failed and/or refused to investigate the wrongful conduct of

DYFS and Judge Mizdol, and by doing so has tacitly approved their conduct and aided and abetted them in their continuing Constitutional violations against the Plaintiff and D.M.

155.   On or about September 7, 2014 the Plaintiff presented a Complaint to the Supreme Court of New Jersey Advisory Committee on Judicial Conduct, Chaired by the Defendant Virginia Long, to seek an investigation of Judge Mizdol's Unconstitutional conduct.

156.   On or about November 7, 2014, the Supreme Court of New Jersey Advisory Committee on Judicial Conduct, Chaired by the Defendant Virginia Long found that there was "no basis to charge Judge Mizdol with judicial misconduct" despite Judge Mizdol's clear violation of the Constitution for the United States of America and the Code of Judicial Conduct of the American Bar Association, as amended by the New Jersey Supreme Court, and the failure of Judge Mizdol to uphold Canon 1 that a "Judge Should Uphold the Integrity and Independence of the Judiciary".

157.   In or about August of 2014, DYFS continued to fabricate and/or misrepresent Dennis Mazzetti's relationship with his son to a Child Placement Review Board in Bergen County.

158.   Mr. Mazzetti, who has been a caretaker of his son Daniel and has cared for him every day, was not considered by the Board because of misrepresentations of fact made by caseworker Erica Zapata.

159.   Mr. Mazzetti was not afforded notice of the Child Placement Review Board's meeting, and only Erica Zapata, a DYFS caseworker, appears to have attended the meeting from among the parties to this case.

160.    As Linda Mazzetti had been ill, the Board should have made accommodation for her to participate, but did not.  In addition, the Board does not appear to be aware of the issues concerning the Civil Rights case which Mr. Mazzetti has pending against the DYFS, which includes issues regarding the retaliation of DYFS against Mr. Mazzetti and his family.

161.    The Child Placement Review Board also does not appear to be aware of the fact that the caseworker who illegally took Daniel as part of an emergency taking, has been charged with assault and child endangerment in connection with her actions that day.

162.    Finally, the Board was misled by the caseworker, as the document indicates that the biological mother has "KLG" over D.M., when in fact she surrendered her rights (which were ultimately terminated).

163.    Linda Mazzetti passed away on September 13, 2014.

164.    When Dennis Mazzetti asserted to DYFS that it should make arrangements for D.M. to be present for the wake, funeral, burial and repast for Linda Mazzetti on Tuesday, September 15, 2014, DYFS refused, and only agreed to allow D.M. to be present for one hour of the wake and the funeral—then immediately to be transported back to the foster home, without any opportunity to spend with his family to be comforted and to reflect on the passing of his legal grandmother and adoptive mother.

165.    Not only did DYFS refuse Dennis Mazzetti's request, DYFS refused to recognize Dennis Mazzetti's legal and Constitutional Standing under the First Amendment to request that DYFS arrange that D.M. associate with his family for the days services for Linda Mazzetti.

166.    Dennis Mazzetti was forced to apply for an emergent order, and then to apply to the Appellate Division of the Superior Court of New Jersey on an emergent basis to obtain that Order—so that D.M. could spend the day with his family, against the wishes of DYFS.

167.    The Appellate Division of State of New Jersey recognized that Dennis Mazzetti has standing, based, *inter alia*, on the changed circumstances due to the passing Linda Mazzetti

168.    The Appellate Court decided that "Defendant [Dennis Mazzetti] has standing and may move to vacate the order terminating his parental rights pursuant to [New Jersey Court] Rule 4:50-1 based on changed circumstances.  *In Guardianship of J.N.H.*, 172 N.J. 440 (2002)."

169.    As set forth *infra*, Judge Foti refused honor this ruling, and on October 31, 2014 not only denied Dennis Mazzetti the right to intervene and bring a motion to vacate the termination of parental rights judgment, but refused Dennis Mazzetti access to a psychological evaluation which the Court required as a condition to visit with his son, denied him any further representation by counsel in the case, and refused to allow Dennis Mazzetti to introduce evidence or participate (with the exception of providing a brief statement) in a "Best Interests of the Child Hearing" for which Judge Foti is proceeding without lawful jurisdiction and without any sense of urgency for the Best Interests of the Child, as the hearing will not commence until late February of 2014.

170.    Not only has Judge Foti proceeded without lawful jurisdiction, she extorted from Linda Mazzetti and David Mazzetti's counsel alleged consent to jurisdiction under the duress of fabricated allegations of Child Abuse, while at the same time refusing to

hear the Plaintiff's motion for dismissal for lack of jurisdiction, which has been pending since July.

171.    The DYFS dismissed the Title 9 action against L.M. and D.M. on August 26, and that there has been no substantiation of the abuse and/or neglect allegations which were fabricated by DYFS as a pretext for the emergency taking of D.M. on July 1; in fact those allegations were withdrawn.

172.    Judge Foti has refused to acknowledge the overwhelming evidence of fabrication of the basis for jurisdiction and instead has aided and abetted DYFS to use the fraudulent basis to assert unlawful jurisdiction over D.M.

