## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF NEWARK

|  |  |  |
|---|---|---|
| _____ | : | HON. KEVIN MCNULTY, U.S.D.J. |
| DENNIS MAZZETTI, | : |  |
|  | : |  |
| Plaintiff, | : | Civil Action No. 2:14-cv-08134 |
| v. | : | (KM-MAH) |
|  | : |  |
| THE NEW JERSEY DIVISION OF | : |  |
| CHILD PROTECTION AND | : | Civil Action |
| PERMANENCY ("DCP&P") | : |  |
| (formerly Division of Youth & | : |  |
| Family Services), et al. | : |  |
|  | : |  |
| Defendants. | : |  |
| _____ |  |  |

---

**NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

---

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 119
Trenton, New Jersey 08625-0119
(609) 292-8150
Susan.Scott@dol.lps.state.nj.us

Attorney for Defendants New Jersey Division of Child Protection and Permanency; Christopher Christie; Lisa Von Pier; Allison Blake; Bonnie J. Mizdol; Margaret Foti; Virginia A. Long; Ellen Buckwalter; John L. Molinelli; Kimberly Roberts and Erica Zapata

Susan M. Scott
Deputy Attorney General
    On the Brief

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT...........................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS.......................2

STANDARD OF REVIEW

     A. Motion To Dismiss The Complaint For Lack
        of Subject Matter Jurisdiction Pursuant
        To Fed. R. Civ. P. 12(b)(1) ......................12

     B. Motion To Dismiss The Complaint For
        Failure To State A Claim Upon Which
        Relief Can Be Granted Pursuant To Fed. R.
        Civ. P. 12(b)(6) .................................14

ARGUMENT

  POINT I

     PLAINTIFF'S COMPLAINT IS BARRED BY THE
     ROOKER-FELDMAN DOCTRINE...............................15

  POINT II

     PLAINTIFF'S COMPLAINT IS ALSO BARRED BY THE
     YOUNGER ABSTENTION DOCTRINE..........................17

  POINT III

     PLAINTIFF'S CLAIMS AGAINST STATE DEFENDANTS
     MUST BE DISMISSED BECAUSE STATE AGENCIES
     AND STATE EMPLOYEES IN THEIR OFFICIAL
     CAPACITIES ARE NOT "PERSONS" AMENABLE TO
     SUIT UNDER 42 U.S.C. §§ 1983, 1985 or 1986
     AND PLAINTIFF'S CLAIMS ARE BARRED BY THE
     ELEVENTH AMENDMENT...................................21

     A. Plaintiff's Complaint Against State
        Defendants Is Barred By The Eleventh
        Amendment .......................................22

i

B. The Division and Individual Defendants In
Their Official Capacities Are Not
"Persons" Amenable to Suit Under 42
U.S.C. §§ 1983, 1985, OR 1986 and
Therefore Plaintiff's Claims Against
State Defendants Must Be Dismissed. ...............24

POINT IV

THE COMPLAINT SHOULD BE DISMISSED BECAUSE
THE STATE DEFENDANTS ARE IMMUNE FROM SUIT...........27

A. The Doctrine Of Absolute Judicial
Immunity Bars Any Claims That Plaintiff
May Have Against Judge Mizdol And Judge
Foti ..............................................27

B. Honorable Virginia A. Long, Associate
Justice Is Immune From Suit Under N.J.
Ct. R. 2:15-22 ....................................29

C. Prosecutor Molinelli Is Entitled To
Absolute Prosecutorial Immunity ..................30

D. Defendants Roberts, Zapata And Buckwalter
Are Protected By Absolute Immunity From
Plaintiff's Claims ...............................32

E. Alternatively, Defendants Are Entitled To
Qualified Immunity ...............................34

POINT V

PLAINTIFF'S ADA CLAIM AGAINST INDIVIDUAL
STATE DEFENDANTS IS BARRED AS IMPERMISSIBLE
CLAIMS AGAINST AN INDIVIDUAL.........................37

POINT VI

PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED
BECAUSE PLAINTIFF WAS NOT DENIED MEANINGFUL
ACCESS TO ANY PROGRAM, BENEFIT OR SERVICE...........38

<u>POINT VII</u>

PLAINTIFF'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 MUST BE DENIED...........................................40

CONCLUSION...................................................41

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

<u>PAGE</u>

*Alabama v. Pugh*,
   438 U.S. 781 (1978).........................................22

*Alsbrook v. Arkansas*,
   529 U.S. 1001 (2000).......................................38

*Alsbrook v. City of Maumelle*,
   184 F.3d 999 (8th Cir. 1999)...............................38

*Anspach v. City of Philadelphia*,
   503 F.3d 256 (3d Cir. 2007)................................14

*An-Ti Chai v. Michigan Technological Univ.*,
   493 F. Supp. 1137 (W.D. Mich. 1980).......................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................14, 35, 36

*Behrens v. Pelletier*,
   516 U.S. 299 (1996).......................................35

*Blanciak v. Allegheny Ludlum Corp.*,
   77 F.3d 690 (3d Cir. 1995)................................25

*Bradley v. Fisher*,
   80 U.S. 335 (1872)........................................28

*Brady v. Michelin Reifenwerke*,
   613 F. Supp. 1076 (D. Miss. 1985).........................22

*Briscoe v. LaHue*,
   460 U.S. 325 (1983)...................................27, 33

*Brown v. U.S. Steel Corp.*,
   2010 U.S. Dist. LEXIS 115503 (W.D. Pa. Oct. 29, 2010)......13

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993).......................................32

*Burlington Coat Factory Sec. Litig*,
  114 F.3d 1410 (3d Cir. 1997)................................. 15

*Butz v. Econmou*,
  438 U.S. 478 (1978)........................................ 28

*Calloway v. Boro of Glassboro Dep't of Police,*
  89 F. Supp. 2d 543 (D.N.J. 1000)........................... 38

*Camero v. Kostos*,
  253 F. Supp. 331 (D.N.J. 1966)............................. 15

*Campbell v. City of San Antonio*,
  43 F. 3d 973 (5th Cir. 1995)............................... 15

*Cate v. Oldham*,
  7 F.2d 1176 (11th Cir. 1983)............................... 22

*Clark v. Clabaugh,*
  20 F.3d 1290 (3d Cir. 1994)................................ 26

*College Savings Bank v. United States of America*,
  948 F. Supp. 400 (D.N.J. 1996)............................. 23

*D.M. v. N.J. D.Y.F.S.,*
  ___ U.S. ___, No. 12-6166, 2012 U.S. LEXIS 8435
  (Oct. 29, 2012) ............................................ 5

*D.M. v. N.J. D.Y.F.S.,*
  ___ U.S. ___, No. 12-6166, 2013 U.S. LEXIS 381
  (January 7, 2013) .......................................... 5

*Davis v. Grusemeyer*,
  996 F.2d 617 (3d Cir. 1993)................................ 31

*Diet Drugs Prods. Liab. Litig.*,
  282 F.3d 220 (3d Cir. 2002)................................ 13

