## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS MAZZETTI, individually and on behalf of D.M. as the "Next Friend" of D.M. a minor,<br><br>    Plaintiff,<br><br>                            v.<br><br>THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY ("DCP&P") (formerly Division of Youth & Family Services), CHRISTOPER JAMES "CHRIS" CHRISTIE, in his individual and official capacities,  LISA VON PIER, in her official capacity as Director of DCP&P, ALLISON BLAKE, in her official capacity as the Commissioner of the Department of Children and Families, , in her individual capacity, BONNIE J. MIZDOL, in her individual capacity and official capacity, MARGARET FOTI, in her individual capacity and official capacity, VIRGINIA A. LONG, in her individual and official capacity, ELLEN BUCKWALTER, in her individual capacity, JOHN L. MOLINELLI, in his individual    and    official    capacity, KIMBERLY ROBERTS, in her individual capacity, ERICA ZAPATA, in her individual capacity, and John Does 1-15,<br><br>    Defendants. | CIVIL ACTION<br><br>**Case No. :** 2:14-cv-08134 (KM-MAH)<br><br><br><br><br><br>Return Date: May 18, 2015<br><br>Oral Argument Requested |

**BRIEF OF THE PLAINTIFF IN OPPOSITION TO FED.R.CIV.PRO. 12(b)(1) and 12(b)(6) MOTION OF DEFENDANTS THE DIVISION OF CHILD PROTECTION & PERMANENCY, CHRISTOPHER CHRISTIE, LISA VON PIER, ALLISON BLAKE, BONNIE J. MIZDOL, MARGARET FOTI, VIRGINIA A. LONG, ELLEN BUCKWALTER, JOHN L. MOLINELLI, KIMBERLY ROBERTS AND ERICA ZAPATA TO DISMISS PLAINTIFF'S COMPLAINT**

---

**KENNETH ROSELLINI, ESQ.**
636A Van Houten Avenue, Clifton, New Jersey 07013
(973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff*, DENNIS MAZZETTI, individually
and on behalf of D.M. as the "Next Friend" of D.M. a minor

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    I.  The *Rooker-Feldman* Doctrine is Inapplicable to the
       Complaint in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. ..10

    II. The *Younger Abstention* Doctrine is Inapplicable to the
       Complaint in this Case ... . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    III.   The Defendants are Properly Before this Court in
         their Individual Capacities and Official Capacities
         and are Persons for Purposes of 42 U.S.C. §1983 . . . . . . . . . .  16

    IV.   Defendants Foti and Mizdol are not Entitled to Judicial
         Immunity because they acted Outside of their Jurisdiction . 18

    V.     Defendant Virginia Long is Not Entitled to Immunity from
         a §1983 Action based on a New Jersey Court Rule . . . .. ..  21

    VI.   Prosecutor Molinelli is Not Entitled to
         Absolute Prosecutorial Immunity . . . . . . . . . . . . . . . . .. . . . 21

    VII.  Defendants Roberts, Zapata, and Buckwalter are not
         Protected by Absolute Immunity . . . . . . . . . . . . . . . . . . . . .22

    VIII. Defendants are not Protected by Qualified Immunity . . . . . 24

i

**IX.    Defendants are Liable under the Americans with Disabilities Act** . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

**X.    Defendants have No Immunity from Injunctive Relief** . . . **33**

**XI.    Plaintiff's Application for a Writ of Habeas Corpus Under 28 U.S.C. §2254 Must be Granted** . . . . . . . . . . . . **37**

**XII.   The Plaintiff's Complaint States a Claim under § 1985 and § 1983 Conspiracy** . .. . . . . . . . . . . . . . . . . . . . . .. . **39**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **40**

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Achterhof v. Selvaggio,* 886 F.2d 826, 830 (6th Cir.1989) . . . . .. . . .27

*Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S. Ct. 2206, 2215, 119 L. Ed. 2d 468 (1992) . . . . . . . . . . . . . . . . . . . . . . .. . . . . . .. . .13

*As in the case of People United for Children, Inc.*, 108 F. Supp. 2d 275 (S.D.N.Y. 2003) . . . . .. . . . . .. . . . . . . . . . . . . . . . . . . . 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . 8, 39

*Blakeney v. Marsico*, 340 F. App'x 778, 779 (3d Cir. 2009) . . . . . . .22

*B.S. v. Somerset Cnty*, 704 F.3d 250, 260 (3d Cir. 2013) . . . .. . . … .11, 23

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (U.S.,1983) .. . . . .. . . . . . . . . . . . . . . . . . . . . . 34

*Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 157-58 (D. Mass. 2011) . . . . . . . . . . . . . . . . . . . .. . .. . . . . . . 16

*Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125-26 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 25, 29

*DeBiaso v. Spitz*, 957 F. Supp. 2d 1213, 1223 (D. Or. 2013) . . . . . . .28

*Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003) . . . . . . . . . . . . . 19, 24, 30

*Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 496 (3d Cir. 1997)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 28

*Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 [1908] . .16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292,

125 S. Ct. 1517, 1526, 161 L. Ed. 2d 454 (2005) . .. . . . . . . . . . . . . 11-12

*Fanning v. Montgomery Cnty. Children & Youth Servs.*, 702 F. Supp. 1184, 1188 (E.D. Pa. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (U.S.,2007) . . . . . . . . . . . . . . . . . . . . . . .36

*FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 12

*Fucilla v. Layman*, 109 N.J. 319, 331 (1988) . . . . . . . . . . . . . . . .. 21

*Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 39

*Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423 (1985) . . . . . . . . . . .16

*Gregory v. Admin. Office of the Courts of State of New Jersey*, 168 F. Supp. 2d 319, 328-29 (D.N.J. 2001) . .. . . . . . . . . . . . . . . 33

*Hafer v. Melo*, 112 S.Ct. 358 (1991). . . . . . . . . . . . . . . . . . . . . . . 17

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981) . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 26

*Halsey v. Pfeiffer*, 750 F.3d 273, 295 (C.A.3 (N.J.),2014) . . . . . . . . .. 28

*Holloway v. Brush*, 220 F.3d 767, 779 (6th Cir. 2000) . . . . . .. . . . . 27

*Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir.2011) . . . . . . . . . . . .. 16

*In re Guardianship of Dotson*, 72 N.J. 112, 367 A.2d 1160 (1976) .. .28

*Jenicek ex rel. J.J. v. Sorenson Ranch Sch., Utah*, No. CIV. 14-4422 SRC, 2014 WL 7332039, at *2 (D.N.J. Dec. 16, 2014) . . . . 37-39

*Johnson v. State of N.J.*, 869 F. Supp. 289, 297-98 (D.N.J. 1994) . . . .18

*Jordan v. Jackson,* 15 F.3d 333, 349 (4th Cir.1994) .. . .. . . . . . . . . . 31

*Lance v. Dennis*, 546 U.S. 459, 464 (2006) . . . . . . . . . . . . . . . . . . .. 12

*Marlee Electronics Corp. v. Eclectic Technologies Corp.*, CIV.
A. 90-5536, 1993 WL 30081 (E.D. Pa. Feb. 5, 1993) . . . . . . . . . . . .9

*Mammaro v. The New Jersey Div. of Child Permanency & Prot.*,
No. CIV.A. 13-6483 FLW, 2015 WL 225999 (D.N.J. Jan. 16, 2015) .25

*Mazzetti v. Wood*, 573 F. App'x 165 (3d Cir. 2014) . . . . . . . . . . . . . 5

*McPherson v. United States*, 392 Fed. Appx. 938 (3d Cir. N.J. 2010).. 40

*Miller v. City of Philadelphia*, 174 F.3d 368, 376, fn.6 (3d Cir. 1999) . 29

*Mireles v. Waco*, 502 U.S. 9, 12, 112 S. Ct. 286, 288,
116 L. Ed. 2d 9 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .. 19

*Melendez v. Shack*, CIV.A. 12-1925 JLL, 2013 WL 3873255
(D.N.J. July 24, 2013) . .. .. . . . . . . . . . . . . . . . . . . . . . . . . . . .12-13