173.    Dennis Mazzetti asserted by motion filed in July that he has a right to intervene in this case and this matter must be dismissed for lack of jurisdiction, but Judge Foti has failed and/or refused to schedule that motion to date as to dismissal.

174.    The dismissal of the Title 9 Action confirms Mr. Mazzetti's assertions that DYFS acted without proper jurisdiction when it seized D.M. (Caseworker Kimberly Roberts, has been charged after a finding of probable cause by the Elmwood Park Presiding Municipal Judge with Assault and Child Endangerment in connection with the taking, and those charges are currently under review by the Bergen County Prosecutor's Office).

175.    The Defendant John L. Molinelli, the Bergen County Prosecutor in the State of New Jersey, has failed to prosecute the Defendant Kimberly Roberts in a timely manner, and has therefore aided and abetted the misconduct of DYFS so that the Defendants actions against the Plaintiff are those of persons who believe that they are above the law and who may violate the Constitutional Rights of Americans with

impunity.

176. It appears on the face of the August 26 Order that "all parties consent to jurisdiction pursuant to Title 30". This assertion has come as a shock to the Mazzetti family, as at no time did anyone in the Mazzetti family consent to the Court's jurisdiction and DYFS 's continued jurisdiction over D.M.--to the contrary they have always wanted the matter dismissed and for D.M. to be back home.

177. Plaintiff seeks an investigation into why this provision ended up in the August 26 Court Order, including a copy of the full audio transcripts from the August 26 hearing and every hearing regarding D.M. going back to the original unlawful kidnapping in March of 2007. Perhaps most disturbing is the Court's contradictory finding that all parties "consent to jurisdiction" under Title 30, but then also finding that D.M. is a ward of the Court under *N.J.S.A.* 30:4C-12.

178. If indeed there was "voluntary" consent to jurisdiction under Title 30 then it would have been under *N.J.S.A.* 30:4C-11, not *N.J.S.A.* 30:4C-12, which is the involuntary provision under Title 30.

179. "Unlike Section 11, whereby a family voluntarily consents to Division care, custody, or supervision in recognition that a child, or family members, need the Division's services, Section 12 provides the Division with the means to facilitate services to children in need when the parent is absent or unwilling to consent." *See New Jersey Dept. of Children and Families, Div. of Youth and Family Services v. I.S.,* 214 N.J. 8 (2013).

180. The August 26 Order, therefore, is void, and does not establish the jurisdiction of this Court over D.M., particularly in light of the fact that Dennis Mazzetti's motions

to intervene and dismiss for lack of jurisdiction were pending when it was made and that no required fact finding hearing under Title 30 was legally waived.

181.   In addition, there was no finding in the August 26 order that jurisdiction under Title 30 was in the best interests of the child (only that he was allegedly "in need of services") and no six month limitation on the order as is required in a *N.J.S.A.* 30:4C-12 proceeding.

182.   Plaintiff currently has moved back into Linda Mazzetti's former home and is in the process of making that his residence so that D.M. may return home.

183.   Therefore, Judge Mizdol, Judge Foti, DYFS, and Buckwalter, have all acted without any lawful jurisdiction over D.M. and Dennis Mazzetti in the Superior Court matter since July 1, 2014.

184.   Because these Defendants acted without lawful jurisdiction, any applicable judicial or quasi-judicial immunity defenses must not attach, and these Defendants must be held liable for their unlawful violations of the Plaintiff and D.M.'s Constitutional Rights.

185.   These Defendants, including DYFS and Judge Foti have continued to act without lawful jurisdiction even after being notified by Plaintiff that Linda Mazzetti chose Dennis Mazzetti to be the Testamentary Guardian for D.M. and that Dennis Mazzetti was seeking to be appointed Guardian in the Superior Court of New Jersey, Chancery Division, Probate Part, the only lawful court to have jurisdiction over a Testamentary Guardianship matter in the State of New Jersey.

186.   Not only have the Defendants, including DYFS and Judge Foti, continued to act without lawful jurisdiction over D.M., they have refused Dennis Mazzetti due process

of law by barring his attorney from participating in their court proceedings over D.M., barring Dennis Mazzetti from access to the psychological evaluation of him that DYFS demanded (which he submitted to in October of 2014), and barring Dennis Mazzetti from submitting evidence in connection with this proceeding.

187.   It was only after Dennis Mazzetti received a return date on the Order to Show Cause for December 12 that DYFS (allegedly as per Buckwalter's statement before the Chancery Court in a proceeding on December 1, 2014) has conceded that Plaintiff should be a full participant in the Guardianship proceedings as to D.M.

188.   This concession, however, is not due to an acknowledgement of Dennis Mazzetti's lawful due process rights, but is rather a veiled attempt to maintain unlawful jurisdiction of the guardianship proceedings as to D.M. before Judge Foti in secret proceedings so as to protect the unlawful actions of DYFS from public scrutiny.

189.   DYFS's unlawful assertion of jurisdiction as to D.M. is causing irreparable harm to D.M. and has delayed his returning to his family until February of 2014 at the earliest, meaning for the first time in his life D.M. will be spending the Christmas and New Year's Holidays away from his family, as he has already missed Thanksgiving.