*Ernst v. Child & Youth Servs. of Chester Cnty.*,
  108 F.3d 486 (3d Cir. 1997)........................... 33, 34

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005) ................................... 16, 17

*Farber v. City of Paterson*,
    440 F.3d 131 (3d Cir. 2006)............................... 25

*Fernandez v. Stack*,
    2006 U.S. Dist. LEXIS 17601 (D.N.J. 2006)................. 26

*Ferri v. Ackerman*,
    444 U.S. 193 (1979)..................................... 28

*Flesch v. E. Pa. Psychiatric Inst.*,
    434 F. Supp. 963 (E.D. Pa. 1977)......................... 25

*Flight Sys., Inc. v. Elec. Data Sys.*,
    112 F.3d 124(3d Cir. 1997)............................... 15

*Forsyth v. Kleindienst*,
    599 F.2d 1203 (3d Cir. 1979)............................. 31

*Gittlemacker v. Prasse*,
    428 F.2d 1 (3d Cir. 1970)................................ 36

*Goodson v. Maggi*,
    797 F. Supp. 2d 587 (W.D. Pa. 2011)...................... 26

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000).............................. 13

*Great Western Mining & Mineral Company v. FoxRothschild*,
    615 F.3d 159 (3d Cir. 2010).............................. 17

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..................................... 35

*Hunter v. Bryant*,
    502 U.S. 224 (1991)..................................... 35

*Imbler v. Pachtman*,
    424 U.S. 409 (1976)................................. 30,31,32,33

*Kentucky v. Graham*,
    473 U.S. 159 (1985)......................................... 23

*Kulwicki v. Dawson*,
    969 F.2d 1454 (3d Cir. 1992)................................ 31

*Lehman v. Lycoming County Children's Servs. Agency*,
    458 U.S. 502 (U.S. 1982)................................... 40

*Lum v. Bank of Am.*,
    361 F.3d 217 n.3 (3d Cir. 2004)............................ 15

*Malley v. Briggs*,
    475 U.S. 335 (1986)........................................ 34

*Mazzetti v. N.J. D.C.P.P.*,
    Civil Action No. 12-5347................................... 6

*McClary v. O'Hare*,
    786 F.2d 83 (2d Cir. 1986)................................. 23

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
    298 U.S. 178 (1936)........................................ 13

*Meyer v. New Jersey*,
    46 F.2d 1252 (3d Cir. 1972)................................ 22

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982)........................................ 18

*Miller v. Rutgers*,
    619 F. Supp. 1386 (D.N.J. 1985)............................ 23

*Mireles v. Waco*,
    502 U.S. 9 (1991).......................................... 27

*Moore v. Simms*,
    442 U.S. 415 (1979)........................................ 20

*Moore v. Sims*,
     442 U.S. 415 (1979)........................................ 17

*Morse v. Lower Merion School Dist.*,
     132 F.3d 902 (3d Cir. 1997)............................... 14

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
     549 F.2d 884 (3d Cir. 1977)............................... 12

*New Orleans Pub. Serv., Inc. v.
     Council of City of New Orleans*, 491 U.S. 350 .............. 18

*O'Neill v. City of Philadelphia*,
     32 F.3d 785 (3d. Cir. 1994)............................ 19, 20

*Oran v. Stafford*,
     34 F. Supp. 2d 906 (D.N.J. 1999)........................... 14

*Pearson v. Callahan*,
     ___ U.S. ___, 129 S. Ct. 808 (2009)................... 34, 35

*Pennhurst State School and Hosp. v. Halderman*,
     465 U.S. 89 (1984)..................................... 22, 23

*Pierson v. Ray*,
     386 U.S. 547 (1967)........................................ 28

*Quern v. Jordan*,
     440 U.S. 332 (1979)........................................ 22

*Quintal v. Volk*,
     2000 U.S. Dist. LEXIS 13498 (E.D.Pa. Sept. 21, 2000)....... 31

*Robinson v. Fauver*,
     932 F. Supp. 639 (D.N.J. 1996)............................. 26

*Rolo v. City Investing Co. Liquidating Trust*,
     155 F.3d 644 (3d Cir. 1998)................................ 31

*Santiago v. N.Y. St. Dep't of Corr. Servs.*,
    725 F. Supp. 780 (S.D.N.Y. 1989)............................ 26

*Saucier v. Katz*,
    533 U.S. 194 (2000)........................................ 34

*Simmsparris v. Neary*,
    Civil Action No. 10-5492, 2011 U.S. Dist. LEXIS 65493...... 21

*Smolow v. Hafer*,
    353 F. Supp. 2d 561 (E.D. Pa. 2005)........................ 13

*Stump v. Sparkman*,
    435 U.S. 349 (1978)........................................ 28

*Thomas v. Independence Township*,
    463 F.3d 285 (3d Cir. 2006)................................ 35

*Tyler v City of Manhattan*,
    849 F. Supp. 1429 (D.C. Kan. 1994)......................... 39

*United Bhd. Of Carpenters & Joiners v. Scott*,
    463 U.S. 825 (1983)........................................ 25

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)......................................... 25

*Younger v. Harris*,
    401 U.S. 37 (1971)..................................... 18, 19

## STATE CASES

**PAGE**

*Cashen v. Spann*,
   66 N.J. 541, 545-47 (1974)................................. 28

*Delbridge v. Schaeffer*,
   238 N.J. Super. 323 (Law Div. 1989)............... 28, 33, 34

*K.D. v. Bozarth*,
   313 N.J. Super. 561 (App. Div. 1998)...................... 28

*N.J. D.C.F. v. D.M.*,
   210 N.J. 218 (2012)......................................... 5

*N.J. D.Y.F.S. v. D.M.*,
   Docket No. A-2509-09T3, slip op. at 2, 2012 N.J. Super.
   Unpub, LEXIS 120 (App. Div. Jan. 18, 2012) ................. 3

## FEDERAL STATUTES

**PAGE**

28 U.S.C. § 1257.............................................. 16

28 U.S.C. § 2254................................. 1, 12, 40, 41

42 U.S.C. § 1983............. 1, 2, 7, 21, 22, 24, 25, 26, 28, 32

42 U.S.C. § 1985................... 1, 2, 7, 21, 24, 25, 26, 36

42 U.S.C. § 1986........................... 1, 2, 7, 21, 24, 26

42 U.S.C. § 12131.......................... 1, 7, 37, 38, 39, 40

## STATE STATUTES

**PAGE**

N.J. Stat. Ann. 30:4C-15.1................................. 3, 5

x

**FEDERAL   RULES**

**PAGE**

Fed. R. Civ. P. 12(b)(1)............................... 2, 12, 14

Fed. R. Civ. P. 12(b)(6)................................... 2, 14

**STATE RULES**

**PAGE**

N.J. Ct. R. 2:15-22................................... 2, 29, 30

**FEDERAL CONSTITUTION**

**PAGE**

U.S. Const., Amend. XI....................................... 22

## **PRELIMINARY STATEMENT**

Plaintiff Dennis Mazzetti's claims involve his continued pursuit to gain custody of his son, D.M., despite the New Jersey Superior, Chancery Division, Family Part's termination of his parental rights. Plaintiff alleges that the actions of Defendants surrounding and subsequent to the termination of his parental rights have violated his constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1986. Moreover, Plaintiff alleges Defendants failed to provide him an accommodation for his hernia infection pursuant to the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12131, *et seq*. Finally, Plaintiff asks this Court to grant a Petition for Writ of Mandamus, pursuant to 28 U.S.C. 2254, ordering a release of his child from State custody and granting guardianship to Plaintiff.