*Mortensen v. First Fed. Sav. & Loan* Ass'n, 549 F.2d 884,
891 (3d Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .8

*Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC*, CIV.A. 12-1304,
2012 WL 4932040 (E.D. Pa. Oct. 17, 2012) . . . . . . . . . . . . . . . . .. 8

*Moore v. Simms*, 442 U.S. 415, 435 (1979) . . . . . . . . . . . . . . . . . . .14

*Odd v. Malone*, 538 F.3d 202, 209 (3d Cir. 2008) . . . . . . . . . . . . . . 22-23

*Olson v. Ramsey County*, 509 N.W.2d 368, 371 (Minn. 1993) . . . . . . . 26

*Patterson v. Armstrong County Children & Youth Services*,
141 F. Supp. 2d 512, 531-42 (W.D. Pa. 2001) …… .. … . . . . ... . .. . 30

*Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) …. . .. . . .. .. . 24

*Pittman v. Cuyahoga County Dept. of Children & Family Services*,
1:05-CV-00541, 2009 WL 2567776 (N.D. Ohio Aug. 17, 2009)
rev'd in part, 640 F.3d 716 (6th Cir. 2011) . …. .. …. …. …. .. …. . 27

*Rinderer v. Delaware County Children & Youth Services*, 703
F. Supp. 358, 361 (E.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Saucier v. Katz*, 533 U.S. 194, 201 (2000) . .. …. .. . . . …….. .. .. .. . 24

*Seeward v. Integrity, Inc.*, 357 N.J. Super. 474, 483-484
(App. Div. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping
Group Ltd.*, 181 F.3d 410, 426-27 (C.A.3 (N.J.),1999) . . .. .. . …. . 34

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591,
187 L. Ed. 2d 505 (2013) . .. . …. . . . . . . .. . .. . . . . . . . . . . . . . 14

*State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev.
609, 619-20, 55 P.3d 420, 426-27 (2002) . . …. .. . . . . . . … . . . . . .26

*Stump v. Sparkman*, 435 U.S. 349, 357, 98 S. Ct. 1099, 1105,
55 L. Ed. 2d 331 (1978) . .. . . . . . . . . . . . . . . . . . . .. . . . . . . .. . .20

*Tyler v City of Manhattan*, 849 F. Supp. 1429 (D.C. Kan. 1994) .. . . .32

*Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971) . . . . . . . . . . .. 13

## RULES, STATUTES AND CONSTITUTION                          PAGE

Article III of the Constitution for the United State of America .. . . . . . .33

Fourth and Fourteenth Amendments to U.S. Constitution . . . . . . . .. . . 1

Eleventh Amendment to U.S. Constitution . . . . . . . . . . . . .. . . . . . . . ….. .3

28 U.S.C. §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . .. . … . . .. . . . . . . 13, 16-17, 21

42 U.S.C. §§1983, 1985 and 1986 … . . . . . . . . . . . . . . . . . . . . . . . . . .3

42 U.S.C. § 12131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . 32

Federal Rule of Civil Procedure 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . 1, 8

Federal Rule of Civil Procedure 12(b)(6) . … . . . . . . . . . . . . . . . . . . . 1, 8

Rule 2:15-22 of the Rules Governing the Courts of the State of NJ . . . . 21

Plaintiff, Dennis Mazzetti, individually and on behalf of D.M. as the "Next Friend" of D.M. a minor ("Mazzetti") by and through his Counsel, Kenneth Rosellini, Esq., respectfully submits this Brief in opposition to the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), filed by the Defendants, The Division of Child Protection & Permanency ("DCP&P"), Christopher Christie ("Christie"), Lisa Von Pier ("Von Pier"), Allison Blake ("Blake"), Bonnie J. Mizdol ("Mizdole"), Margaret Foti ("Foti"), Virginia A. Long ("Long"), Ellen Buckwalter("Buckwalter"), John L. Molinelli ("Molinelli"), Kimberly Roberts ("Roberts") and Erica Zapata ("Zapata").

## INTRODUCTION

The Plaintiff in the case asserts a well-pled Civil Rights Complaint as against the Defendants, asserting that they, acting under color of state law, acted in conspiracy to violate the Plaintiff and D.M.'s Civil Rights by fabricating evidence and then Un-Constitutionally seizing D.M. a minor, on July 1, 2014, and then continuing to hold him in New Jersey State custody against his and his families will, in retaliation for Dennis Mazzetti exercising his Constitutional Rights under the First Amendment, without any definite and articulable evidence giving rise to a reasonable suspicion that D.M., a minor, had been abused or was in imminent danger of abuse, in violation of the Fourth and Fourteenth Amendments. This action has been brought as a separate action from *Mazzetti v. DCP&P*, Docket No.:

1

2:12-cv-05347-KSH-PS because DCP&P would not consent to amendment of the Complaint in that action, but the issues of law and of fact in this action arose after the events which led to that action, and are separate and apart from that action— contrary to the assertions of Defendants.

In this action the Plaintiff seeks return of D.M. to his family by way of a Writ of Mandamus (a Petition for Writ of Habeas Corpus is also pending, *see* Docket No.: 2:15-cv-00610-KM) because the Defendants have Un-Constitutionally held D.M. without jurisdiction for the sole purpose of defeating the parental decisions and testamentary intent of Linda Mazzetti, deceased (who is the paternal grandmother and adoptive mother of D.M.) that Dennis Mazzetti (Linda Mazzetti's son, and the biological father of D.M.) be a caretaker and permanent testamentary guardian for D.M. The actions of the Defendants have been taken in retaliation for Dennis Mazzetti's relentless pursuit of his Civil Rights in the matter of *Mazzetti v. DCP&P*, Docket No.: 2:12-cv-05347-KSH-PS which has been pending since 2012 and which was reinstated on appeal in 2014 to the Third Circuit over the objections of DCP&P and Blake. Plaintiff seeks a Writ of Mandamus to require the Bergen County Prosecutor, Molinelli, to continue the prosecution of DCP&P caseworker Roberts for her criminal actions in connection with the illegal seizure of Daniel Mazzetti, for which probable cause for assault

and endangering the welfare of a child has already been found by the Elmwood Park Municipal Court.

Plaintiff's claims are not barred under the *Rooker-Feldman* doctrine or the *Younger* Abstention doctrine.  The individual defendants are not immune under the principles of sovereign immunity or the Eleventh Amendment and are persons subject to liability under 42 U.S.C. §§1983, 1985 and 1986.  Those defendants that are current or retired New Jersey Superior Court judges are not immune in their individual capacities as they have acted outside of their jurisdiction, and are not immune in the official capacities as judicial immunity does not apply to injunctive relief.  Those individuals that assert prosecutorial or quasi-judicial immunity are not immune as the allegations concern actions either outside of judicial proceedings or actions which are outside of prosecutorial conduct.  Finally, the petition for a Writ of Habeas Corpus and Writ of Mandamus is proper because the actions of the Defendants have caused the Minor D.M. to be held as a Ward of the State of New Jersey without jurisdiction for nearly a year.  The actions of the Defendants were not in the context of "parental termination and child custody matters", but were actions which Un-Constitutionally violated the family unit of Linda Mazzetti, Dennis Mazzetti and D.M. by seizing D.M. with no parental termination action pending and then continuing to hold him against his will despite the clear testamentary guardianship set forth in Linda Mazzetti's will.