190.   The only lawful proceeding is the action pending for Testamentary Guardianship pending and filed by Dennis Mazzetti in the Superior Court of the State of New Jersey, Chancery Division, Probate Part, *In the Matter of Linda Mazzetti*, Docket No.: P-404-14, Bergen County Vicinage.

191.   Linda Mazzetti left a self-proving Codicil to the Will as to Testamentary Guardian Appointment as to the person and property for her adopted minor child and

grandchild, Daniel Lee Mazzetti, dated September 11, 2014.

192.    The September 11, 2014 Codicil is consistent with her testamentary intent as to the Guardianship of the person and property of her adopted minor child and grandchild, Daniel Lee Mazzetti as expressed by her previously executed March 23, 2014 Codicil.

193.    The September 11, 2014 Codicil is also consistent with Linda Mazzetti's June 25, 2013 letter about the relationship between her and Dennis Mazzetti concerning his care of Daniel Lee Mazzetti.

194.    As Linda Mazzetti states in her Codicil, "D.M.  and Dennis Mazzetti have a loving bond as father and son, and this appointment will provide the greatest stability and continuity of care for [D.M.], as Dennis Mazzetti is of high moral fitness and ability to perform as guardian of the person and property for Daniel Lee Mazzetti."

195.    Dennis Mazzetti is the biological and psychological father of D.M..

196.    Plaintiff, Dennis Mazzetti has a strong bond with his son D.M., and he knows Plaintiff to be and calls him "Dad".

197.    D.M. has known Plaintiff as his Dad his whole life, and Dennis Mazzetti has moved across the street from where D.M. resided with Linda Mazzetti (until July 1, 2014), so that Plaintiff could be there for Daniel Lee Mazzetti and raise him along with Linda Mazzetti.

198.    Plaintiff Dennis Mazzetti has been there for his son every single day, helping care for him, watching over with him and playing with him.

199.    Plaintiff Dennis Mazzetti had worked with Linda Mazzetti to watch over D.M. when he played outside, helped feed him, helped him with his education and his

homework, and made sure that he is well cared for.

200.    D.M. has often slept over at Dennis Mazzetti's home across the street when he is on vacation or over the holidays.

201.    D.M. has always been well-cared for by Linda Mazzetti, Plaintiff Dennis Mazzetti and the rest of his family.

202.    Dennis Mazzetti has asserted that he should be appointed as Testamentary Guardian of D.M. consistent with Linda Mazzetti's wishes.

203.    DYFS has refused to recognize this Testamentary Guardianship proceeding as the only lawful proceeding, and has instead failed to cooperate with the Court Appointed Guardian Ad Litem by refusing to provide her or Dennis Mazzetti with the necessary documents to review the status of D.M.

204.    DYFS's actions are consistent with its publicly state goals to expand its jurisdiction over New Jersey's families in its "New Jersey 2009 Child and Family Services Review Program Improvement Plan" which indicates on page 16 that it is seeking to receive additional powers from the Courts (as opposed to seeking it from the legislature) where it states that one of its goals is to "Litigate to win for DYFS the exclusive right to determine whether and when to file a TPR [Termination of Parental Rights] complaint . . . ."

205.    DYFS, in its actions, seeks absolute authority, beyond its Constitutional limits, to act under so called *Parens Patriae* jurisdiction.

206.    This report clearly demonstrates that DYFS's resources are primarily put towards termination of parental rights and not towards reunification of families or services for abused or neglected children.

207.    On page six of the report it is states as follows:

> **Strengthening Court/Agency partnership efforts to support permanency**
> This strategy area will address the CFSR findings regarding the need to improve timely goal selection, timely TPR [Termination of Parental Rights] filing and finalization, and timely permanency for children and families through increased collaboration between the Agency and the Courts.

208.    The fact that the report refers to a "Court/Agency partnership" helps demonstrate why there are due process violations against parents and how Judges Foti and Mizdol Aid and Abet DYFS in the violation of parental rights in the State of New Jersey.

209.    The Courts, as an independent branch of government, should be a check on the exercise of power by DYFS (which is under the executive branch of the State of New Jersey).

210.    DYFS's own statistical measure demonstrate that its true purpose is to take as much power over children as it can under its *Parens Patriae* jurisdiction and to place children in foster homes in order to obtain more funding from the State and the United States Department of Health and Human Services, as DYFS actively and intentionally destroys the parent/child bond for its own purposes in order to increase DYFS instigated adoptions.

211.    DYFS's 2009 Report uses a "Strength Rating" percentage success rate by, in each group of parent-child cases studied, declaring a successful case as a positive strength, divided by the total cases (without stating why or how this was determined).

212.    DYFS's own "Strength Rating" proves that the so-called "services" it provides to family are, in fact, not designed to reunify and assist family in need, but are in fact utilized to separate children from their families and place them in foster care.

213.    For example "Assuring sufficient efforts to support the relationship of the child in

care with his parents" receives a lowly 36% Strength rating. (p. 25; S-2); and this is a reduction from 2004 from a 61% rating. (See Comparison Report page 2).