Defendants, New Jersey Division of Child Protection and Permanency ("the Division"); Governor Christopher Christie; Lisa Von Pier, Director of the Division; Allison Blake, Commissioner of the Department of Children and Families; Judge Bonnie J. Mizdol, P.J.Fam.; Judge Margaret Foti, J.S.C.; the Honorable Virginia A. Long, retired Associate Justice; Deputy Attorney General Ellen Buckwalter; Bergen County Prosecutor John L. Molinelli; Division caseworker Kimberly Roberts and Division

1

caseworker Erica Zapata jointly file this motion seeking a dismissal of Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and in opposition to Plaintiff's Petition for Writ of Mandamus.

Plaintiff's Complaint must be dismissed as his claims are barred under the *Rooker-Feldman* doctrine and the *Younger* abstention doctrine. Moreover, Defendants cannot be sued under the principles of sovereign immunity and the Eleventh Amendment and they are not "persons" subject to liability under 42 U.S.C. §§ 1983, 1985 or 1986. Additionally, Defendants are immune from suit under the doctrines of absolute judicial immunity, absolute prosecutorial immunity, qualified immunity, and N.J. Ct. R. 2:15-22. Furthermore, Plaintiff fails to assert a valid ADA claim, and cannot bring such an action against individually-named defendants. Finally, Plaintiff's petition for a writ of habeas corpus is improper in the context of parental termination and child custody matters.  Therefore, Plaintiff's Complaint must be dismissed in entirety with prejudice.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On March 11, 2007, D.M., was born to Plaintiff, father, and C.M., mother. (Compl., ¶ 25).  At birth, D.M. tested positive for cocaine. (Compl., ¶ 27.) Following D.M.'s release from the

hospital, he was placed in a foster home. (Compl., ¶ 40). A few months later, D.M. was placed in the care of his paternal grandmother, Plaintiff's mother, Linda. (Compl., ¶ 55). C.M. surrendered her parental rights to D.M. *See N.J. D.Y.F.S. v. D.M.*, Docket No. A-2509-09T3, slip op. at 2, 2012 N.J. Super. Unpub, LEXIS 120 (App. Div. Jan. 18, 2012), attached as Exhibit A.

Pursuant to N.J. Stat. Ann. 30:4C-15.1, the Division filed a petition in the Superior Court of New Jersey, Chancery Division, Family Part, to terminate Plaintiff's parental rights based on the best interests of the child. *D.M.*, slip op. at 2, Exhibit A. At the conclusion of a five-day trial, the court terminated Plaintiff's parental rights. (Compl., ¶ 70; *D.M.*, slip op. at 2.)

Plaintiff alleges that the Division's termination of his parental rights was improper. First, Plaintiff alleges the Division improperly challenged his paternity. (Compl., ¶¶ 35-36). However, the Division acknowledged his paternity in February 2008. (Compl., ¶ 43). Additionally, Plaintiff asserts his rights were improperly terminated based on his "inability to work because of his medical condition," (Compl., ¶ 68), and that

3

Plaintiff was unable to "financially provide for [D.M.] without assistance" from his mother. (Compl., ¶ 71).

Plaintiff alleges the Division and its employees committed perjury during the termination proceedings, in testifying that Plaintiff "failed... to plan for the future of [D.M.]" (Compl., ¶¶ 74, 76), and Plaintiff "abandoned his minor child to the care of others." (Compl., 80). Moreover, Plaintiff submits that the Division "failed to provide any housing or employment services." (Compl., ¶ 76, 79, 82). Plaintiff contends that he successfully completed parenting courses and drug evaluations and tests. (Compl., ¶ 83). Moreover, he asserts that his only positive drug screen was falsified. (Compl., ¶¶ 84, 85). Additionally, Plaintiff alleges the Division removed D.M. from his custody without due process, a fact finding hearing, and prevented Plaintiff from obtaining assistance of counsel. (Compl., ¶¶ 46-53, 146).

Plaintiff avers that during the time of the termination proceedings, he was undergoing treatment for a hernia, and suffered from an infected surgical mesh, which caused him "chronic pain and drainage from the infection." (Compl., ¶¶ 64-65). Plaintiff alleges that he failed to obtain proper medical treatment, and "may have become permanently disabled as a

4

result." (Compl., ¶ 66). Plaintiff avers his medical condition was "Un-Constitutionally [sic] used as a justification to terminate his rights." (Compl., ¶ 149).

Subsequently, Plaintiff appealed the termination of his parental rights to the Appellate Division of the New Jersey Superior Court. After a thorough review of the record, the Appellate Division employed the four-prong test required under N.J. Stat. Ann. 30:4C-15.1, and affirmed the termination of Plaintiff's parental rights on January 18, 2012. *See* Exhibit A, *D.M.*, *supra*, slip op. In analyzing the trial court's decision, the Appellate Division noted the evidence did not show that Plaintiff would be "able to provide even a minimal degree of parental care." *Id.* at 10.

The New Jersey Supreme Court denied Plaintiff's petition for certification on May 9, 2012. *See N.J. D.C.F. v. D.M.*, 210 N.J. 218 (2012), attached as Exhibit B. Plaintiff filed a petition for certiorari with the Supreme Court of the United States which was denied on October 29, 2012. *See D.M. v. N.J. D.Y.F.S.*, ___ U.S. ___, No. 12-6166, 2012 U.S. LEXIS 8435 (Oct. 29, 2012), attached as Exhibit C. A petition for rehearing was denied on January 7, 2013. *See D.M. v. N.J. D.Y.F.S.*, ___ U.S.

___, No. 12-6166, 2013 U.S. LEXIS 381 (January 7, 2013), attached as Exhibit D.

Before Plaintiff sought certiorari, Plaintiff filed a complaint substantially similar to the instant matter in the United States District Court for the District of New Jersey on August 23, 2012. The matter is captioned as *Mazzetti v. N.J. D.C.P.P.*, Civil Action No. 12-5347, and is currently pending.