## STATEMENT OF FACTS

In July of 2014, when Linda Mazzetti had lawfully left D.M. with Dennis Mazzetti in a caretaking role while she was in the hospital, DCP&P unlawfully threatened Linda Mazzetti that D.M. would be taken away from her unless she chose an alternative caregiver. When she chose an alternative caregiver, another son that she believed DCP&P would find acceptable, DCP&P failed to inform her that its plan was to conduct an emergency removal as soon as D.M. was placed in this alternative caregiver's care. An Emergent Removal of D.M. from the Mazzetti family was illegally conducted on July 1, 2014 when DCP&P forcibly removed D.M., committing criminal assault and child endangerment in the process. The DCP&P dismissed the New Jersey Title 9 action against Linda Mazzetti on August 26, and that there has been no substantiation of the abuse and/or neglect allegations which were fabricated by DCP&P as a pretext for the emergency taking of D.M. on July 1; in fact those allegations were withdrawn. (*See* Complaint at ¶171). Judge Foti has refused to acknowledge the overwhelming evidence of fabrication of the basis for jurisdiction and instead has aided and abetted DCP&P to use the fraudulent basis to assert unlawful jurisdiction over D.M. and to frustrate the Testamentary Guardianship in which Linda Mazzetti, deceased, named Dennis Mazzetti as Guardian for D.M. (*See* Complaint at ¶172, ¶192).

Plaintiff Dennis Mazzetti's claims in the case of *Mazzetti v.DCP&P*, Docket No.: Docket No.: 2:12-cv-05347-KSH-PS concern the violation of his Civil Rights in connection with his actively seeking to maintain his fundamental rights as a parent to D.M. and the actions of the Defendants in that matter violating those rights and then retaliating against Plaintiff, when Plaintiff sought to appeal a decision terminating his parental rights without any allegations or findings that Dennis Mazzetti ever abused or neglected D.M.  The state proceedings resulted in a situation in which Linda Mazzetti, Dennis Mazzetti's mother and the minor D.M.'s paternal grandmother adopted D.M., but where Dennis Mazzetti had unfettered involvement in the care and upbringing of D.M.—actually moving to a home right across the street so that he could be with and care for D.M. every day. These facts are outlined in paragraphs 25-106 of the Complaint.  In that action, Dennis Mazzetti seeks Civil Rights damages and injunctive relief requiring the Defendants to reform so that the violation of civil liberties which occurred in his matter does not occur against any person in the future.  These issues of law and of fact are currently under consideration after the Third Circuit reinstated the case based on an improperly dismissal under the *Rooker-Feldman* Doctrine. *See Mazzetti v. Wood*, 573 F. App'x 165 (3d Cir. 2014).  The within Complaint is, with the aforementioned background, based on the allegations in paragraphs 107-229 of

the Complaint.   Plaintiff incorporates by reference, paragraphs 107-229 of the Complaint.

Subsequent to the filing of the Complaint in the within matter, which this Court may consider by Judicial Notice, the Presiding Chancery Judge in the Superior Court of New Jersey, Bergen County Vicinage, Ordered that Dennis Mazzetti become a party to the Family Division proceeding, with full rights as a litigant.  Mr. Mazzetti for the first time since his mother's funeral was able to visit with his son and review the subject psychological reports and other reports concerning D.M. in February of 2015.  The Un-Constitutional actions of DCP&P and the Defendants have caused D.M. to be a Ward of the State since September of 2014, and he continues to be a Ward of the State.  The Family Division Court has ordered an independent investigation concerning the best interests of D.M. by a court appointed *guardian ad litem*, but DCP&P and Blake have so far refused to pay for the investigation.

The dismissal of the Title 9 Action confirms Mr. Mazzetti's assertions that DCP&P acted without proper jurisdiction when it seized D.M. (Caseworker Kimberly Roberts, has been charged after a finding of probable cause by the Elmwood Park Presiding Municipal Judge with Assault and Child Endangerment in connection with the taking, and those charges are currently under review by the Bergen County Prosecutor's Office). (*See* Complaint at ¶174).  The only lawful

proceeding is the action pending for Testamentary Guardianship pending and filed by Dennis Mazzetti in the Superior Court of the State of New Jersey, Chancery Division, Probate Part, *In the Matter of Linda Mazzetti*, Docket No.: P-404-14, Bergen County Vicinage. (*See* Complaint at ¶190).

The actions of Judge Foti and DCP&P therefore, constitutes a blatant action to violate Article IV, Section of the Constitution for the United States of America, which states that the United States shall guarantee to every state in this union a republican form of government . . . . (*See* Complaint at ¶216).  The actions of Governor Christie, Judge Mizdol, Retired Judge Long, Judge Foti, Prosecutor Molinelli and DCP&P demonstrate beyond any reasonable doubt, that in the State of New Jersey, DCP&P has been ceded *Parens Patriae*  authority which no State calling itself a Republic can endure, and DCP&P is therefore an Un-Constitutional threat to every family in State of New Jersey and all the individual liberties recognized as to the People in the Constitution for the United States of America. (*See* Complaint at ¶217).  In fact, the only unfit parent in this matter is DCP&P itself whom, as Guardian of D.M., has caused him to be placed on a harmful drug, to do poorly in school and to be placed at risk of being returned to the custody of his biological mother, who is the only parent of D.M. that has been substantiated by DCP&P of placing D.M. at risk of child abuse. These actions by DCP&P are only explained by the fact that it is retaliating against Dennis Mazzetti for his

ongoing Civil Rights action against it.   The Defendants' actions are clearly violative of the Constitution.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to F.R.C.P. 12(b)(6), the Complaint will not be dismissed where the Complaint meets the requirements of  "Federal Rule of Civil Procedure 8(a)(2) [which] requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' . . . .  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations omitted).

"Where a defendant's 12(b)(1) motion facially attacks a complaint, the court must take all allegations in the complaint as true."  *See Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC*, CIV.A. 12-1304, 2012 WL 4932040 (E.D. Pa. Oct. 17, 2012)[quoting *Mortensen v. First Fed. Sav. & Loan* Ass'n, 549 F.2d 884, 891 (3d Cir.1977)].   A "plaintiff may be prejudiced if what is, in essence, a Rule

12(b)(6) challenge to the complaint is treated as a Rule 12(b)(1) motion." *See Marlee Electronics Corp. v. Eclectic Technologies Corp.*, CIV. A. 90-5536, 1993 WL 30081 (E.D. Pa. Feb. 5, 1993) (citations omitted).

"The standards of review under Rule 12(b)(1) and Rule 12(b)(6) are different. A federal question may be dismissed for lack of subject matter jurisdiction, but only if it is "'made solely for the purpose of obtaining jurisdiction,' " or is "'wholly insubstantial and frivolous.'" This test does not permit a court "to prejudge the facts alleged in the complaint, however, for a court may dismiss for lack of jurisdiction only if claims are 'insubstantial on their face.'" *See Marlee Electronics Corp. v. Eclectic Technologies Corp.*, 1993 WL 30081 (citations omitted).

"The standard governing a Rule 12(b)(6) motion to dismiss for failure to state a claim is not as constrained as the Rule 12(b)(1) standard of review just described. A federal claim being reviewed under Rule 12(b)(6) does not have to be "wholly insubstantial" to be dismissed. "'The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion.'" *See id.* (citations omitted). The Plaintiff, in his complaint, has clearly stated facts against the Defendants which support his claims and has met the above standards.

9

## LEGAL ARGUMENT

### I. The *Rooker-Feldman* Doctrine is Inapplicable to the Complaint in this Case

As set forth in the Plaintiff Dennis Mazzetti's Complaint, Dennis Mazzetti is not challenging the termination of his parental rights in this Court, but in fact asserts allegations of constitutional civil rights violations against the Defendants based on their extra-judicial, ministerial conduct, substantive due process violations and violations of due process without proper jurisdiction. A District Court's analysis of the *Rooker-Feldman* Doctrine under the framework of *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010) requires the Court to consider the following four factors:

   (1)  the federal plaintiff lost in state court;
   (2)  the plaintiff    "complain[s] of injuries caused by [the] state-court judgments";
   (3)  those judgments were rendered before the federal suit was filed;
   (4)  the plaintiff is inviting the district court to review and reject the state judgments.

*See Great Western Mining & Mineral Co.*, 615 at 166.