214.    For example, "Supporting timely reunification or other permanency" receives a 58% Strength rating. (p. 25; S-2).

215.    For example, Caseworker Visits with Parents receives a 31% Strength Rating. (p. 39; C-13)

216.     The actions of Judge Foti and DYFS therefore, constitutes a blatant action to violate Article IV, Section of the Constitution for the United States of America, which states that the United States shall guarantee to every state in this union a republican form of government . . . .

217.    The actions of Governor Christie, Judge Mizdol, Retired Judge Long, Judge Foti, Prosecutor Molinelli and DYFS demonstrate beyond any reasonable doubt, that in the State of New Jersey, DYFS has been ceded *Parens Patriae* authority which no State calling itself a Republic can endure, and DYFS is therefore an Un-Constitutional threat to every family in State of New Jersey and  all the individual liberties recognized as to the People in the Constitution for the United States of America.

218.    Defendants, in refusing to provide material information regarding the current DYFS proceedings involving D.M. to Plaintiff, the person best situated to protect the Constitutional Rights of D.M., the Defendants have held D.M. as a Ward of the State of New Jersey, in the custody of DYFS, against D.M.'s will so that he is endangered of being permanently harmed both physically and mentally.

219.    Plaintiff recently learned that Romana Kulikova, MD, who, upon information and belief, is a medical doctor practicing medicine at St. Joseph's Regional Medical

Center in Paterson, New Jersey who, based on lies about the Plaintiff and his son D.M. provided to her by DYFS and the Defendant Zapata, in November of 2014, has prescribed a form of the drug Ritalin to DML (who previously suffered side effects from the drug), against the wishes of Plaintiff, D.M. and the Mazzetti family, and has performed an improper Pediatric Neurological Evaluation of D.M. which will cause permanent harm to D.M. unless the Habeas Corpus Relief sought in this Complaint is granted and D.M. is released from the custody of DYFS.

220.    The lies contained in the report of Dr. Kulikova include allegations that Plaintiff was using drugs when D.M. was born, which is false and in fact has never even been alleged against the Plaintiff by DYFS or anyone else.

221.    The lies contained in the report of Dr. Kulikova include allegations that D.M. was "removed from the care of his grandmother by DYFS for possible drug use and neglect", in fact these allegations were fabricated, known to be false by DYFS at the time and have since been withdrawn by DYFS.

222.    The lies contained in the report of Dr. Kulikova include the statement that D.M.'s father merely had "visitations" when in fact the Plaintiff was heavily involved in the parenting of D.M. including participating in helping D.M. with his education and his homework, which helped D.M. graduate from kindergarten.

223.    D.M.'s current foster family, according to the Report, has observed "Problems with homework" in the current foster home of D.M. after acknowledging that (at the time which Plaintiff was involved helping D.M.) in November of 2013 D.M.'s academic "performance fell primarily within the average range".

224.    The lies contained in the report of Dr. Kulikova include allegations that D.M.'s

"father's twin brother, had documented PCP and opiates in his system at the time of [D.M.'s] removal from the biological family", which was part of the fabricated allegations of DYFS against Linda Mazzeti and Plaintiff's "non-twin" brother, which have since been withdrawn.

225.    The report of Dr. Kulikova indicates that D.M. "wrote 'I miss my dad and my dad's twin brother'", the only specific written statement of D.M. referenced in the report, is consistent with D.M.'s previous statements that he wants to live with Plaintiff and is being held in the custody of DYFS against his will.

226.    The report of Dr. Kulikova indicates that D.M. "is struggling in school without pharmacological interventions" and that D.M. "currently has no accommodations in school".

227.    Because of the material omissions and fraudulent misrepresentations made to Dr. Kulikova by Defendants DYFS and Zapata about the Plaintiff, Dr. Kulikova was not made aware of the fact that the reasons that D.M. was successful in completing kindergarten and obtaining average aptitude in November of 2013 was due to the assistance of Plaintiff.

228.    As a result, D.M. has, against his will, been placed on a regiment of Methylphenidate/Ritalin (in the form of Metadate CD) while acknowledging that D.M. had previously suffered negative side-effects from such treatment.

229.    As a result of the lies and fabrications of DYFS and Zapata, Dr. Kulikova has prescribed the medication Metadate CD without the knowledge that Linda Mazzetti decided that D.M. would not receive such medication and that Plaintiff Dennis Mazzetti then, and now, does not want D.M. to be on such medication.

## FIRST CLAIM FOR RELIEF

## 42 U.S.C.A. §1983 - VIOLATION OF FOURTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, LISA VON PIER, ALLISON BLAKE, GOVERNOR CHRISTIE, MARGARET FOTI AND BONNIE MIZDOL

230.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 229, above, as though fully set forth here.

231.    The Defendants, The Division of Child Protection and Permanency (formerly the Division of Youth and Family Services, "DYFS"), Lisa Von Pier and Allison Blake are charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, and training, and disciplining and controlling child protective service workers under their command, including Anna Severino, Kathleen A. Lucas, Mary Weizel-Martin, Kimbery Roberts and Erica Zapata.

232.    This responsibility includes promulgation and enforcement of rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse.

233.    On information and belief, Defendants DYFS, Kara P. Wood and Allison Blake, failed to promulgate adequate rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and further failed to instruct, discipline and train in the appropriate methods for handling and investigating allegations of child abuse without resorting to threats and abuse of process.