Plaintiff filed the instant suit on December 31, 2014. The Complaint names as Defendants: the New Jersey Division of Child Protection and Permanency ("the Division"); Governor Christopher James Christie in his official and individual capacities; Lisa Von Pier, Director of the Division, in her official capacity; Allison Blake, Commissioner of the Department of Children and Families in her official capacity; Judge Bonnie J. Mizdol, P.J.Fam., in her official and individual capacities; Judge Margaret Foti, J.S.C., in her official and individual capacities; the Honorable Virginia A. Long, retired Associate Justice, in her official and individual capacities; Deputy Attorney General Ellen Buckwalter, in her individual capacity; Prosecutor John L. Molinelli, in his official and individual capacities; Division caseworker Kimberly Roberts in her

6

individual capacity; and Division caseworker Erica Zapata, in her individual capacity, (collectively "State Defendants").

Plaintiff alleges violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1986 (Count I, II, III, IV, V, VI). Plaintiff additionally alleges violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. (Count VII).

Plaintiff alleges that during the parental rights termination proceedings and thereafter, Defendants continually violated his constitutional rights. Throughout the complaint, Plaintiff asserts many broad allegations against the State Defendants. Plaintiff alleges that the Defendants have conspired to deny his fundamental parental rights and retaliated against him for his numerous appeals and suits alleging violations of his Civil Rights. (Compl., ¶¶ 54, 86, 102-103, 145, 216-17).

Plaintiff indicates that a Division case remains open for D.M. (Compl., ¶ 108). On or about June 27, 2014, the Division became aware that Plaintiff was assisting in the care of D.M. (Compl., ¶ 134). Thereafter, the Division conducted an emergency removal of D.M. on July 1, 2014, with the assistance of caseworker Kimberly Roberts. (Compl., ¶¶ 115, 124-128). The removal was based on information provided by DAG Ellen

7

Buckwalter in a Verified Complaint, which indicated that Linda
Mazzetti, D.M.'s adoptive parent and paternal grandmother, was
no longer able to care for him due to her hospitalization.
(Compl., ¶ 129). Based on this fact, an emergency removal was
conducted pursuant to a court order issued by Judge Mizdol.
(Compl., ¶ 125).

Plaintiff alleges Division caseworker Kimberly Roberts'
involvement in the emergency removal has led to a probable
cause finding by the Elmwood Park Municipal Court. (Compl., ¶
174). No further specifics as to the alleged impropriety of her
actions are provided. Plaintiff further alleges Bergen County
Prosecutor John L. Molinelli has failed to prosecute Ms.
Roberts in a timely manner for her alleged involvement.
(Compl., ¶ 175). As such, Plaintiff contends Mr. Molinelli has
aided and abetted the conduct of the Division. (Compl., ¶ 175).

Thereafter, on July 3, 2014, a Court Order was entered
which terminated visitation between Plaintiff and D.M. (Compl.,
¶ 138). Plaintiff asserts that the Honorable Bonnie J. Mizdol,
P.J.F.P., denied Plaintiff visitation with D.M. allegedly
"without either subject matter jurisdiction or personal
jurisdiction over" Plaintiff. (Compl., ¶¶ 117, 141). Plaintiff
asserts that his financial situation, including an inability to

maintain a residence, as determined in the parental termination proceedings, was improperly cited by Judge Mizdol as the only finding against him in his current proceedings. (Compl., ¶ 150). Plaintiff further asserts Judge Mizdol failed to provide Plaintiff with a court appointed attorney. (Compl., ¶ 146).

Plaintiff asserts that on or about July 17, 2014, he petitioned Governor Christie to investigate Judge Mizdol and the Division; order that they cease violating Plaintiff's constitutional rights; and impeach Judge Mizdol. (Compl., ¶ 152). Plaintiff avers that Governor Christie's alleged failure to investigate this matter equates to aiding and abetting Judge Mizdol and the Division in their alleged violation of Plaintiff's constitutional rights. (Compl., ¶ 154).

Plaintiff avers that in August of 2014, the Division mischaracterized his relationship with D.M. before the Child Placement Review Board. (Compl., ¶ 157). Plaintiff alleges that caseworker Erica Zapata, "appears to have attended the meeting" and presented erroneous facts to the Board. (Compl., ¶¶ 158-59, 162). However, the Complaint fails to set forth the specifics of Ms. Zapata's alleged misrepresentations.

On or about September 7, 2014, Plaintiff presented a complaint to the Supreme Court of New Jersey's Advisory

Committee on Judicial Conduct, seeking an investigation of Judge Mizdol's conduct. (Compl., ¶ 155). Thereafter, the Advisory Committee, of which Justice Long is the Chairperson, determined there was "no basis to charge Judge Mizdol with judicial misconduct." (Compl., ¶ 156).

D.M.'s adoptive mother and paternal grandmother, Linda Mazzetti, died on September 13, 2014. (Compl., ¶ 163). Plaintiff contends that the Division denied his "Constitutional Standing under the First Amendment to request that [the Division] arrange that D.M. associate with his family" for Ms. Mazzetti's funeral. (Compl., ¶¶ 164-165). As such, Plaintiff allegedly applied for an emergent order to allow D.M. to attend the funeral. (Compl., ¶ 166).

Plaintiff alleges the New Jersey Superior Court, Appellate Division, following his emergent application, determined that Plaintiff had standing to move to vacate the order terminating his parental rights to D.M. (Compl., ¶¶ 167-68).

At that time, the Honorable Margaret M. Foti, J.S.C. had succeeded Judge Mizdol in handling Plaintiff's on going State court proceedings. (Compl., ¶ 121). Plaintiff asserts Judge Foti denied his motion to vacate the termination of parental rights. (Compl., ¶ 169). Plaintiff further alleges Judge Foti

has refused to allow him access to psychological evaluations, denied further representation by counsel, and refused allow Plaintiff to participate in a "Best Interests of the Child Hearing" beyond the submission of a written statement. (Compl., ¶ 169). Plaintiff further alleges Judge Foti has failed to decide his motion to dismiss based on lack of jurisdiction and motion for a right to intervene in ongoing proceedings. (Compl., ¶¶ 170-173).

Plaintiff submits he is entitled to be appointed guardian of D.M. based on the codicil to the Will of Linda Mazzetti. (Compl., ¶¶ 190-194). Plaintiff asserts the Division has exceeded its *parens patriae* jurisdiction by failing to recognize the alleged testamentary Guardianship proceedings (Compl., ¶ 203-205).

Plaintiff's allegations as to DCF Commissioner Blake, and Division Director Von Pier are limited to their supervisory positions within the Division and DCF. (Compl., ¶¶ 6-7). No personal involvement is alleged.

Plaintiff seeks an order requiring that a policy be promulgated to prevent Division workers from engaging in an abuse of process (Compl., Count I & II). Plaintiff additionally requests damages in the amount of ten million dollars, punitive

damages in the amount of fifty million dollars, attorneys' fees, costs of suit and interest. (Compl., Count III-VII). Finally, Plaintiff asks this Court to grant his Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, and release his child, D.M., from the custody of the Division and grant guardianship to Plaintiff. (Compl., Count VIII).