The Complaint alleges injuries caused by the Defendants themselves, not any injury caused by State Court Judgments. As the Third Circuit has held in applying the *Great Western* case to Civil Rights actions involving Child Protective Services, where the "the injury [the parent] claims is likewise traceable to [state

10

defendants' actions], as opposed to the state court orders those actions allegedly caused, we reject [the] contention that the *Rooker–Feldman* doctrine precludes federal subject matter jurisdiction . . . . *See B.S. v. Somerset Cnty*, 704 F.3d 250, 260 (3d Cir. 2013).

> We concluded that a federal claim alleging that the defendants conspired to engineer the plaintiff's loss in state court proceedings was not barred by *Rooker–Feldman* because it did not "assert injury caused by state-court judgments and seek review and rejection of those judgments[.]"

*See B.S. v. Somerset County*, 704 F.3d 250, 260 (C.A.3 (Pa.),2013). A part of the claims in Plaintiff Dennis Mazzetti's Complaint concern the Defendants' conspiracy to deny the Plaintiff and D.M.'s Civil Rights, first for the purposes of preventing Linda Mazzetti from using Dennis Mazzetti as a caregiver for D.M., and then for the purposes of preventing the implementation of the Testamentary Guardianship over Dennis Mazzetti for D.M.

"When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 1526, 161 L. Ed. 2d 454 (2005).

> Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is

11

jurisdiction and state law determines whether the defendant prevails under principles of preclusion

*See Exxon Mobil Corp.*, 544 U.S. at 293, 125 S. Ct. at 1527, 161 L. Ed. 2d 454

[cited with approval by *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159].

Furthermore, the Supreme Court has cautioned that *Rooker–Feldman* is a "narrow  doctrine." *See Lance v. Dennis*, 546 U.S. 459, 464 (2006); *see also FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996) [citing *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995)].  The District Court case of *Melendez v. Shack*, CIV.A. 12-1925 JLL, 2013 WL 3873255 (D.N.J. July 24, 2013), **which cites *Great Western Mining*,** is also instructive.

> **Third Circuit explains that "[t]he critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.' " *Great Western Mining,* 615 F.3d at 167 (quoting *Hoblock v. Albany Cnty. Board of Elections,* 422 F.3d 77, 88 (3d Cir.2005)). <u>Stated another way, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Id.* Here, Plaintiffs' injuries were not "caused by" the state proceedings, but the egregious conduct of DYFS employees thereafter.</u> *Id.* ("When, however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *RookerFeldman* is not a bar to federal jurisdiction."); *Dukes v. Lancer Ins. Co.,* 390 F. App'x. 159, 161–62 (3d Cir.2010).

*See Melendez v. Shack*, CIV.A. 12-1925 JLL, 2013 WL 3873255 (D.N.J. July 24, 2013) (Emphasis Added).  Likewise, in the within matter, the Plaintiff's claims were not caused by the state proceedings, but by the "egregious conduct of the DYFS [now DCP&P] employees".

## II. The *Younger Abstention* Doctrine is Inapplicable to the Complaint in this Case

The Chancery Division, Family Part in the Superior Court of New Jersey is an inadequate forum for the assertion of 42 U.S.C. §1983 claims, and therefore the federal courts are the only jurisdiction capable of protecting the Plaintiff's civil rights prior to final judgments in the Family Part.  Therefore, the District Court must not abstain because there is no other adequate forum for the causes of action asserted in the Plaintiff's Complaint.  *See As in the case of People United for Children, Inc.*, 108 F. Supp. 2d 275 (S.D.N.Y. 2003); *see also Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S. Ct. 2206, 2215, 119 L. Ed. 2d 468 (1992).  In fact, nowhere do the Defendants assert how their claims could be adequately addressed by the Family Part Courts in New Jersey concerning these matters.  In fact, Plaintiff asserts that the Family Part has no jurisdiction over Plaintiff or D.M., yet the Family Part has refused to hear a motion to dismiss the case for lack of

jurisdiction, leaving no Order to appeal from.   The *Younger* Abstention Doctrine is to be applied only in exceptional circumstances, and nothing about the within Complaint falls within those circumstances.

> "[O]nly exceptional circumstances," we reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." *Ibid.* Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings. First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions. See *ibid.* Second, certain "civil enforcement proceedings" warranted abstention. *Ibid.* (citing, *e.g., Huffman,* 420 U.S., at 604, 95 S.Ct. 1200). Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S., at 368, 109 S.Ct. 2506 (citing *Juidice v. Vail,* 430 U.S. 327, 336, n. 12, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). We have not applied *Younger* outside these three "exceptional" categories, and today hold, in accord with *NOPSI,* that they define *Younger* 's scope.

*See Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013).

Defendants reliance on *Moore v. Simms*, 442 U.S. 415, 435 (1979) is misplaced, and cases since then have demonstrated that the application of the *Younger* Abstention Doctrine to Civil Rights Actions to reform state agencies in Child Protective Services matters is not applicable where there is no adequate remedy in the State Court proceeding.

**Defendants' reliance on this language in *Moore* is flawed for several reasons. First, Defendants overlook a later clarification in *Moore,* which states that "the only pertinent inquiry is whether the state proceedings afford an *adequate* opportunity to raise the constitutional claims." *Id.* at**

430, 99 S.Ct. 2371. (emphasis added). **Second, *Moore* was decided before *Middlesex,* and *Middlesex* repeatedly observes that the state forum must present an "*adequate* opportunity" to present the federal claims.[3] *See Middlesex County Ethics Committee,* 457 U.S. at 432, 102 S.Ct. 2515 (emphasis added). Third, several federal courts of appeals interpreting this line of case law have noted that adequacy is, indeed, a central consideration.** For instance, the United States Court of Appeals for the D.C. Circuit explained that courts must consider not only whether it was *158 theoretically possible for the plaintiffs to raise their federal claims in the state proceeding, but also whether the state proceeding provided an "inadequate or inappropriate forum" for pursuing those claims. *LaShawn A. v. Kelly,* 990 F.2d 1319, 1322 (D.C.Cir.1993). Holding that the D.C. family court system was an inadequate forum for class-action plaintiffs to present a challenge to the D.C. foster-care system, the court explained that the state proceedings "contemplate issues centering on the care of a child by his or her parent" and, thus, "are not suitable arenas in which to grapple with broad issues external to the parent-child relationship." *Id.* at 1322–23 (citations and quotation marks omitted).

Although not addressing this issue head-on, a Ninth Circuit opinion reflected a similar understanding of *Younger*, holding that abstention was inappropriate where the plaintiffs' claims were "not of a sort that would be presented during the normal course of a state proceeding." *L.H. v. Jamieson,* 643 F.2d 1351, 1354 (9th Cir.1981). The Tenth and Eleventh Circuits, while ultimately affirming the district courts' decisions to abstain under *Younger*, also focused their analyses on whether the state proceeding offered an adequate forum for the plaintiffs to present their federal claims. *See J.B. v. Valdez,* 186 F.3d 1280 (10th Cir.1999); *31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir.2003).

**Like the plaintiff class in *LaShawn A.*, Plaintiffs here also bring a "multifaceted request for broad-based injunctive relief based on the Constitution and on federal ... statutory law." 990 F.2d at 1323. Although Defendants maintain that Plaintiffs in theory can assert federal claims in state juvenile courts, they fail to explain how those courts present an adequate forum for Plaintiffs' claims.** In fact, Massachusetts juvenile courts are tasked with handling difficult questions of family law on an ad-hoc basis, not with crafting broad-based injunctive relief that could potentially revamp an executive agency. They cannot and

15

do not afford Plaintiffs an adequate opportunity to seek relief for the systemic failures alleged in the complaint. Thus, abstention is inappropriate.

*See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 157-58 (D. Mass. 2011). Defendants have not demonstrated how the injunctive relief sought in this Court based on Constitutional and federal statutory law could be obtained in the Superior Court of New Jersey Family Part, and it is respectfully submitted that it cannot. Therefore, *Younger* Abstention does not apply to this matter.