234.    On information and belief, Defendants DYFS, Kara P. Wood and Allison Blake, established through tacit authorization or explicit instruction a policy or custom of allowing DYFS workers to commit abuse of process, including, but not limited to

threatening Linda Mazzetti as a potential foster parent with the loss of custody of D.M. to strangers and refusing to recognize Dennis Mazzetti as the Testamentary Guardian for D.M. upon Linda Mazzetti's passing.

235.    Governor Christie, Judge Mizdol, Judge Foti, Retired Judge Long, and Prosecutor Molinelli, as set forth *supra*, have enabled, aided and abetted DYFS to violate the rights of D.M., Dennis Mazzetti and other parents similarly situated in the State of New Jersey with impunity.

236.    These policies were enacted and enforced with deliberate indifference to the constitutional rights of D.M., Dennis Mazzetti other parents similarly situated in the State of New Jersey.

237.    Dennis Mazzetti and D.M. have been harmed by such policy.

238.    Such policy is violative of D.M. and Dennis Mazzetti's due process rights under the Fourth Amendment, which states in pertinent part that no person shall "be deprived of life, liberty, or property, without due process of law . . ." and the Fourteenth Amendment, which states in pertinent part that no State may "deprive any person of life, liberty, or property, without due process of law . . .", to the Constitution of the United States of America.

239.    This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to cruel and unusual punishment and a deprivation of life and liberty under 42 *U.S.C.* Section 1983.

240.    D.M. has expressed to the Court appointed Law Guardian, Craig Robin, that he wants to live with his father, Dennis Mazzetti.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Lisa Von Pier, Allison Blake, Chris Christie, Margaret Foti, and Bonnie Mizdol, jointly and severally:

    A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DYFS workers to refrain from abuse of process.

## SECOND CLAIM FOR RELIEF

**42 U.S.C.A. §1983 & §1986 - VIOLATION OF SIXTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS BY THE DIVISION OF CHILD PROTECTION AND PERMANENCY, GOVERNOR CHRISTIE, LISA VON PIER, MARGARET FOTI, BONNIE MIZDOL, AND ALLISON BLAKE**

241.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 240 above, as though fully set forth here.

242.    On information and belief, Defendants, The Division of Child Protection and Permanency, Lisa Von Pier and Allison Blake failed to properly hire, supervise, train, discipline, and control DYFS workers under their command, including Defendants Anna Severino, Mary Weixel-Marin and Kathleen Lucas, and failed to insure compliance with the laws, rules, and regulations regarding the use and abuse of process in child abuse investigations; that failure has resulted in a policy or custom of inadequate training, supervision, and/or discipline.

243.    On information and belief, Defendants The Division of Child Protection and Permanency, Governor Christie, Lisa Von Pier and Allison Blake's custom of failing to properly hire, supervise, train, discipline, and control child protective services workers under their command, including Anna Severino, Mary Weixel-Martin, Kathleen Lucas, Kimberly Roberts, and Erica Zapata and their failure to insure

compliance with the laws, rules, and regulations prohibiting the abuse of process amounts to deliberate indifference to the rights of persons with whom the child protective services workers come into contact, including the rights of Plaintiff in this case.

244.    Defendants The Division of Child Protection and Permanency, Governor Christie, Lisa Von Pier and Allison Blake custom and policy of allowing abuse of process and their failure to properly hire, supervise, train, discipline, and control child protective services workers under their command, including Anna Severino, Mary Weixel-Martin, Kathleen Lucas Kimberly Roberts, and Erica Zapata was so reckless or grossly negligent that misconduct involving the abuse of process was inevitable.

245.    Defendants Bonnie Mizdol and Margaret Foti have, as a policy, refused to allow for due process rights as to D.M., Dennis Mazzetti and other parents so similarly situated.

246.    By virtue of this policy and conduct, D.M. and Dennis Mazzetti' rights under the Sixth Amendment, which states in pertinent part that persons "shall enjoy the right to a speedy and public trial . . .  and to have the Assistance of Counsel for his defence", and Fourteenth Amendment,  which states in pertinent part that no State may "deprive any person of life, liberty, or property, without due process of law . . .", to the Constitution of the United States of America and 42 *U.S.C.* Section 1983 have been violated.

247.    Defendants' neglect, aid and refusal to prevent and/or rectify infringement of the constitutional rights of D.M. and Plaintiff constitute a violation of the Civil Rights Act, Section 1986.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Lisa Von Pier, Allison Blake, Chris Christie, Margaret Foti and Bonnie Mizdol, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DYFS workers to refrain from abuse of process.

### THIRD CLAIM FOR RELIEF

### 42 U.S.C.A. § 1985 - CONSPIRACY TO VIOLATE CIVIL RIGHTS BY DEFENDANTS GOVERNOR CHRIS CHRISTIE, MARGARET FOTI, BONNIE MIZDOL, VIRGINIA A. LONG, KIMBERLY ROBERTS, ERICA ZAPATA, ELLEN BUCKWALTER, AND JOHN L. MOLINELLI

248.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 247, above, as though fully set forth here.