For the reasons set forth herein, the State Defendants respectfully request this Court dismiss Plaintiff's Complaint with prejudice.[1]

**STANDARD OF REVIEW**

**A. Motion To Dismiss The Complaint For Lack of Subject Matter Jurisdiction Pursuant To Fed. R. Civ. P. 12(b)(1).**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a District Court must distinguish between facial and factual challenges to its subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In a facial attack a Defendant argues that the Plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual attack' asserts that jurisdiction is lacking on the basis of

---

[1] Default was entered against Governor Christopher J. Christie and Prosecutor John L. Molinelli on February 24, 2015. A motion to vacate the clerk's entry of default was filed on February 27, 2015, and is returnable April 6, 2015.

12

facts outside of the pleadings." *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005). If the court is considering a "factual" attack, where a challenge is based on the sufficiency of the jurisdictional facts, the court is free to weigh the evidence and satisfy itself whether it has the power to hear the case. *Brown v. U.S. Steel Corp.*, 2010 U.S. Dist. LEXIS 115503, at *6 (W.D. Pa. Oct. 29, 2010). In doing so, the court should "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the Plaintiff." *Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted). Nevertheless, for either a facial or factual attack, the burden is on the plaintiff to prove jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

In the instant case, this Court lacks jurisdiction to hear this case because the State Defendants are entitled to sovereign immunity and this suit is barred by the *Rooker-Feldman* doctrine. *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 240 (3d Cir. 2002) ("Under the Rooker-Feldman doctrine, inferior federal courts lack subject matter jurisdiction to review, directly or indirectly, state court adjudications."); *Gould Elecs.*, 220 F.3d at 178 (holding Eleventh Amendment immunity is properly

13

addressed in a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(1), and not 12(b)(6)) (citation omitted).

> **B. Motion To Dismiss The Complaint For Failure To State A Claim Upon Which Relief Can Be Granted Pursuant To Fed. R. Civ. P. 12(b)(6).**

On a motion to dismiss, pursuant to Fed. R. Civ. P.
12(b)(6), a reviewing court must accept the plaintiff's factual
allegations as true. However, the plaintiff's conclusory
allegations and legal conclusions are not entitled to the same
assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009); *see also Anspach v. City of Philadelphia*, 503 F.3d 256,
260 (3d Cir. 2007) (quoting *Morse v. Lower Merion School Dist.*,
132 F.3d 902, 906 (3d Cir. 1997) (conclusory allegations or
legal conclusions masquerading as factual allegations will not
suffice to prevent dismissal).

"[O]nly a complaint that states a plausible claim for
relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678.
Where the claims asserted are fatally defective and the
plaintiff cannot plead any facts to support his claims, it is
appropriate for the court to dismiss a complaint without
permitting the plaintiff to make a curative amendment of his
pleading. Oran v. Stafford, 34 F. Supp. 2d 906, 913-14 (D.N.J.
1999), *aff'd*, 226 F.3d 275 (3d Cir. 2000). Thus, dismissal for

14

failure to state a claim is justified where the asserted claim lacks a required element, *Campbell v. City of San Antonio*, 43 F. 3d 973, 975 (5th Cir. 1995), or where there is an "insuperable barrier" to a claim such as an immunity. *See Flight Sys., Inc. v. Elec. Data Sys.*, 112 F.3d 124, 127-28 (3d Cir. 1997); *Camero v. Kostos*, 253 F. Supp. 331, 338 (D.N.J. 1966).

When evaluating motions to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A document is found to form the basis of a claim where it is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Lum*, 361 F.3d at 222 n.3.

15

**ARGUMENT**

**POINT I**

**PLAINTIFF'S COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE.**

Plaintiff's Complaint is a thinly veiled attempt to collaterally appeal the New Jersey Superior Court's termination of his parental rights. Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over such a matter and the Complaint must be dismissed.

The *Rooker-Feldman* doctrine bars federal court jurisdiction over adjudicated state court matters. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005). The doctrine applies to "... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. Rather, the appropriate venue for review of state court judgments is the United States Supreme Court, pursuant to 28 U.S.C. § 1257. *Id*. at 283.

Courts utilize a four-part test to determine the applicability of the *Rooker-Feldman* doctrine to a specific case:

> (1)the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court

16

> judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Exxon Mobil*, 544 U.S at 284....
>
> [*Great Western Mining & Mineral Company v. FoxRothschild*, 615 F.3d 159, 166 (3d Cir. 2010).]

In the instant matter, Plaintiff's allegations are a feeble attempt to appeal an adverse State court ruling. Plaintiff's Complaint seeks to undermine the New Jersey State courts' determination to terminate his parental rights. The New Jersey trial court reached this decision after detailed fact-finding during a five day trial. *See* Exhibit A. Relying upon this extensive record, the New Jersey Appellate Division affirmed the holding of the trial court. *Id.* Moreover, Plaintiff's attempts at further review of this determination were denied by both the New Jersey Supreme Court and the United States Supreme Court. *See* Exhibit B-D. In essence, Plaintiff's Complaint is seeking redress for the alleged injuries that resulted from the adverse New Jersey State court judgment. Further, the relief sought would completely undermine the New Jersey State courts' determination in a family-related matter, which is an area traditionally of state concern. *See Moore v. Sims*, 442 U.S. 415, 435 (1979).

17

Accordingly, Plaintiff's claims fall squarely within the jurisdictional bar of the Rooker-Feldman doctrine.

### POINT II

### PLAINTIFF'S COMPLAINT IS ALSO BARRED BY THE YOUNGER ABSTENTION DOCTRINE.

Plaintiff's Complaint involves allegations surrounding on-going court proceedings in the New Jersey Superior Court, Chancery Division, Family Part.

The *Younger* abstention doctrine instructs that, absent extraordinary circumstances justifying intrusion, federal courts should refrain from taking any action in cases where the federal plaintiff has, or had, adequate redress available in state proceedings. *Younger v. Harris*, 401 U.S. 37 (1971); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). In addition, the *Younger* abstention doctrine instructs that where adequate state-court review is available, a federal court must decline to interfere with the proceedings or orders of the state tribunal. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361.

In *Younger*, the Court explained that the abstention doctrine was born from:

18

> a notion of comity, that is, a proper respect for the state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the national Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

> [*Id.*]

While the *Younger* doctrine requires abstention where there are ongoing state court proceedings, it also requires abstention where a plaintiff did not exhaust his or her state court remedies. *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790 (3d. Cir. 1994). The *O'Neill* court explained that:

> It is well-settled that, for *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign. Thus, a necessary concomitant of *Younger* is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court.

> [*Id.* (quotation marks, brackets and citations omitted).]

Federal courts are required to abstain from hearing actions "in which important state interests are implicated, so long as

19

the federal claimant has an opportunity to raise any constitutional claims [in the state proceeding]." *O'Neill*, 32 F.3d at 789.

The instant matter is the model candidate for abstention. Plaintiff raises numerous issues that relate directly to on-going state court proceedings. Specifically, Plaintiff alleges errors in determinations made by Judges Mizdol and Foti, in relation to his custody over D.M. (Compl., ¶¶ 138, 169, 170-73). Moreover, Plaintiff submits Defendants lacked lawful jurisdiction over the proceedings. (Compl., ¶ 183).