## III. The Defendants are Properly Before this Court in their Individual Capacities and Official Capacities and are Persons for Purposes of 42 U.S.C. §1983

Plaintiff seeks relief against those defendants named in their official capacity to the extent that it is necessary to end DCP&P's continued violation of federal Constitutional law. This relief is permitted by the Eleventh Amendment as against these defendants. *See Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 [1985]; *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 [1908]); *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir.2011).

This type of remedy is necessary in order to ensure the federal interest in the Supremacy Clause of the Constitution of the United States, and these claims must be permitted to proceed. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985).

The Defendants are likewise incorrect about the liability which may attach to public officials in §1983 claims in their individual capacities.  The case of *Hafer v. Melo*, 112 S.Ct. 358 (1991) is illustrative of the liability of public officials in their individual capacity, acting under color of state law.  *Hafer v. Melo* states that the "real party in interest in an official capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation."  *See Hafer*, 112 S.Ct. at 361-362 (citations omitted).  A personal-capacity suit, "on the other hand, seek[s] to impose individual liability upon a government official for actions taken under color of state law".  *See id.* at 362. "Thus, '[o]n the merits, to establish *personal* liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *See id.* (emphasis in original).  In §1983 personal liability suits, defendants may assert "personal immunity defenses such as objectively reasonable reliance on existing law."  *See id.*

In *Hafer*, the §1983 defendant sought to "overcome the distinction between official- and personal-capacity suits by arguing that §1983 liability turns not on the capacity in which the state officials are sued, but on the capacity in which they acted when injuring the plaintiff."  *See id.*  This is precisely the argument that the Defendants are making in the within motion when they state that the Defendants were acting in their capacities as, "State officers/employees".  The United States

17

Supreme Court in *Hafer* specifically found this argument "both unpersuasive as an interpretation of §1983 and foreclosed by our prior decisions."     *See id.* at 363. To hold otherwise would provide the Defendants in the within action with precisely the type of absolute immunity which the Supreme Court refused to extent to their category of §1983 defendants (*see id.* at 363-364, stating that only the "President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions" enjoy "complete protection from suit") and which this Court refused to extend to the defendants under New Jersey law.    Therefore, the Defendants' arguments are contrary to longstanding constitutional and civil rights jurisprudence.

With respect to the Eleventh Amendment Immunity of the New Jersey Division of Child Protection & Permanency under §1983, this issue will turn on whether or not the agency has funding independent of the State Treasury—it is respectfully submitted that DCP&P does have such funding as set forth in the Complaint. *See Johnson v. State of N.J.*, 869 F. Supp. 289, 297-98 (D.N.J. 1994).

## IV.   Defendants Foti and Mizdol are not Entitled to Judicial Immunity because they acted Outside of their Jurisdiction

As set forth *supra*, the Defendants have interfered with a Testamentary Guardianship for which the Superior Court of New Jersey, Chancery Division, Family Part Judges Foti and Mizdol had no jurisdiction.   Under the U.S.

Constitution, the family unit is to be left free of governmental interference absent some "definite and articulable evidence giving rise to a reasonable suspicion that a child [has] been abused or [is] in imminent danger of abuse . . . . If not, neither the state nor its officials have any interest whatsoever 'in protecting children from their parents,' and no further inquiry (i.e., balancing of interests) is necessary." *See Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003); *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125-26 (3d Cir. 1997).  In the within matter, there were never any competent allegation of a reasonable suspicion that D.M. was abused or was in imminent danger of abuse which led to the July 2014 seizure of D.M.

The Defendants DCP&P, Roberts, Zapata, Buckwalter, Foti and Mizdol knew that Linda Mazzetti was terminally ill and had left a Codicil stating that Dennis Mazzetti was to be the Testamentary Guardian of D.M.  A "judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *See Mireles v. Waco*, 502 U.S. 9, 12, 112 S. Ct. 286, 288, 116 L. Ed. 2d 9 (1991).

> In *Bradley*, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: **if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action**; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune

*See Stump v. Sparkman*, 435 U.S. 349, 357, 98 S. Ct. 1099, 1105, 55 L. Ed. 2d 331 (1978). It is respectfully submitted that, in the within matter, Judges Foti and Mizdol, whom were Family Part judges, acted in a manner to defeat the Testamentary Intent of the Testamentary Guardianship, a function of a Probate Judge. Without jurisdiction or any allegations of a reasonable suspicion that D.M. was abused or was in imminent danger of abuse, Judge's Foti and Mizdol made D.M. a Ward of the State of New Jersey, and then used this Un-Constitutional action, without jurisdiction, to obstruct the Testamentary Guardianship in which Dennis Mazzetti was named as the Guardian for D.M. The subject Codicil was filed in Probate Court in October of 2014, and no objection to the Testamentary Guardianship has been filed by any party, yet the continued Orders of the Family Part Judges have left D.M. a Ward of the State of New Jersey, with no legitimate purpose other than the prevention of the implementation of the Testamentary Guardianship, which is a matter for the Probate Court. Plaintiff, therefore, has states a *prima facie* claim against Judges Foti and Mizdol that they acted without jurisdiction and therefore are not entitled to absolute judicial immunity.

## V. Defendant Virginia Long is Not Entitled to Immunity from a §1983 Action based on a New Jersey Court Rule

Defendants cite no case in which Rule 2:15-22 of the Rules Governing the Courts of the State of New Jersey could be used as immunity from a §1983 Civil Rights Action.  "As a federal statute, section 1983 'is entitled to the protection of the Supremacy Clause, Article VI, of the United States Constitution, which precludes state laws that thwart the purposes of federal legislation.'"  *See Seeward v. Integrity, Inc.*, 357 N.J. Super. 474, 483-484 (App. Div. 2003) [citing *Fucilla v. Layman*, 109 N.J. 319, 331 (1988)].  New Jersey Court Rule 2:15-22 cannot preclude the Plaintiff's Constitutional claims in this case.

## VI.   Prosecutor Molinelli is Not Entitled to Absolute Prosecutorial Immunity

Prosecutor Molinelli is not entitled to Absolute Prosecutorial Immunity to the extent the Complaint calls for injunctive relief in connection with the alleged conspiracy to violate the Plaintiff's rights pursuant to 42 *U.S.C.A.* §1983.

> [P]rosecutors are not immune from suit as to requests for declaratory or injunctive relief. *Supreme Court of Va. v. Consumers Union of the U.S.,* 446 U.S. 719, 736, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Jorden v. National Guard Bureau,* 799 F.2d 99, 110 (3d Cir.1986). Absolute prosecutorial immunity thus does not bar Blakeney's claims for declaratory and injunctive relief against Marisco.

21

*See Blakeney v. Marsico*, 340 F. App'x 778, 779 (3d Cir. 2009).  In addition, Prosecutor Molinelli is not entitled to Absolute Prosecutorial Immunity to the extent his actions are administrative.

> Evidencing the fact-based nature of the prosecutorial immunity inquiry, the Court parsed Reed's actions into two categories: (1) appearing as a lawyer for the state in a probable cause hearing to obtain a search warrant, and (2) providing legal advice to the police. *Id.* at 487, 492, 111 S.Ct. 1934. As to the former, Reed enjoyed absolute immunity. *Id.* at 487, 111 S.Ct. 1934. As to the latter, however, the Court held: "[w]e do not believe ... that advising the police in the investigative phase of a criminal case ... qualifie [d] [Reed] for absolute immunity." *Id.* at 493, 111 S.Ct. 1934. Extending immunity to this activity would eviscerate the rule that a prosecutor's administrative and investigatory acts are not absolutely immune because "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute." *Id.* at 495, 111 S.Ct. 1934.

*See Odd v. Malone*, 538 F.3d 202, 209 (3d Cir. 2008).  In the within matter, it is alleged that the Prosecutor's actions have interfered with the investigation of the Defendant Kimberly Roberts, for whom the Elmwood Municipal Court has already found probable cause to proceed criminally for assault and child endanger.  The Prosecutor has not met his burden to demonstrate absolute immunity at the motion to dismiss stage of litigation.