249.    Defendants Governor Christie, Ellen Buckwalter, Judge Margaret Foti, Judge Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated.

250.    On information and belief, this meeting of the minds can be proven through Defendants incidents of abuse of process and from the repeating of that conduct in an effort to deny Dennis Mazzetti his rights of due process.

251.    These conspiracies constituted and continue to constitute ongoing violations of 42 *U.S.C.* Section 1985.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris"

Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and

B) Punitive Damages in the amount of $50,000,000.00; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and

E) Interest; and

F) For such other relief as the Court may determine to be appropriate.

G) For such other relief as the Court may determine to be appropriate.

### FOURTH CLAIM FOR RELIEF

**42 U.S.C.A. §1983 - VIOLATION OF DUE PROCESS AND EQUAL PROTECTION RIGHTS BY DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, CHRISTOPHER JAMES "CHRIS" CHRISTIE, MARGARET FOTI, BONNIE MIZDOL, ELLEN BUCKWALTER, KIMBERLY ROBERTS, ERICA ZAPATA, VIRGINIA A. LONG AND JOHN L. MOLINELLI**

252. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 251, above, as though fully set forth here.

253. The acts and/or omission of Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, on this case were performed under color of law and deprived Dennis Mazzetti of his Fifth ("nor be deprived of life, liberty, or property, without due

process of law"), Sixth ("shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defence"), Eighth (no "cruel and unusual punishments inflicted"), and Fourteenth Amendment ("deprive any person of life, liberty, or property, without due process of law . . ." and "no state shall ... deny to any person within its jurisdiction the equal protection of the laws") rights under the United States Constitution to due process, compulsory process, equal protection, and freedom from interference with his fundamental rights as a parent without due process of law.

254.     By virtue of this policy and conduct, D.M. and Dennis Mazzetti's rights under the Sixth Amendment, and Fourteenth Amendment to the Constitution of the United States of America, have been violated.

255.     Defendants' acts and omissions furthermore interfered with Dennis Mazzetti's fundamental rights to privacy and freedom from excessive interference with raising a family.

256.     Defendants' acts and/or omissions were a moving force behind an objectively unreasonable abuse of process against D.M. and Dennis Mazzetti resulting in the above-referenced constitutional violations.

257.     The acts and/or omission of defendants in this case were performed under color of law and deprived D.M. and Dennis Mazzetti of their Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution to due process, equal protection.

258.     Defendants' acts and omissions furthermore interfered with Dennis Mazzetti's fundamental rights to privacy and freedom from excessive interference with raising a

family.

259.   This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to cruel and unusual punishment and a deprivation of life and liberty under 42 *U.S.C.* Section 1983.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and

B) Punitive Damages in the amount of $50,000,000.00; and

C)  Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and

E) Interest; and

F) For such other relief as the Court may determine to be appropriate.

G) For such other relief as the Court may determine to be appropriate.

## FIFTH CLAIM FOR RELIEF 42 U.S.C.A. §1983

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, CHRISTOPHER JAMES "CHRIS" CHRISTIE, MARGARET FOTI, BONNIE MIZDOL, ELLEN BUCKWALTER, KIMBERLY ROBERTS, ERICA ZAPATA, VIRGINIA A. LONG AND JOHN L. MOLINELLI

260.   Plaintiff incorporates by reference the allegations contained in paragraphs 1

through 259, above, as though fully set forth here.

261.    Any and all acts and omissions of Defendants, Chris Chrstie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Kathleen A. Lucas, Anna Severino, Mary Weizel-Martin, Susan M. Slaff, Alice Schaeffer Nadelman alleged in this complaint constitute actions or omissions under the color and pretense of the laws, statutes, ordinances, regulations, customs, and usage of DYFS.

262.    These Defendants owed a duty as agents or employee of DYFS and/or the State of New Jersey, to protect and serve the public, including Plaintiff and those similarly situated.

263.    Under the circumstances as they existed in this case these Defendants had a duty to not commit abuses of process and to not threaten Plaintiff and/or Linda Mazzetti.

264.    Defendants were acting under color of state law, instituted and followed policies, procedures in a manner that directly resulted in the objectively unreasonable abuse of process against Plaintiff Dennis Mazzetti and D.M. resulting in injury.

265.    Defendants in acting under color of state law, acted with deliberate and unreasonable conduct in violation of clearly established law of which a reasonable child protective services worker should have known.

266.    In these above-stated actions, Defendants caused D.M. and Plaintiff to be deprived of rights, privileges, and immunities, as those rights are secured under the First ("Congress shall make no law . . . abridging the freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"), Fourth (no person shall "be deprived of life, liberty, or property,

without due process of law . . .” ), Sixth (“"shall enjoy the right to a speedy and public trial . . .  and to have the Assistance of Counsel for his defence”), Eighth (no “cruel and unusual punishments inflicted”), Eighth (no “cruel and unusual punishments inflicted”), and Fourteenth Amendment (“deprive any person of life, liberty, or property, without due process of law . . .” and “no state shall ... deny to any person within its jurisdiction the equal protection of the laws”) Amendments to the United States Constitution.