Plaintiff, nevertheless, seeks to divest the state court of its authority to decide issues germane to a matter before it. Furthermore, the State's interest in this matter is substantial because granting Plaintiff his requested relief would strip the Superior Court of New Jersey of jurisdiction over a family matter based on the filing a federal lawsuit challenging actions germane to that family matter. The United States Supreme Court has clearly established that "family relations are a traditional area of state concern." *Moore v. Simms*, 442 U.S. 415, 435 (1979). As such, this Court should abstain from entertaining Plaintiff's claims.

Additionally, the <u>Younger</u> doctrine bars Plaintiff's Complaint because Plaintiff has not exhausted his state court remedies in the ongoing proceedings. Plaintiff is entitled to appeal any of the State trial court's most recent unfavorable decisions to the Superior Court, Appellate Division. *See Simmsparris v. Neary*, Civil Action No. 10-5492, 2011 U.S. Dist. LEXIS 65493, *10 (finding that the third *Younger* factor is satisfied because the Plaintiff "will have an adequate opportunity to raise constitutional challenges in the state proceedings, as well as have an opportunity for discovery and, if necessary, appeal.").

For these reasons, this Court should abstain from entertaining Plaintiff's Complaint.

## POINT III

**PLAINTIFF'S CLAIMS AGAINST STATE DEFENDANTS MUST BE DISMISSED BECAUSE STATE AGENCIES AND STATE EMPLOYEES IN THEIR OFFICIAL CAPACITIES ARE NOT "PERSONS" AMENABLE TO SUIT UNDER 42 U.S.C. §§ 1983, 1985 or 1986 AND PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.**

Plaintiffs' Complaint asserts claims against the Division and various individuals in both their individual and official capacities. Any § 1983, 1985 or 1986 claims brought against the Division and the individual defendants in their official capacities must be dismissed because they are not "persons"

21

amenable to suit under those statutes, and Plaintiff's claims are barred by the Eleventh Amendment.

### A. Plaintiff's Complaint Against The State Defendants Is Barred By The Eleventh Amendment.

It is well-established that a federal cause of action cannot be maintained against either a state or an agency of that state. *See Quern v. Jordan*, 440 U.S. 332 (1979); *Alabama v. Pugh*, 438 U.S. 781 (1978); *Meyer v. New Jersey*, 46 F.2d 1252 (3d Cir. 1972); *Cate v. Oldham*, 7 F.2d 1176 (11th Cir. 1983). The prohibition against naming a state or state agency as a party derives from the Eleventh Amendment, which provides, in pertinent part:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of any foreign state.
> [*U.S. Const.*, Amend. XI.]

The Amendment precludes federal jurisdiction over a state absent the state's consent to suit. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

The immunity from suit extends to agencies or departments of the state as well. *Id.* at 101-02; *Pugh*, 438 U.S. at 781. The state is considered the real party in interest in two

circumstances – whenever "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *College Savings Bank v. U.S.*, 948 F. Supp. 400, 409 (D.N.J. 1996) (quoting *Pennhurst*, 465 U.S. at 101 n.11). Therefore, a state's sovereign immunity can be invoked even where the suit is against a state, agency, official, or employee. *Brady v. Michelin Reifenwerke*, 613 F. Supp. 1076, 1080 (D. Miss. 1985).

The Eleventh Amendment prohibition against federal lawsuits for damages against the State also applies when a state official is sued for damages in his or her official capacity. *Kentucky v. Graham*, 473 U.S. 159 (1985); *McClary v. O'Hare*, 786 F.2d 83 (2d Cir. 1986); *Miller v. Rutgers*, 619 F. Supp. 1386 (D.N.J. 1985). While prospective relief may be sought against state officials acting in their official capacity, a monetary award indistinguishable from one against the state itself is prohibited by the Eleventh Amendment, even when a suit is filed against nominal state officials. *Miller*, 619 F. Supp. at 1392-93.

23

In this case, the Division and the individual defendants in their official capacities are entitled to Eleventh Amendment immunity.  Moreover, State Defendants have not consented to suit in District Court.  Therefore, Plaintiffs' claims the Division and the individual defendants in their official capacities must be dismissed because they are entitled to Eleventh Amendment immunity from suit.

### B. The Division and Individual Defendants In Their Official Capacities Are Not "Persons" Amenable to Suit Under 42 U.S.C. §§ 1983, 1985, OR 1986 and Therefore Plaintiff's Claims Against State Defendants Must Be Dismissed.

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To be liable within the meaning of the statute, a defendant must be a "person."  The Supreme Court of the United States has held that "States are not 'persons' within the meaning of § 1983

24

and, therefore, cannot be among those held liable for violations of the civil rights statute." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)).   Additionally, in *Will*, the Supreme Court specifically held that state agencies and officials acting in their official capacity are likewise not "persons" under § 1983.   491 U.S. at 70-71.

Similarly, a *prima facie* claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights requires that: 1) two or more <u>persons</u> in any state or territory; 2) conspired to deprive any person of equal protection, or of equal privileges and immunities under the laws; 3) by doing, or causing to be done, any act in furtherance of the object of the conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. Of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

Courts have applied the Supreme Court's rationale in *Will*, to § 1985 claims, holding that states, state agencies, and state officials are not "persons" within the meaning of § 1985. *See Flesch v. E. Pa. Psychiatric Inst.*, 434 F. Supp. 963, 975 (E.D.

25

Pa. 1977)(noting "[a]lthough the Supreme Court has not decided the issue, courts are in agreement" that analysis of the word "person" for purposes of § 1983 applies equally to use of word "person" in § 1985); *Santiago v. N.Y. State Dep't of Correctional Servs.*, 725 F. Supp. 780, 783-84 (S.D.N.Y. 1989)(explaining "principle that under [§§] 1983 and 1985[,] the term 'persons' has the same meaning") (quoting *An-Ti Chai v. Michigan Technological Univ.*, 493 F. Supp. 1137 (W.D. Mich. 1980)), *rev'd on other grounds*, 945 F.2d 25 (2d Cir. 1991).

Section 1986 also requires that the defendant be a "person," and because a claim under § 1986 must be supported by a cognizable § 1985 claim, no claim under § 1986 may lie against the State or State officials in their official capacities, either. *See Goodson v. Maggi*, 797 F. Supp. 2d 587, 602 (W.D. Pa. 2011), citing *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994). *See also Fernandez v. Stack*, 2006 U.S. Dist. LEXIS 17601, *10 n.2 (D.N.J. 2006) (a claim under § 1986 is dependent on a claim under its "companion statute" § 1985); *Robinson v. Fauver*, 932 F. Supp. 639, 646 (D.N.J. 1996) (same). Because Plaintiffs' § 1985 claim fails, so too does his § 1986 claim.