## VII.  Defendants Roberts, Zapata, and Buckwalter are not Protected by Absolute Immunity

Defendants Roberts, Zapata and Buckwalter would only have a basis to assert Absolute Immunity to the extent that their actions are associated with a

legitimate judicial process.   First, as set forth above, the Family Part is acting

without proper jurisdiction.   Most importantly, the actions for which these

defendants are liable under §1983 concern the decision and action to seize D.M.

without a Constitutional Basis for the purpose of making him a Ward of the State

of New Jersey in order to defeat the Testamentary Guardianship. As set forth

*supra*, Linda Mazzetti had an absolute right as a parent to leave D.M. with Dennis

Mazzetti as a caretaker while she was in the hospital, and then to have him

appointed as Testamentary Guardian should she pass away.   Roberts, Zapata and

Buckwalter all recognized this when they acknowledged there were no concerns of

abuse and neglect while D.M. was in Dennis Mazzetti's care in the days leading up

to the Un-Constitutional seizure of D.M.   The Un-Constitutional seizure of D.M.

was orchestrated by these Defendants without the benefit of a court order, and in

such an excessively forceful manner that Roberts has been charged with criminal

assault and child endangerment by the Elmwood Park Municipal Court.   Absolute

Immunity only attaches were the actions of DCP&P caseworkers and Deputy

Attorneys General are acting in a legitimate judicial prosecutorial role, which was

not the case here.   *See B.S. v. Somerset Cnty., 704 F.3d 250, 266 (3d Cir. 2013);*

*Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 496 (3d Cir. 1997)*;

*Odd v. Malone*, 538 F.3d 202, 209 (3d Cir. 2008).

## VIII.  Defendants are not Protected by Qualified Immunity

The Defendants are not entitled to Qualified Immunity, as they have participated in a Conspiracy to violate the clearly established Constitutional Rights of the Plaintiff and D.M.  A qualified immunity analysis focuses on two inquiries: (1) whether the conduct in question violated a constitutional right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2000); *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).  In the within matter, the Defendants, with no reasonable cause, seized D.M. from the Mazzetti family and have engaged in a course of conduct to defeat the Testamentary Guardianship of Dennis Mazzetti for D.M., with no legitimate legal authority.  Plaintiff's Complaint outlines this conduct in excruciating detail, and the Defendants assertion that the Plaintiff has alleged "unadorned, the-defendant unlawfully-harmed-me" accusations (see page 36 of Defendants' brief) demonstrates that the Defendants are engaging in a willful, wanton and malicious Un-Constitutional intrusion into the family unit in New Jersey and are actively seeking to conceal their unlawful conspiracy.

Under the United States Constitution, the family unit is to be left free of governmental interference absent some "definite and articulable evidence giving rise to a reasonable suspicion that a child [has] been abused or [is] in imminent danger of abuse . . . . If not, neither the state nor its officials have any interest

24

whatsoever 'in protecting children from their parents,' and no further inquiry (i.e., balancing of interests) is necessary." *See Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003); *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125-26 (3d Cir. 1997).    Defendants acted to seize D.M. with no such evidence, and no such articulable evidence or reasonable suspicion exists with respect to Linda Mazzetti, Dennis Mazzetti, D.M. or their family.    "Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power", which is actionable in United States District Court under 42 *U.S.C.* §1983 against those persons who make such intrusions. *See Croft*, 103 F.3d at 1125-26; *see also Mammaro v. The New Jersey Div. of Child Permanency & Prot.*, No. CIV.A. 13-6483 FLW, 2015 WL 225999 (D.N.J. Jan. 16, 2015).    The Defendants actions in this case are precisely the type of "arbitrary abuse of power" which is actionable under 42 *U.S.C.* §1983.

The Defendants' conduct as alleged in the Complaint is not entitled to absolute immunity because the actions were not pursuant to court orders or directly in connection with court proceedings.   "[O]nce the court [in a child protective services case] makes a decision ratifying the recommendations of the state agency (*e.g.,* placement in foster care, need for further medical evaluation, etc.), the state

agency and its employees are no longer acting as an arm of the court" and are not entitled to absolute quasi-judicial immunity. *See State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev. 609, 619-20, 55 P.3d 420, 426-27 (2002). Immunity does not attach, for example, in the creation of a caseworker's case plan. *See Olson v. Ramsey County*, 509 N.W.2d 368, 371 (Minn. 1993). This is because, as the Supreme Court of the United States stated in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981):

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*See Rinderer v. Delaware County Children & Youth Services*, 703 F. Supp. 358, 361 (E.D. Pa. 1987).

Where a child protective services worker "has the power to affect unilaterally the rights and interests of others, and exercises that power unchecked by adversarial proceedings, the official should not be absolutely immune from suit." *See Fanning v. Montgomery County Children & Youth Services*, 702 F. Supp. 1184, 1188 (E.D. Pa. 1988). Accordingly, Defendants cannot claim absolute immunity for a decision to remove children from a parents' custody made prior to the institution of court proceedings, or to remove the child without a Court Order during the proceedings. *See Fanning*, 702 F. Supp. at 1188. Therefore, the

26

decision of the Defendants in this case to remove D.M. from his family unit, as an emergent removal (also without a court order), are not protected by absolute immunity.

Quasi-judicial absolute immunity will also not be available to the Defendants where their conduct in connection with child protective services proceedings "was not the evaluation and presentation of evidence . . . was not controlling the testimony of [a] witness  . . . was not intimately associated with the judicial process . . . [was not] the function of an advocate  . . .  [or] was not a recommendation to the . . . court." *See Holloway v. Brush*, 220 F.3d 767, 779 (6th Cir. 2000)(finding no immunity for caseworker whose actions resulted in a denial of a parent's full rights to be heard in court).  Absolute immunity is also not available to them to the extent that their decisions revolve around whether to continue an investigation, or to open one.  *See Achterhof v. Selvaggio,* 886 F.2d 826, 830 (6th Cir.1989). For example, "telling [a parent] that her rights had been severed when they had not yet been, and withholding information that would have enabled [a parent] to raise her rights in court before her rights were severed", are not actions which are immune from a civil rights lawsuit.  *See Holloway v. Brush*, 220 F.3d 767, 774-77 (6th Cir. 2000); *cf Pittman v. Cuyahoga County Dept. of Children & Family Services*, 1:05-CV-00541, 2009 WL 2567776 (N.D. Ohio Aug. 17, 2009) rev'd in part, 640 F.3d 716 (6th Cir. 2011).

This Court should also take into account that the Third Circuit has recently recognized the "existence of a stand-alone section 1983 Fourteenth Amendment claim predicated on the use of fabricated evidence" in the criminal context, and that the Plaintiff asserts in this case that the Defendants fabricated evidence against the Plaintiff.    *See Halsey v. Pfeiffer*, 750 F.3d 273, 295 (C.A.3 (N.J.),2014). DCP&P instituted actions which could ultimately result in the termination of parental rights, as in the within matter, are considered to be "quasi criminal" in New Jersey.  *See In re Guardianship of Dotson*, 72 N.J. 112, 367 A.2d 1160 (1976).  Furthermore:

> While child protective services workers enjoy the absolute quasi-prosecutorial and quasi-judicial immunities discussed above, "they are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." *Beltran v. Santa Clara Cnty.,* 514 F.3d 906, 908 (9th Cir.2008). Neither may they avail themselves of qualified immunity for such conduct because the "right to be free from judicial deception in securing [an order removing a child from the home] was clearly established" before the events at issue here. *Greene v. Camreta,* 588 F.3d 1011, 1034 (9th Cir.2009), *vacated in part, —— U.S. ——,* 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011).

*See DeBiaso v. Spitz*, 957 F. Supp. 2d 1213, 1223 (D. Or. 2013).