267.   In these above-stated actions, Defendants caused Plaintiff and D.M. to be deprived of their rights, privileges, and immunities to be free from excessive interference with family relationships and to due process, as those rights are secured under the Fourth and Fourteenth Amendments to the United States Constitution.

268.   Defendants also caused Dennis Mazzetti and Linda Mazzetti to be deprived of their rights to speak truthfully about the Defendants’ conduct without fear of reprisal and retaliation in violation of the First Amendment to the United States Constitution.

269.   As a direct and proximate result of the acts and omissions described in this complaint, Defendants, The Division of Child Protection and Permanency, Christopher James “Chris” Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli are liable  in damages to Dennis Mazzetti for deprivation of his rights under 42 *U.S.C.A.* §1983.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James “Chris” Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, molded by the Court to maximize

the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and

B) Punitive Damages in the amount of $50,000,000.00; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and

E) Interest; and

F) For such other relief as the Court may determine to be appropriate.

G) For such other relief as the Court may determine to be appropriate.

### SIXTH CLAIM FOR RELIEF

**42 U.S.C.A. §1983 - RETALIATION FOR PROTECTED ACTIVITY DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, CHRISTOPHER JAMES "CHRIS" CHRISTIE, MARGARET FOTI, BONNIE MIZDOL, ELLEN BUCKWALTER, KIMBERLY ROBERTS, ERICA ZAPATA, VIRGINIA A. LONG AND JOHN L. MOLINELLI**

270.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 269, above, as though fully set forth here.

271.   Plaintiff has pursued avenues of appeal to preserve his parental rights and made complaints about DYFS's conduct in this case.

272.   This activity by Plaintiff is protected by the United States Constitution, specifically, the First Amendment, which states in pertinent part that "Congress shall make no law . . .  abridging the freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances" and Fourteenth Amendment to the Constitution, which states in pertinent part that "no state shall ... deny to any person within its jurisdiction the equal protection of the

laws."

273.    Defendants' conduct in threatening to remove D.M. from the care of his family and place him with a stranger foster family if Dennis Mazzetti continues to pursue his rights against DYFS was done solely in retaliation for Plaintiff's exercise of his rights of due process and his First Amendment rights in communicating seeking investigation of Defendants' actions.

274.    The above-described acts done by the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli were in excess of any authority granted them by law, and were without justification or excuse in law.

275.    These acts are a blatant effort to punish Plaintiff for seeking due process relief against the events at issue in this case and for seeking recovery for his damages, and to intimidate him in his litigation of his rights.

276.    Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli willfully, knowingly, and purposely, with the specific intent of depriving Plaintiff and D.M. of their rights.

277.    The acts of Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli did in fact deny Plaintiff and D.M. of their rights as those rights are secured in the First and Fourteenth Amendments to the United States Constitution and in 42 U.S.C.A. §1983.

278.    As a result of the actions of Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelliin retaliating against Plaintiff in opposition to defendants' unlawful practices, Plaintiff Dennis Mazzetti has been damaged and has incurred great emotional distress, mental anguish, undue hardship, humiliation, inconvenience, and loss of enjoyment of life.

279.    As a further direct and proximate result of the above-described unlawful conduct of Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, Plaintiff will be required to expend money for legal costs and to secure recovery for damages incurred, in an amount not yet ascertained.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A)  Damages in the amount of $10,000,000.00; and

B)  Punitive Damages in the amount of $50,000,000.00; and

C)   Awarding counsel fees to Plaintiff's legal counsel; and

D)  Awarding Costs of Suit; and

E) Interest; and

F) For such other relief as the Court may determine to be appropriate; and

G) Damages for Pain and Suffering.

## SEVENTH CLAIM FOR RELIEF
## (AMERICANS WITH DISABILITIES ACT)
## DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, CHRISTOPHER JAMES "CHRIS" CHRISTIE, MARGARET FOTI, BONNIE MIZDOL, ELLEN BUCKWALTER, KIMBERLY ROBERTS, ERICA ZAPATA, VIRGINIA A. LONG AND JOHN L. MOLINELLI

280.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 279, above, as though fully set forth here.

281.    Defendants have refused to provide Plaintiff with services to protect his civil rights and have used his disabilities as a means to deprive him of those rights.

282.    Because of the actions of the Defendants, Plaintiff has been regarded as someone who is unable to care for his child.

283.    Defendants failed to provide any service or accommodation for disability that Dennis Mazzetti has suffered as a result of his hernia infection and instead violated Plaintiff's rights, removing his child from his care.

284.    By virtue of the foregoing acts, Defendants have violated Plaintiff's rights under Title II of the Americans with Disabilities Act (42 *U.S.C.* §§12131-12165), and as a result which Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris" Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, molded by the Court to maximize

the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

     A)  Damages in the amount of $10,000,000.00; and

     B)  Punitive Damages in the amount of $50,000,000.00; and

     C)   Awarding counsel fees to Plaintiff's legal counsel; and

     D)  Awarding Costs of Suit; and

     E)  Interest; and

     F)  For such other relief as the Court may determine to be appropriate; and

     G)  Damages for Pain and Suffering.