Therefore, Plaintiff's §§ 1983, 1985 and 1986 claims for damages should be dismissed against the Division and the

26

individual defendants in their official capacities because they are not "persons" amenable to suit under the cited statutes.

**POINT IV**

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE STATE DEFENDANTS ARE IMMUNE FROM SUIT.**

The absence of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *Younger* abstention doctrine, and principles of sovereign immunity are dispositive of Plaintiff's entire Complaint, and this Court need not engage in further analysis. Nevertheless, even apart from the foregoing bases for dismissed, all of the individual defendants are immune from suit and thus, the Complaint must also be dismissed on that basis.

**A. The Doctrine Of Absolute Judicial Immunity Bars Any Claims That Plaintiff May Have Against Judge Mizdol And Judge Foti.**

Plaintiff's claims against Judge Mizdol and Judge Foti must be dismissed as they are entitled to absolute judicial immunity for their actions while presiding over Plaintiff's state court proceedings.

It has long been held that members of the judiciary are entitled to absolute immunity from suit based upon the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (holding the doctrine of judicial immunity is applicable in 42

27

U.S.C. § 1983 actions); *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Bradley v. Fisher*, 80 U.S. 335, 347 (1872). The doctrine of judicial immunity allows judges to render decisions "with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Ferri v. Ackerman*, 444 U.S. 193, 203-04 (1979) (immunity provides judges with the maximum ability to act fearlessly and impartially, without an atmosphere of intimidation); *Butz v. Economou*, 438 U.S. 478, 512 (1978) (immunity is necessary to assure that judges can perform their function without harassment or intimidation).

This absolute immunity applies even when the judicial act is wrong, malicious, or beyond the judge's authority. *K.D.*, 313 N.J. Super. at 568; *Delbridge*, 238 N.J. Super. at 334. The purpose of judicial immunity is to permit judges to decide cases without having to be concerned that they will be held liable for damages to unsatisfied litigants who do not like their decisions. *Cashen v. Spann*, 66 N.J. 541, 545-47 (1974), *cert. denied*, 423 U.S. 829 (1975); K.D., 313 N.J. Super. at 568. Moreover, a disappointed litigant may challenge an adverse judicial determination by way of appeal. *K.D.*, 313 N.J. Super. at 568.

28

In the instant matter, Judge Mizdol and Judge Foti are entitled to absolute judicial immunity. Plaintiff challenges the judicial actions taken by Judge Mizdol and Judge Foti while presiding over his State court proceedings. These judicial acts, discharged as part of Judge Mizdol and Judge Foti's official judicial function, are protected by absolute judicial immunity. As such, all claims against Judges Mizdol and Foti must be dismissed.

**B. Honorable Virginia A. Long, Associate Justice Is Immune From Suit Under N.J. Ct. R. 2:15-22.**

Plaintiff's claims against the Honorable Virginia A. Long, Associate Justice must be dismissed as she is immune from suit under the N.J. Ct. R. 2:15-22.

Rule 2:15-22 sets forth that "[t]he members and staff of the [Advisory Committee on Judicial Conduct] shall be absolutely immune from suit, whether legal or equitable in nature, for any conduct in the performance of their official duties."

In the instant matter, Plaintiff's allegations against Justice Long stem from her status as the Chairperson of the Advisory Committee on Judicial Conduct. (Compl., ¶ 155). Plaintiff disputes the Committee's determination that there was "no basis to charge Judge Mizdol with judicial misconduct."

(Compl., ¶ 156).   Therefore, Plaintiff's complaint against Justice Long must be dismissed as she is entitled to immunity from suit under <u>N.J. Ct. R.</u> 2:15-22.

### C. Prosecutor Molinelli Is Entitled To Absolute Prosecutorial Immunity.

Plaintiff's claims against Prosecutor Molinelli must be dismissed because prosecutors are entitled to absolute immunity for actions taken in their role as prosecutors.

It is a long held rule that prosecutors enjoy absolute immunity from liability in civil suits for actions taken in their role as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). Such immunity is founded in the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. Moreover, if subject to suit, the prosecutor would become "constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424-25. Indeed, "[s]uch suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription

of improper and malicious actions to the State's advocate." *Id.* at 425.

To that end, absolute immunity applies to all activities that are "intimately associated with the judicial process," and shields a prosecutor from liability for any and all alleged wrongdoing that the prosecutor is alleged to have committed while an advocate for the state. *Imbler*, 424 U.S. at 430; *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). While this immunity includes actions taken as an advocate before the court, it also extends to certain out-of-court conduct, *Kulwicki*, 969 F.2d at 1463, including "whether to dispose of a case by plea[,]" *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993), abrogated on other grounds by *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998), and to "investigatory acts 'to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution.'" *Quintal v. Volk*, 2000 U.S. Dist. LEXIS 13498, at *5 (E.D.Pa. Sept. 21, 2000) (quoting *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979), *cert. denied*, 453 U.S. 913 (1981)).

In the instant matter, Plaintiff alleges that Prosecutor Molinelli failed to prosecute a Division caseworker in a timely

fashion for her alleged actions in relation to D.M.'s emergency removal from the Mazzetti home in July 2014. (Compl. at ¶ 124-128, 174-175). Such action, in determining whether to institute criminal proceedings against an individual, is unquestionably entitled to absolute prosecutorial immunity. Therefore, Plaintiff's claims against Prosecutor Molinelli must be dismissed.

### D. Defendants Roberts, Zapata And Buckwalter Are Protected By Absolute Immunity From Plaintiff's Claims.

While Section 1983, by itself, does not confer immunity on public officials, the Supreme Court of the United States has recognized that Congress did not intend to abrogate immunities deeply rooted in history. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Section 1983 must be read "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Accordingly, the Court has identified two types of immunities available to public officials in defense of Section 1983 actions: qualified immunity and absolute immunity. *Buckley*, 509 U.S. at 268. While most officials enjoy only a qualified immunity, absolute immunity is reserved for those performing "special functions" that deserve "absolute protection from

32

damages liability." *Id.* at 268-69 (quotations omitted). In conferring absolute immunity, the Court has consistently applied it to officials intimately associated with the judicial process including judges, *Briscoe v. Lahue*, 460 U.S. 325, 334 (1983), and prosecutors *Imbler*, 424 U.S. at 416, 427, 430.

Here, Defendants, who are Division caseworkers and a Deputy Attorney General, are all integral part of the proceedings against Plaintiff. Thus, Defendants are entitled to absolute immunity from suit. *Delbridge v. Schaeffer*, 238 N.J. Super. 323, 343 (Law Div. 1989), *aff'd*, 297 N.J. Super. 1 (App. Div. 1993), *certif. denied*, 135 N.J. 467 (1994), *cert. denied*, 513 U.S. 832 (holding that the deputy attorney general and DYFS caseworkers had absolute judicial immunity, premised on the determination that "these individuals should not be subject to any pressures which may affect the impartial administration of their responsibilities."). The Third Circuit has held that caseworkers employed by a state child protective services agency "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." *Ernst v. Child & Youth Servs.*

33

*of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997). Attorneys who represent the state agency are entitled to the same absolute immunity. *Id*.