In considering the immunity issues in this case the Court must take heed that the Third Circuit case of *Ernst v. Child & Youth Services,* 108 F.3d 486, 494 (3d Cir.), *cert. denied,* 522 U.S. 850, 118 S.Ct. 139, 139 L.Ed.2d 87 (1997) only

provides for immunity for child protective services workers to the extent that "their actions on behalf of the state in preparing for, initiating, and prosecuting dependency hearings" to the extent for "the formulation and presentation of recommendations to the court in the course of such proceedings."   *See Miller v. City of Philadelphia*, 174 F.3d 368, 376, fn.6 (3d Cir. 1999).  The *Ernst* Court stated that, "We emphasize that our holding concerns only actions taken by child welfare workers in the context of dependency proceedings. Like our sister courts in the Fifth, Sixth, Seventh, and Tenth Circuits, we would be unwilling to accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding."  *See Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 497, fn. 7 (3d Cir. 1997). Absolute immunity does not extend to investigative acts of the Defendants, or to administrative acts.  *See Miller*, 174 F.3d at 376, fn. 6.

"The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *See Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123, 1125 (3d Cir. 1997).

Each one of the Plaintiff's causes of action in the Complaint, by way of the Civil Rights Acts, state a claim for which relief can be granted due to the

Defendants' unconstitutional interference with the family unit based on a ministerial or extra-judicial act of the Defendants which was violative of known constitutional rights. A "state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *See Croft v. Westmoreland County Children & Youth Services*, 103 F.3d at 1125. "In other words, decision-making by a social worker that is so clearly arbitrary, as was that in *Croft,* can properly be said to "shock the conscience" and, therefore, violates the substantive due process rights of the affected family" and are not entitled to immunity. *See Miller*, 174 F.3d at 376, fn. 6.

For purposes of determining whether a defendant understood that they were violating clearly established principals of law for purposes of applying Qualified Immunity, the Third Circuit takes "a fairly expansive view of what law is clearly established, stating 'it is not necessary that there have been a previous precedent directly in point.'" *See Patterson v. Armstrong County Children & Youth Services*, 141 F. Supp. 2d 512, 531-42 (W.D. Pa. 2001)[holding that law outside the Third Circuit could establish the necessary principals, and citing *Good v. Dauphin County Soc. Services for Children & Youth*, 891 F.2d 1087, 1091 (3d Cir. 1989); *Doe v. County of Centre, Pennsylvania,* 242 F.3d 437, 454 (3d Cir.2001)]. The right to a prompt "as soon as practicable" post deprivation (of a protected liberty

30

interest) hearing was most definitely established before November 6, 1998.  *See id.*
[citing *Goss.* The Court of Appeals for the Fourth Circuit in *Jordan v. Jackson,* 15
F.3d 333, 349 (4th Cir.1994)].

In the within action the Complaint asserts, *inter alia*, that the Defendants
improperly investigated and fabricated evidence against the Plaintiff, then took
D.M. on an emergent removal in violation of his Civil Rights, without a Court
Order.  The Defendants further unconstitutionally interfered with the family unit
by way of their extra-judicial and ministerial acts, and then conducted their
investigation of the Plaintiff through knowing retaliation against him in the face of
his asserting his due process rights.  The Defendants, therefore, are not Immune
from a Civil Rights Lawsuit in the within matter under the allegations set forth in
Plaintiff's Complaint.

## IX.    Defendants are Liable under the Americans with Disabilities Act

Plaintiff has demonstrated that the Defendants are discriminating against
him due to his chronic hernia condition and not providing him with any services to
assist him in the caring for D.M.  These Defendants may be held liable in their
official capacities for injunctive relief.  To establish a violation of Title II of the
Americans with Disabilities Act a plaintiff must show: (1) that he or she is
qualified individual with disability, (2) that he or she was either excluded from

31

participation in or denied benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability.  *See* 42 U.S.C. § 12131, *et seq*.; *Tyler v City of Manhattan*, 849 F. Supp. 1429 (D.C. Kan. 1994).   As set forth *supra*, Plaintiff has a chronic hernia condition, Defendants have failed to provide Plaintiff with parenting services provided to others similarly situated without disabilities, and the exclusion was due to Plaintiff's disability.   The Defendants assertion that no individual liability attaches is based on a misreading of and failure to research the applicable case law.

> The State of New Jersey argues that footnote 9 is inapplicable to Title II of the ADA because Title II applies to public entities and because it is "well established that individuals can not be liable for Title II violations." For this proposition, the *329 State cites to *Doe v. DYFS,* 148 F.Supp.2d 462 (D.N.J.2001), *Moyer v. Conti,* 2000 WL 1478791 (E.D.Pa. Oct.5, 2000), this Court's opinion in *Calloway v. Boro of Glassboro Dept. of Police,* 89 F.Supp.2d 543 (D.N.J.2000), and the Seventh Circuit's opinion in *Walker v. Snyder,* 213 F.3d 344 (7th Cir.2000). The State's argument is unavailing because *Calloway* and *Doe* do not stand for the proposition that the State asserts. Moreover, *Walker* is not controlling authority in this Circuit, and *Moyer* was decided before the Supreme Court held that *Ex parte Young* was available to individuals suing a State for violations of Title I.

> In *Calloway,* the plaintiff had sued police officers *in their individual capacities* for violations of Title II and the Rehabilitation Act. Thus, while this Court held in *Calloway* that individuals may not be liable for violations of Title II and the Rehabilitation Act, it did not hold that individuals sued *in their official capacities* were likewise protected from suit.

*See Gregory v. Admin. Office of the Courts of State of New Jersey*, 168 F. Supp. 2d

319, 328-29 (D.N.J. 2001).

## X. Defendants have No Immunity from Injunctive Relief

The Plaintiff Dennis Mazzetti's Complaint asserts a claim for Injunctive

Relief in accordance with Article III of the Constitution for the United State of

America.  As stated in the Complaint, the Defendants have a pattern and practice

of violating the rights of the People of the United States of America and have, and

continue, to violate Plaintiff's First Amendment Rights of Freedom of Association.

> It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968); *Jenkins v. McKeithen,* 395 U.S. 411, 421–425, 89 S.Ct. 1843, 1848–1850, 23 L.Ed.2d 404 (1969) (opinion of MARSHALL, J.). Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Abstract injury is not enough. The plaintiff must *102 show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." See, *e.g., Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–565, 91 L.Ed. 754 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

*See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (U.S.,1983).  As set forth in the Plaintiff's Complaint, the Defendants have shown a pattern of conspiring against the rights of parents in the State of New Jersey and then retaliating against those parents when they assert their Constitutional Rights.

    After Plaintiff's mother, Linda Mazzetti, adopted D.M., the Defendants still continued to harass Plaintiff and interfere with his First Amendment Rights of Freedom of Association with his son, D.M., as is confirmed by active and judicially noticeable court proceedings in the Superior Court of New Jersey, Bergen County Vicinage, of which the DCP&P and Plaintiff are parties.

> Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991); *see also Funk v. Commissioner,* 163 F.2d 796, 800–01 (3d Cir.1947) (whether a court may judicially notice other proceedings depends on what the court is *427 asked to notice and on the circumstances of the instant case).[7]

*See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (C.A.3 (N.J.),1999).  On July 1, 2014, DCP&P again Un-Constitutionally intervened in the Mazzetti family's lives and conducted an emergency taking of D.M., alleging, *inter alia*, that Linda Mazzetti was incapable of caring for D.M. due to a hospitalization.  The caseworker involved in the emergency taking acted with such malice and force that she has been charged with

Criminal Assault and Child Endangerment by the Elmwood Park, New Jersey Municipal Court.  DCP&P, again, has placed D.M. with a stranger foster family. DCP&P again, without any cause or allegations against Dennis Mazzetti, who is D.M.'s biological father, a caretaker, his psychological father and his legal sibling, has improperly used its position to deny communication between Dennis Mazzetti and D.M.