**EIGHTH CLAIM FOR RELIEF**
**(PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254)**
**DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY,**
**CHRISTOPHER JAMES "CHRIS" CHRISTIE, MARGARET FOTI, BONNIE MIZDOL,**
**ELLEN BUCKWALTER, KIMBERLY ROBERTS, ERICA ZAPATA, VIRGINIA A.**
**LONG AND JOHN L. MOLINELLI**

285.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 284, above, as though fully set forth here.

286.    Defendants have refused to provide a lawful jurisdictional basis for the continuing lawful custody and detention of Dennis Mazzetti's biological son, D.M.

287.    Dennis Mazzetti demands, in his capacity as the biological parent, psychological parent, and the "Next Friend" of D.M., that the Defendants demonstrate lawful jurisdiction and custody over D.M., and when they cannot then release D.M. to Dennis Mazzetti's lawful custody as is required under the Constitution for the United States of America through a Writ of Habeas Corpus under 28 *U.S.C.* §2254.  *See Jenicek ex rel. J.J. v. Sorenson Ranch Sch., Utah*, No. CIV. 14-4422 SRC, 2014 WL 7332039 (D.N.J. Dec. 16, 2014).

288.    This Complaint for a Writ of Habeas Corpus actually involves the concerns of the real party in interests, D.M., who is being held by DYFS against his will in violation of his Constitutional Rights and to the permanent detriment of his physical and psychological health as set forth *supra*, including risk of side effects from psychological medication which has been improperly prescribed him, loss of academic and social ability/functionality and the damage to his bond with his family, particularly the Plaintiff, as D.M., for the first time in his life, is spending the Christmas and New Year's Holiday away from his family.

289.    D.M. has been held in custody of DYFS, as a Ward of the State of New Jersey, in violation of the Constitution for the United States of America since July 1, 2014, as a significant restraint on D.M.'s liberty not shared by the public generally which has been caused by the conspiracy of Defendants DYFS, Zapata, Buckwalter, Christie, Foti, Mizdol, Long and Molinelli acting under color of law.

290.    D.M., the real party in interest for purposes of Habeas Corpus Relief, cannot prosecute habeas petition as he is a Ward of the State of New Jersey in DYFS custody and is being denied his choice of counsel.

291.    Plaintiff, Dennis Mazzetti, has a significant relationship with D.M. as his biological father, psychological father, and the "Next Friend" of D.M..

292.     Plaintiff, Dennis Mazzetti is truly dedicated to best interests of D.M., on whose behalf he seeks a Writ of Habeas Corpus.

**WHEREFORE**, Plaintiff, Dennis Mazzetti, respectfully demands judgment against the Defendants, The Division of Child Protection and Permanency, Christopher James "Chris"

Christie, Margaret Foti, Bonnie Mizdol, Ellen Buckwalter, Kimberly Roberts, Erica Zapata, Virginia A. Long and John L. Molinelli, jointly and severally, for:

A) Habeas Corpus Relief under 28 *U.S.C.* §2254, demanding that Defendants demonstrate lawful custody of D.M. by DYFS and the New Jersey Superior Court, and then, failing to do so, release D.M. to the guardianship of the Plaintiff Dennis Mazzetti.

### DAMAGE CLAIMS AS AGAINST ALL DEFENDANTS

### PUNITIVE DAMAGES

293.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 292 above, as though fully set forth here.

294.   In addition to compensatory damages, Plaintiff hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiff's civil rights, as alleged in this complaint.

295.   The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including Plaintiff.

296.   Defendants committed the acts and omissions alleged in this complaint and subjected plaintiff to improper treatment that caused Plaintiff to suffer emotional distress so severe that no person should be expected to endure it.

297.   Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

298.   The recovery of punitive damages is permitted under the federal civil rights

statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case.

299.   This instance of reckless and callous indifference to Plaintiff's safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that must not be tolerated.

## ATTORNEY'S FEES

300.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 300, above, as though fully set forth here.

301.   As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A. §1988 for those violations covered by the Civil Rights Act.

## DAMAGES

302.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 301, above, as though fully set forth here.

303.   The acts and omissions of defendants as set forth above have resulted in injury to Dennis Mazzetti.

304.   By virtue of these injuries, Plaintiff Dennis Mazzetti is entitled to the following damages from all defendants:

a)   Expenses associated with defense of his parental rights; and

b)   Mental and emotional pain and suffering; and

c) Humiliation and sociological distress; and

d) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DYFS workers to refrain from abuse of process; and

e) Compensatory Damages in the amount of $10,000,000.00; and

f) Punitive damages in $50,000,000 or a reasonable amount that is sufficient to adequately punish all defendants and to deter future conduct of the type alleged in this complaint; and

g) The costs of this action, attorney's fees, and such other and further relief as this Court deems just and proper.

Dated:  December 30, 2014

KENNETH ROSELLINI, ESQ. (6047)
Attorney for Plaintiff

I certify that the foregoing statements are true and where stated so are true upon information and belief.  I am aware that if any of the foregoing is willfully false, I am subject to punishment.

DENNIS MAZZETTI

Dated:  December 30, 2014

**JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey, Newark Vicinage.

Dated: December 30, 2014

KENNETH ROSELLINI, ESQ. (6047)
Attorney for Plaintiff

**TRIAL COUNSEL DESIGNATION**

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.