As in *Delbridge* and *Ernst*, the result here is the same. Division caseworkers Roberts and Zapata's involvement in the family court proceedings, and Deputy Attorney General Buckwalter's representation of the Division, are all directly related to the judicial proceeding. With absolute immunity fully applicable, the complaint must be dismissed.

### E. Alternatively, Defendants Are Entitled To Qualified Immunity.

Qualified immunity provides extensive protection for government officials. Essentially, "all but the plainly incompetent or those who knowingly violate the law" enjoy qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A qualified immunity analysis focuses on two inquiries: (1) whether the conduct in question violated a constitutional right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2000); *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815-16 (2009).

The United States Supreme Court has strongly favored the resolution of the qualified immunity question early in the litigation, including the pleading stages, in order to avoid the

34

burdens of broad-reaching discovery. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (stressing "the importance of resolving immunity questions at the earliest possible stage in litigation"); *Pearson,* 129 S. Ct. at 815-16. Importantly, a decision denying qualified immunity at the pleading stage is considered a final order for purposes of appeal. *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). Central to the concept of qualified immunity is that it is immunity from suit rather than a defense; a defendant enjoying qualified immunity is entitled not to stand trial or to be subjected to the hassles of litigation. *Pearson*, 129 S. Ct. at 815; *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006). Until a court decides on the question of immunity, "discovery should not be allowed." *Harlow*, 457 U.S. at 818.

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), the Court articulated the framework to evaluate qualified immunity at the motion-to-dismiss stage and firmly rejected allegations that summarily conclude constitutional violations without an appropriate factual context.

As in *Iqbal*, Plaintiff's allegations here are conclusory, formulaic, and bare, which are not entitled to a presumption of truth and should be dismissed. First, Plaintiff fails to

articulate any specific facts regarding Defendants' conduct, especially Commissioner Blake and Director Von Pier. Instead, throughout the complaint, Plaintiff makes sweeping allegations that Defendants violated his constitutional rights and/or participated in a "conspiracy." (Compl., ¶¶ 54, 86, 102-103, 145, 216-17). Moreover, Plaintiff's Complaint sets forth the elements of the conspiracy claim, yet fails to provide a specific, factual predicate for the alleged conspiracy. (Compl., ¶¶ 248-251). Plaintiff cannot establish any facts supporting a conspiracy claim under 42 U.S.C. § 1985. In short, the allegations are, essentially, "unadorned, the-defendant-unlawfully-harmed-me" accusations. *See Iqbal*, 129 S. Ct. at 1949.

Plaintiff's claims also fail as he cannot show how Defendants such as Commissioner Blake or Director Von Pier personally affected his civil rights. Personal involvement is a necessary predicate to state a civil rights claim. *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970).

As Plaintiff cannot establish a constitutional violation, the Complaint should be dismissed.

## POINT V

**PLAINTIFF'S ADA CLAIM AGAINST INDIVIDUAL STATE DEFENDANTS IS BARRED AS IMPERMISSIBLE CLAIMS AGAINST AN INDIVIDUAL.**

Plaintiff also asserts a claim under Title II of the ADA against the Division, Governor Christie, Judge Mizdol, Judge Foti, Associate Justice Long, Deputy Attorney General Ellen Buckwalter, Division caseworkers Kimberly Roberts and Erica Zapata, and Prosecutor Molinelli. (Count VII). Plaintiff's claim against all individually-named defendants must be dismissed as they are not "public entities" subject to liability under the statute.

The ADA prohibits discrimination of disabled persons by denying any benefit or service offered by a public entity due to a person's disability or discrimination by any such entity. See 42 U.S.C. § 12131, *et seq.* "Public entity" is defined in the ADA as:

> (A) any State or local government;
>
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>
> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

37

[42 U.S.C. § 12131.]

This section clearly does not include individuals. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc), *cert.dismissed*, *Alsbrook v. Arkansas*, 529 U.S. 1001 (2000). Therefore, State Defendants Governor Christie, Judge Mizdol, Judge Foti, Associate Justice Long, Deputy Attorney General Ellen Buckwalter, Division caseworkers Kimberly Roberts and Erica Zapata, and Prosecutor Molinelli cannot be held liable for violations of Title II of the ADA. *See Calloway v. Boro of Glassboro Dep't of Police,* 89 F. Supp. 2d 543, 557 (D.N.J. 1000). As such, this claim against these defendants must be dismissed.

<u>**POINT VI**</u>

**PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT DENIED MEANINGFUL <u>ACCESS TO ANY PROGRAM, BENEFIT OR SERVICE.</u>**

Count VII of Plaintiff's complaint asserts a generalized disability discrimination allegation under the ADA, 42 U.S.C. § 12131, *et seq*.

To establish a violation of Title II of the ADA a plaintiff must show: (1) that he or she is qualified individual with disability, (2) that he or she was either excluded from

38

participation in or denied benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability. *See* 42 U.S.C. § 12131, *et seq.*; *Tyler v City of Manhattan*, 849 F. Supp. 1429 (D.C. Kan. 1994).

First, Plaintiff has failed to establish that he is a "qualified individual" with a disability as defined in § 12132(2). Plaintiff avers that during the time of the termination proceedings, he was undergoing treatment for a hernia, and suffered from an infected surgical mesh. (Compl., ¶¶ 64-65). Plaintiff submits he failed to obtain proper treatment, and "<u>may</u> have become permanently disabled as a result." (Compl., ¶ 66)[emphasis added]). Plaintiff avers his medical condition was "Un-Constitutionally [*sic*] used as a justification to terminate his rights. (Compl., ¶ 149).

Second, Plaintiff fails to alleges facts sufficient to support a finding that he was denied meaningful access to any program, benefit or service by reason of his disability. Third, Plaintiff does not allege any accommodation he was denied based on his hernia infection. As such, on the face of the Complaint, Plaintiff fails to show that he was excluded from participation

39

in, or denied the benefits of, any services, programs or activities offered by the Division on the basis of his disability or that he was otherwise discriminated against by the Division. *See* 42 U.S.C. § 12131, *et seq*.

Therefore, Plaintiff's ADA claim must be dismissed as to the Division.

## POINT VII

### PLAINTIFF'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 MUST BE DENIED.

Plaintiff's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (Count VIII) is not appropriate, as such relief is not cognizable in parental rights and child custody matters. *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 511-512 (U.S. 1982) (court declined to grant petition for writ of habeas corpus where Petitioner argued that her children were involuntarily in the custody of respondent state, and should be released into her care).

Therefore, Plaintiff's Petition for Writ of Habeas Corpus must be denied with prejudice.

## **CONCLUSION**

Based on the foregoing, the State Defendants' motion to dismiss should be granted, and Plaintiff's Complaint and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 must be denied.

Respectfully submitted,

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:  s/ *Susan M. Scott*
                Susan M. Scott
                Deputy Attorney General

DATED: April 1, 2015

41