On September 13, 2014, Linda Mazzetti passed away.  When Dennis Mazzetti asserted to DCP&P that it should make arrangements for D.M. to be present for the wake, funeral, burial and repast for Linda Mazzetti on Tuesday, September 15, 2014, DCP&P refused, and only agreed to allow D.M. to be present for one hour of the wake and the funeral—then immediately to be transported back to the foster home, without any opportunity to spend with his family to be comforted and to reflect on the passing of his legal grandmother and adoptive mother.  Not only did DCP&P refuse Dennis Mazzetti's request, DCP&P refused to recognize Dennis Mazzetti's legal and Constitutional Standing under the First Amendment to request that DCP&P arrange that D.M. associate with his family for the days services for Linda Mazzetti.  Dennis Mazzetti was forced to apply for an emergent order, and then to apply to the Appellate Division of the Superior Court of New Jersey on an emergent basis to obtain that Order—so that D.M. could spend the day with his family, against the wishes of DCP&P.  .

It is also worth noting that, when Plaintiff's Counsel informed a Judge in the Superior Court of New Jersey in a DCP&P proceeding involving D.M. and Dennis Mazzetti this past August that there were concerns about retaliation if DCP&P were to use investigatory powers against Dennis Mazzetti because he has a pending Civil Rights action against DCP&P, the Judge was dismissive and Counsel was told to "call [the judge] when the federal court makes its decision".

If the Plaintiff is without injunctive relief in this case, the DCP&P will continue to repeatedly violate the Plaintiff's Constitutional Rights and those of people similarly situated, and therefore the Plaintiff's injunctive claims are not moot.

> **As the District Court concluded, however, these cases fit comfortably within the established exception to mootness for disputes capable of repetition, yet evading review. See *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)**; *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks and brackets omitted). Both circumstances are present here.

*See Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (U.S.,2007) (emphasis added).  In fact, as set forth above, Plaintiff Dennis Mazzetti is once again embroiled in litigation with DCP&P. Plaintiff, therefore, has standing in this case to pursue his Constitutional claims for

injunctive relief against the DCP&P Defendants, as only such injunctive relief will prevent DCP&P's continued Constitutional violations.

### XI.   Plaintiff's Application for a Writ of Habeas Corpus Under 28 U.S.C. §2254 Must be Granted

Contrary to the statement by the Defendants, the within matter is precisely the appropriate case for the issuance of a Writ of Habeas Corpus under 28 U.S.C. §2254. Defendants fail to cite or address the findings of the District Court of N.J. cited to in the Complaint, *Jenicek ex rel. J.J. v. Sorenson Ranch Sch., Utah*, No. CIV. 14-4422 SRC, 2014 WL 7332039, at *2 (D.N.J. Dec. 16, 2014).   First, Dennis Mazzetti is properly proceeding in this matter as a Next of Friend of D.M. D.M. wishes to be released from the custody of the State of New Jersey, as a ward of the State and an orphan with no legal parent or guardian, to his family, but has no representative capable of taking that action for him.  In the current Family Part action, Plaintiff had to file complaints against the Law Guardian in order for him to even properly communicate with his client and the Court is in the process of appointing a *Guardian Ad Litem*.   Neither has the authority to take any action outside of the family court and, because he is a minor, D.M. cannot make an application for a *Writ of Habeas Corpus* himself.

Courts outside this circuit have held, in an analogous situation, that a parent whose rights have been terminated may bring a habeas petition as a "next friend" of their child pursuant to the jurisdictional doctrine of that same name created by the Supreme Court in *Whitmore v. Arkansas,* 495 U.S. 149,

163–64, 110 S.Ct. 1717, 1727–28, 109 L.Ed.2d 135 (1990).*See, e.g., Amerson v. State of Iowa, Dept. of Hum. Svcs. by Palmer,* 59 F.3d 92, 93 n. 3 (8th Cir.1995) (citing *Whitmore* and 28 U.S.C. § 2242); *Cartner v. Davis,* 988 F.Supp.2d 33, 36 (D.D.C.2013) ("A close relative, 'such as a parent, spouse, or sibling, who maintain[s] a close personal relationship with the aggrieved' could qualify as a next friend.") (quoting *Davis v. Austin,* 492 F.Supp. 273, 275 (N.D.Ga.1980)). To establish next friend status, the next friend must show "why [the] real party in interest cannot prosecute [the] habeas petition, that [the] next friend is truly dedicated to best interests of person on whose behalf she litigates, and that she has some significant relationship with [the] real party in interest."*Amerson,* 59 F.3d at 93 n. 3 (discussing *Whitmore* ) (internal quotation marks omitted). Thus, while the Third Circuit has not ruled on whether non-custodial parents may bring actions on behalf of their children, based on this line of analogous cases, the Court will conclude for the sake of argument that Plaintiff could attempt to proceed as a next friend.

*See Jenicek ex rel. J.J. v. Sorenson Ranch Sch., Utah*, No. CIV. 14-4422 SRC, 2014 WL 7332039, at *2 (D.N.J. Dec. 16, 2014).    Furthermore, D.M. is in the custody of the State of New Jersey against his will, pursuant to a Court Order finding him a Ward of the State, and not pursuant to any decision of a legal parent, guardian, or custodian.  Therefore, the type of custody in which D.M. finds himself is precisely the type of custody for which a Writ of Habeas Corpus must issue.

Moreover, even if the Pleading was construed as a habeas petition asserting J.J.'s—as opposed to Plaintiff's—rights, J.J. is not "in custody" as that term is defined by habeas jurisprudence. Federal courts have jurisdiction over a petition only where the petitioner "is 'in custody' in violation of the laws, treaties, or Constitution of the United States."*Barry v. Bergen Cnty. Prob. Dept.,* 128 F.3d 152, 159 (3d Cir.1997)."Incarceration pursuant to a state criminal conviction may be by far the most common and most familiar basis for satisfaction of the 'in custody' requirement in § 2254 cases."*Duncan v. Walker,* 533 U.S. 167, 176, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). **But other state court judgments, such as civil commitments, may satisfy the**

38

**"in custody" requirement as well.** *Id.* at 176 (collecting cases). **In short, the "in custody" requirement "applies where individuals are subject both to 'significant restraints on liberty ... which were not shared by the public generally,' along with 'some type of continuing governmental supervision.'** " *Obado v. New Jersey,* 328 F.3d 716, 717 (3d Cir.2003) (quoting *Barry,* 128 F.3d at 160).

In this case, as explained above, J.J. was not placed at Sorenson as a result of a court order. Rather, he was placed there by his mother, who has sole legal custody over him. The May 30th state court order that Plaintiff challenges merely reaffirmed the mother's right to make therapeutic placement decisions about J.J., and the order did not create any type of continuing governmental supervision. Accordingly, were this Court to construe the Pleading as a habeas petition, the Court would lack subject matter jurisdiction over the petition because J.J. is not "in custody." For this reason, the Court does not perceive any benefit in construing the Pleading in that fashion.

*See Jenicek ex rel. J.J. v. Sorenson Ranch Sch., Utah*, No. CIV. 14-4422 SRC, 2014 WL 7332039, at *3 (D.N.J. Dec. 16, 2014).   D.M.'s continuing illegal custody with DCP&P, against his will, and without any Constitutional basis, is precisely the type of custody for which a Petition of Habeas Corpus must issue.

## XII.  The Plaintiff's Complaint States a Claim under § 1985 and § 1983 Conspiracy

DCP&P Defendants cite *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) for the legal proposition that there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *See Great Western Mining & Mineral Co.*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).   DCP&P Defendants then

39

make the conclusory statement that Plaintiff "does not establish a meeting of the minds to establish a conspiracy." The fact, however, that the Defendants all knew that there was no legal or factual basis to assert jurisdiction over the Plaintiff, and then engaged in knowing retaliatory conduct, demonstrates that the Defendants acted with such bad faith against the Plaintiff on behalf of DCP&P proves a meeting of the minds sufficient for a conspiracy among the Defendants, certainly enough to survive a Rule 12(b)(6) Motion. *Cf. McPherson v. United States*, 392 Fed. Appx. 938, 944 (3d Cir. N.J. 2010).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Defendants' Motion to Dismiss be Denied.

Respectfully submitted,

/S/ Kenneth Rosellini

May 4, 2015                    Kenneth Rosellini