UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| DENNIS MAZZETTI,<br><br>          Plaintiff,<br><br>v.<br><br>NEW JERSEY DIVISION OF<br>CHILD PROTECTION AND<br>PERMANENCY, et al.,<br><br>          Defendants. | HON. KEVIN MCNULTY, U.S.D.J.<br><br><br>     CIVIL ACTION NO.<br>     2:14-cv-08134-KM-MAH |

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND
12(B)(6)

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625-0112
(609)777-4031
 Attorney for Defendants
 New Jersey Division of Child
 Protection and Permanency,
 Christopher Christie, Lisa Von Pier,
 Allison Blake, Bonnie J. Mizdol,
 Margaret Foti, Virginia A. Long, Ellen
 Buckwalter, John L. Molinelli,
 Kimberly Roberts and Erica Zapata

STEPHEN R. TUCKER
DEPUTY ATTORNEY GENERAL
 On the Brief

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................... ii

TABLE OF AUTHORITIES ...................................... iii

ARGUMENT .................................................. 1

        POINT I.............................................. 1

        PLAINTIFF'S COMPLAINT IS BARRED BY THE ROOKER-FELDMAN
                DOCTRINE....................................... 1

        POINT II............................................. 2

        PLAINTIFF'S COMPLAINT IS ALSO BARRED BY THE YOUNGER
                ABSTENTION DOCTRINE........................... 2

        POINT III............................................ 3

        PLAINTIFF'S CLAIMS AGAINST THE STATE DEFENDANTS MUST BE
                DISMISSED BECAUSE STATE AGENCIES AND STATE
                EMPLOYEES IN THEIR OFFICIAL CAPACITIES ARE NOT
                "PERSONS" AMENABLE TO SUIT UNDER 42 U.S.C. §§ 1983,
                1985 or 1986 AND PLAINTIFF'S CLAIMS ARE BARRED BY
                THE ELEVENTH AMENDMENT........................ 3

                A.... Plaintiff's Complaint Against The State
                Defendants Is Barred By The Eleventh
                Amendment................................. 3

                B.. The Division and Individual Defendants In
                Their Official Capacities Are Not "Persons"
                Amenable to Suit Under 42 U.S.C. §§ 1983,
                1985, OR 1986 and Therefore Plaintiff's
                Claims Against State Defendants Must Be
                Dismissed................................. 5

        POINT IV............................................. 5

        THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE STATE
                DEFENDANTS ARE IMMUNE FROM SUIT................ 5

                A. The Doctrine Of Absolute Judicial Immunity
                Bars Any Claims That Plaintiff May Have
                Against Judge Mizdol And Judge Foti........ 5

B....... Justice Long Is Entitled To Absolute quasi-judicial Immunity..................... 7

C....... Prosecutor Molinelli Is Entitled To Absolute Prosecutorial Immunity........... 9

D.. Defendants Roberts, Zapata and Buckwalter and Are Protected By Absolute Quasi-Judicial Immunity From Plaintiff's Claims......... 10

E.. Alternatively, Defendants Are Entitled To Qualified Immunity....................... 11

POINT V.......................................... 11

PLAINTIFF'S ADA CLAIM AGAINST INDIVIDUAL STATE DEFENDANTS IS BARRED AS IMPERMISSIBLE CLAIMS AGAINST AN INDIVIDUAL......................... 11

POINT VI......................................... 12

PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT DENIED MEANINGFUL ACCESS TO ANY PROGRAM, BENEFIT OR SERVICE................... 12

POINT VII........................................ 12

PLAINTIFF'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 MUST BE DENIED............... 12

POINT VIII....................................... 13

PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.. 13

CONCLUSION ...................................... 18

## TABLE OF AUTHORITIES

### Constitutional Provisions

N.J. Const. art. VI, § III.................................. 3, 6

### Cases

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) .................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................... 15, 16

*Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 418 (3d Cir. 2012) ................................................... 15

*B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013) .......... 1

*Briscoe v. Lahue*, 460 U.S. 325 (1983) ........................ 8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......... 14, 16

*Danvers Motor Corp. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) ................................................ 15

*Davis v. Thornburgh*, 903 F.2d 212 (3d Cir.), *cert. denied*, 498 U.S. 970 (1990) ............................................ 17

*Delbridge v. Schaeffer*, 238 N.J. Super. 323 (Law Div. 1989), *aff'd sub nominee A.D. v. Franco*, 297 N.J. Super. 1 (App. Div. 1993), *certif. denied* 135 N.J. 467, *cert. den.* 513 U.S. 832 (1994) ..................................................... 4

*Deutsche Bank Nat'l Trust Co. v. Russo*, 429 N.J. Super. 91 (App. Div. 2012) ............................................... 3, 6

*Deutsche Bank Nat'l Trust Co.*, 429 N.J. Super. at 101 ......... 6

*Ernst v. Child & Youth Servs.*, 108 F.3d 486, 499 (3d. Cir. 1997) ......................................................... 15

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ....................................................... 2

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989) ............................................ 4

*Flast v. Cohen*, 392 U.S. 83 (1968) .......................... 14

*Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir. 1979), *cert. denied*, 453 U.S. 913 (1981) .................................. 9

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) .............................................. 2

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ...................... 8

*In re Estate of Schuhmann*, 125 N.J. Super. 56 (App. Div.), *certif. den.* 63 N.J. 569 (1973) .............................. 6

*Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502

(1982) ................................................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).. 14, 15

*Mammaro v. N.J. Div. of Child Permanency & Prot.*, 2015 U.S.
    Dist. LEXIS 5321 (D.N.J. Jan. 15, 2015) ..................... 4

*Mazzetti v. Wood*, 573 Fed. Appx. 165 (3d Cir. 2014).......... 14

*New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 N.J. 388
    (1990) ..................................................... 4

*Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009)...... 11

*Quintal v. Volk*, 2000 U.S. Dist. LEXIS 13498, at *5 (E.D.Pa.
    Sept. 21, 2000) ............................................ 9

*Saucier v. Katz*, 533 U.S. 194 (2000).......................... 11

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S.
    208, 219-20 (1974) ........................................ 15

*Simmerman v. Corino*, 804 F.Supp. 644 (D.N.J. 1992)............. 4

*United States v. Yazell*, 382 U.S. 341 (1966).................. 13

*Warth v. Seldin*, 422 U.S. 490, 501 (1975).................... 15

## **Statutes**

28 U.S.C. § 2254....................................... 12, 18

28 U.S.C. § 2254(a).................................... 12

42 U.S.C. § 1983....................................... 5

N.J.S.A. 3B:2-2....................................... 7

N.J.S.A. 3B:2-1....................................... 7

## **Rules**

Fed. R. Civ. P. 12(b)(1)............................... 2

**ARGUMENT**

**POINT I**

**PLAINTIFF'S COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE.**

While Plaintiff asserts that he "is not challenging the termination of his parental rights[,]" the plain language of his Complaint fails to support this assertion. (Dkt. No. 18, at 18). In count eight of his Complaint Plaintiff requests the following relief:

> [T]hat Defendants demonstrate lawful custody of D.M. by DYFS and the New Jersey Superior Court, and then, failing to do so, release D.M. to the guardianship of the Plaintiff Dennis Mazzetti.
>
> [Dkt. No. 1, at 58.]

Thus, Plaintiff's Complaint is an attempt to collaterally appeal the New Jersey Superior Court's termination of his parental rights. In opposition, Plaintiff also cites to *B.S. v. Somerset County*, 704 F.3d 250, 260 (3d Cir. 2013). (Dkt. No. 18, at 19). However, Plaintiff fails to address the critical distinction between the claims in *B.S.* and those in the present matter. In *B.S.*, the injury the plaintiff alleged stemmed from the actions of the defendants, rather than the state-court judgment. Whereas in the present matter, the injury Plaintiff is claiming stems directly of the Superior Court judgments.

The injury Plaintiff is claiming is being deprived of his rights to the minor D.M., and the relief he is seeking is the return of D.M. Thus, unlike in *B.S.*, the relief Plaintiff is seeking in the present matter would result rejection of the Superior Court judgment, and is barred by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005). The Third Circuit, quoting a Second Circuit case, has posited one such example of a claim that would be barred by the *Rooker-Feldman* doctrine:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.
>
> [*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166-67 (3d Cir. 2010)]

The example of a claim that would be barred by the *Rooker-Feldman* doctrine posited in *Great Western* is precisely the claim at issue in the present matter. As such, this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1)

## POINT II

**PLAINTIFF'S COMPLAINT IS ALSO BARRED BY THE YOUNGER ABSTENTION DOCTRINE.**

-2-

Plaintiff appears to contend that *Younger* Abstention is inapplicable in the present matter because he would have been unable to obtain injunctive relief in the state court proceeding. However, as set forth in Point IV-A below, the Superior Court of New Jersey is a court of general jurisdiction, empowered to provide both legal and equitable relief. N.J. Const. art. VI, § III; *Deutsche Bank Nat'l Trust Co. v. Russo*, 429 N.J. Super. 91, 101 (App. Div. 2012). Furthermore, as set forth in Point VIII below, the injunctive relief sought by Plaintiff in the present matter is unavailable as he lacks Article III standing. As Plaintiff cannot obtain injunctive relief in this proceeding, and could have obtained injunctive relief in the Superior Court proceeding, *Younger* Abstention is applicable and this matter should be dismissed.

<u>**POINT III**</u>

**PLAINTIFF'S CLAIMS AGAINST THE STATE DEFENDANTS MUST BE DISMISSED BECAUSE STATE AGENCIES AND STATE EMPLOYEES IN THEIR OFFICIAL CAPACITIES ARE NOT "PERSONS" AMENABLE TO SUIT UNDER 42 U.S.C. §§ 1983, 1985 or 1986 AND PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.**

**A. Plaintiff's Complaint Against The State Defendants Is Barred By The Eleventh Amendment.**

Plaintiff contends that the Division of Child Protection & Permanency[1] ("DCP&P") may not be entitled to Eleventh Amendment immunity due to its funding. However, when the analysis pursuant to *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) is performed, it is well established that DCP&P is an arm-of-the-state entitled to Eleventh Amendment Immunity. *Simmerman v. Corino*, 804 F.Supp. 644, 650 (D.N.J. 1992) ("The Division of Youth and Family Services is . . . created by statute and is answerable to other State agencies."); *New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 N.J. 388, 396 (1990) ("DYFS is . . . a supervisory arm of the State."); *Delbridge v. Schaeffer*, 238 N.J. Super. 323, 355-56 (Law Div. 1989), *aff'd sub nominee A.D. v. Franco*, 297 N.J. Super. 1 (App. Div. 1993), *certif. denied* 135 N.J. 467, *cert. den.* 513 U.S. 832 (1994) (concluding that New Jersey Division of Youth and Family Services, as a subdivision of a State Department, is immune from 42 U.S.C. § 1983 claims); *Mammaro v. N.J. Div. of Child Permanency & Prot.*, 2015 U.S. Dist. LEXIS 5321, *17 (D.N.J. Jan. 15, 2015)[2] ("...under Eleventh Amendment sovereign immunity analysis, Plaintiff's federal claims against DYFS and

---

[1] On June 29, 2012, the New Jersey Division of Youth and Family Services was renamed the Division of Child Protection and Permanency. See L. 2012, c. 16, § 20 (amending N.J.S.A. 9:3A-10(b)); *See New Jersey Dept. of Children and Families, Div. of Youth and Family Services v. A.L.*, 213 N.J. 1, 8 fn. 1 (2013).

[2] The defendants' in *Mammaro* are currently appealing the District Court's denial of their motion to dismiss on the basis of qualified immunity. *See* Third Circuit Civ. Action No. 15-1448.

federal claims for monetary damages against DYFS directors must be dismissed...").

**B. The Division and Individual Defendants In Their Official Capacities Are Not "Persons" Amenable to Suit Under 42 U.S.C. §§ 1983, 1985, OR 1986 and Therefore Plaintiff's Claims Against State Defendants Must Be Dismissed.**

Plaintiff does not appear to have addressed Defendants' argument that they are not "persons" amendable to suit under 42 U.S.C. §§ 1983, 1985, or 1986. As such, Defendants rely on their moving papers.

<u>**POINT IV**</u>

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE**
**<u>THE STATE DEFENDANTS ARE IMMUNE FROM SUIT.</u>**

**A. The Doctrine Of Absolute Judicial Immunity Bars Any Claims That Plaintiff May Have Against Judge Mizdol And Judge Foti.**

In opposition to Defendants' motion to dismiss on the grounds of absolute judicial immunity, Plaintiff appears to be contending that Judge Mizdol and Judge Foti acted in the absence of all jurisdiction to "defeat the Testamentary Intent of the Testamentary Guardianship, a function of a Probate Judge." (Dkt. No. 18, at 28).

However, Plaintiff's contention that Judge Mizdol and Judge Foti acted in the absence of all jurisdiction is notably unsupported by citation to any authority regarding the scope of the jurisdiction of judges of the Superior Court. The New Jersey

Constitution provides that the Superior Court has original jurisdiction in the State in all causes of action, and is divided into an Appellate Division, a Law Division, and a Chancery Division, which includes family part. N.J. Const. art. VI, § III; *Deutsche Bank Nat'l Trust Co.*, 429 N.J. Super. at 101. The New Jersey Constitution also provides that the Law Division and Chancery Division may exercise the powers and functions of the other division. N.J. Const. art. VI, § III. While the Chancery Division is separated into Parts, these Parts merely establish a preference as to the appropriate forum for a specific claim, as all judges of the Superior Court have original general jurisdiction in all causes. *See* N.J. Const. art. VI, § III; *see Deutsche Bank Nat'l Trust Co.*, 429 N.J., at 101.

While each county in the State of New Jersey has a Surrogate Court, it is a court of limited and special jurisdiction. *In re Estate of Schuhmann*, 125 N.J. Super. 56, 62 (App. Div.), *certif. den.* 63 N.J. 569 (1973). The Surrogate Court's jurisdiction is purely statutory, and is limited to the probate of wills, the granting of letters of administration, and to certain other statutory functions. *Ibid.* Pursuant to the creation of these courts of limited jurisdiction, the Legislature specifically provided that the creation of those Courts is neither "intended and shall not be so construed as in any way to affect, impair or limit the original general jurisdiction of the Superior Court given to it by the

Constitution." N.J.S.A. 3B:2-1. The Legislature went on to clarify that the Superior Court retains full jurisdiction over "all controversies respecting wills, trusts and estates[.]" N.J.S.A. 3B:2-2.

In the present matter, Plaintiff appears to concede that Judge Mizdol and Judge Foti are judges of the Superior Court of New Jersey. (Dkt. No. 1, at 7-8). As Judges of the Superior Court, Judge Mizdol and Judge Foti enjoy general jurisdiction within the State of New Jersey. Plaintiff contends that Defendants "improperly acted in a manner to defeat the Testamentary Intent of the Testamentary Guardianship, a function of a Probate Judge." (Dkt. No. 18, at 28.) However, Plaintiff has failed to articulate how Defendants could have acted in the absence of all jurisdiction when the New Jersey Constitution empowers them with original jurisdiction, which was reserved to the Superior Court even after the creation of Surrogate Courts. As Plaintiff has failed to articulate how these Defendants could have acted in the absence of all jurisdiction; and his conclusory statements are unsupported by the New Jersey Constitution, Plaintiff's allegation that Judge Mizdol and Judge Foti are not entitled to absolute immunity must fail.

**B. Justice Long Is Entitled To Absolute quasi-judicial Immunity.**

While Plaintiff in opposition to Defendant Long's motion to dismiss correctly notes that New Jersey Court Rule 2:15-22 cannot bar an action pursuant to 42 U.S.C. § 1983, this Rule merely embodies the common-law absolute quasi-judicial immunity to which Justice Long is entitled.

As set forth in Defendants' moving brief, while most officials enjoy only a qualified immunity, absolute immunity is reserved for those performing "special functions" that deserve "absolute protection from damages liability." *Imbler v. Pachtman*, 424 U.S. 409, 268-69 (1976). In conferring absolute immunity, the Court has consistently applied it to officials intimately associated with the judicial process including judges, *Briscoe v. Lahue*, 460 U.S. 325, 334 (1983), and prosecutors *Imbler*, 424 U.S. at 416, 427, 430.

In the present matter, Justice Long is the Chairperson of the Advisory Committee on Judicial Conduct, which is responsible for investigating allegations of unethical conduct on the part of judges in the State of New Jersey. By Plaintiff's own admission, the Advisory Committee determined there was "no basis to charge Judge Mizdol with judicial misconduct." (Dkt. No. 1, at 29). The present case offers the paradigmatic example of why such officials are entitled to absolute immunity. Such immunity is necessary to protect officials in the impartial execution of their duties without fear of retaliation by displeased litigants. Thus, in the

-8-

present matter, Justice Long is entitled to absolute quasi-judicial immunity as embodied in New Jersey Court Rule 2:15-22.

### C. Prosecutor Molinelli Is Entitled To Absolute Prosecutorial Immunity.

Plaintiff in opposition to Defendant Molinelli's motion to dismiss contends that the motion must be denied because Defendant Molinelli may have interfered with the investigation into Defendant Roberts. However, Plaintiff failed to raise this allegation in his Complaint. Plaintiff appears to only makes factual allegations against Defendant Molinelli in paragraphs 15 and 175 of his Complaint, in which he alleges that the prosecutor "has aided and abetted the Defendants by failing to prosecute the Defendant Kimberly Roberts[.]" (Dkt. No. 1, at 15, 32). Thus, based on the plain language of his Complaint, it is apparent that Plaintiff's claims against Prosecutor Molinelli are limited to his failure to prosecute Defendant Roberts. Thus, this claim is barred by absolute prosecutorial immunity because the discretionary decision whether to prosecute is a decision entitled to absolute immunity. *See Quintal v. Volk*, 2000 U.S. Dist. LEXIS 13498, at *5 (E.D.Pa. Sept. 21, 2000) (quoting *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979), *cert. denied*, 453 U.S. 913 (1981)).

### D. Defendants Roberts, Zapata and Buckwalter and Are Protected By Absolute Quasi-Judicial Immunity From Plaintiff's Claims.

Plaintiff does not appear to dispute the substance of Defendants' contention that Defendants Roberts, Zapata, Buckwalter[3] are entitled to absolute quasi-judicial immunity. Rather, he appears to be contending that they are not entitled to absolute quasi-judicial immunity because the Superior Court proceedings in which they acted were not a "legitimate judicial process." (Dkt. No. 18, at 31). However, as established above in Point IV-A, the New Jersey Constitution clearly established the Superior Court as a court of general jurisdiction, and Plaintiff's argument that it was not a "legitimate" proceeding lacks support in the New Jersey Constitution, Statutes, or case authority.

As Plaintiff does not address the merits of Defendants Roberts, Zapata and Buckwalter's argument that they are entitled to absolute quasi-judicial immunity, Defendants rely on their moving papers.

---

[3] While Plaintiff references the Third Circuit's partial remand of the parallel matter on appeal, he neglects to acknowledge that the Third Circuit affirmed the dismissal of Deputy Attorney General Susan M. Slaff in that matter on the grounds of absolute quasi-judicial immunity in accordance with the Supreme Court case of *Briscoe v. Lahue*, 460 U.S. 325, 334 (1983). *See Mazzetti v. Wood*, 573 Fed. Appx. 165, 167 (3d Cir. 2014); (Civ. No. 2:12-cv-05347-KSH-PS, Dkt. No. 43, at 69:9-14). Plaintiff notably does not persist in his claims as to Deputy Attorney General Slaff, but instead has substituted Deputy Attorney General Buckwalter in this matter, despite the Third Circuit's holding that the prior Deputy Attorney General was protected by absolute quasi-judicial immunity.

**E. Alternatively, Defendants Are Entitled To Qualified Immunity.**

In his opposition to Defendants motion to dismiss on the grounds of qualified immunity, Plaintiff has notably failed to articulate how his rights as to the minor D.M. could have been violated, in light of the fact that his rights to D.M. were terminated in a prior proceeding. In light of this, it is also unclear how Defendants could have violated a clearly established right when Plaintiff has none as to D.M. *See Saucier v. Katz*, 533 U.S. 194, 201 (2000); *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815-16 (2009). As Plaintiff fails to address this critical issue, Defendants rely on their moving papers.


## POINT V

### PLAINTIFF'S ADA CLAIM AGAINST INDIVIDUAL STATE DEFENDANTS IS BARRED AS IMPERMISSIBLE CLAIMS AGAINST AN INDIVIDUAL.

Plaintiff does not appear to contend that that his ADA claims against the individual Defendants are viable. Rather, Plaintiff appears to be claiming that his official capacity claims are still viable. However, as set forth below in Point VIII, Plaintiff lacks standing to seek injunctive relief.

## POINT VI

### PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT DENIED MEANINGFUL ACCESS TO ANY PROGRAM, BENEFIT OR SERVICE.

Plaintiff does not appear to have addressed Defendants' argument that they cannot be held liable under the ADA because Plaintiff was not denied meaningful access to any program, benefit or service. As such, Defendants rely on their moving papers.

## POINT VII

### PLAINTIFF'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 MUST BE DENIED.

Plaintiff in opposition to Defendants' motion to dismiss cites to an unpublished District Court case; however, the Supreme Court's decision in *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502 (1982) is controlling on this issue.

In *Lehman*, the Supreme Court considered whether the habeas corpus statute, 28 U.S.C. § 2254(a), conferred jurisdiction on a district court to consider a collateral challenge to proceedings in a state court terminating the plaintiff's parental rights. *Id.* at 503-04. After the plaintiff's parental rights were terminated in a state court proceeding, the plaintiff attempted to obtain a writ of habeas corpus challenging the involuntary termination of her parental rights, and sought to compel to the state to release of the minor children into her custody. *Id.* at 505-06. The Court held

-12-

that the habeas corpus statute did not confer jurisdiction to a district court to consider this type of claim. *Id.* at 515-16. The Court reasoned that federal courts consistently have shown special concern for state interests in the field of family arrangements, and noted the unusually strong interest in finality in child-custody disputes. *Id.* at 511, 513 (*citing United States v. Yazell*, 382 U.S. 341, 352 (1966)).

In the present matter, Plaintiff in count eight of his Complaint requests the following relief from this Court:

> [T]hat Defendants demonstrate lawful custody of D.M. by DYFS and the New Jersey Superior Court, and then, failing to do so, release D.M. to the guardianship of the Plaintiff Dennis Mazzetti.

> [Dkt. No. 1, at 58.]

Plaintiff has not attempted to distinguish the present matter from *Lehman*, and as the relief being sought is identical, *Lehman* is controlling and there cannot be jurisdiction under the habeas corpus statute.

## POINT VIII

### PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.

Plaintiff in opposition to Defendants' motion to dismiss generally states in his Point Ten that "Defendants have No Immunity from Injunctive Relief[.] (Dkt. No. 18, at 41). However, this contention is both unsupported by Article III, and ignores the fact

that on remand in the parallel matter which is still pending, the Third Circuit also instructed the District Court to "consider, under *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983), whether Mazzetti has standing to pursue the injunctive relief he seeks." *Mazzetti v. Wood*, 573 Fed. Appx. 165, 167 n.4 (3d Cir. 2014). As Plaintiff has maintained his demand for injunctive relief in this duplicative matter, Defendants maintain that he lacks standing.

In order for a plaintiff to invoke standing in accordance with Article III of the Constitution, a plaintiff must allege an "actual case or controversy." *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968). The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution, and is a necessary component of a justiciable case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To satisfy the standing requirement, a plaintiff must demonstrate (1) an "injury in fact," meaning "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *In re Schering-Plough Corp.*, 678 F.3d at 244 (*quoting Lujan*, 504 U.S. at 560-61). The burden to establish Article III standing rests squarely on the plaintiff's shoulders. *See Askew v.*

*Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 418 (3d Cir. 2012); *Danvers Motor Corp. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).

The "injury in fact" component requires that the plaintiff "allege a distinct and palpable injury to himself." *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 499 (3d. Cir. 1997) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)). This requirement:

> adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding the grievance.
>
> [*Ernst*, 108 F.3d at 500 (*citing Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 219-20 (1974)).]

An alleged harm that is merely "conjectural or hypothetical" does not satisfy the injury-in-fact requirement for Article III standing. *Lujan*, 504 U.S. at 560. A court must carefully scrutinize a plaintiff's allegations of standing to determine whether they "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Schering Plough Corp.*, 678 F.3d at 243 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely

-15-

consistent with such a right." *Id.* at 244 (alterations and internal quotation marks omitted). Importantly, courts "need not credit a complaint's conclusory statements without reference to its factual context." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (internal quotation marks omitted). In other words, the plaintiff's injury claim must be plausible in light of the circumstances of the case. *See Iqbal*, 556 U.S. at 680.

An individual seeking injunctive relief must show "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *Id.* at 502; *see City of Los Angeles*, 461 U.S. at 105-06. Moreover, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. at 496. In *City of Los Angeles v. Lyons*, the plaintiff sought injunctive relief to bar the City of Los Angeles Police Department from utilizing chokeholds except in situations where the proposed victim reasonably appeared to be threatening the immediate use of deadly force. *Id.* at 98. The Court found that plaintiff did not face a real or immediate threat that he would be subject to the same circumstances again with the Los Angeles Police Department. *Id.* at 105. Therefore he lacked standing to request injunctive relief. *Ibid.*

The Third Circuit has previously considered the standing requirement in the context of a collateral challenge to the termination of parental rights. *See Davis v. Thornburgh*, 903 F.2d 212 (3d Cir.), *cert. denied*, 498 U.S. 970 (1990). In *Davis*, the plaintiff executed a form pursuant to the Pennsylvania Adoption Act, consenting to the adoption of her child. *Id.* at 213. After the putative adoptive parents took custody of the child, the plaintiff attempted to revoke her consent. *Id.* at 214. The putative adoptive parents brought an action in state court under the Pennsylvania Adoption Act seeking to terminate the plaintiff's parental rights to the child. *Id.* at 215. After her rights were involuntarily terminated in that proceeding, the plaintiff filed suit in federal court seeking visitation rights. *Id.* at 215-16. The Third Circuit held that because the plaintiff's rights had been previously terminated, the plaintiff had no interest and regard to the child and thus lacked standing to bring suit. *Id.* at 220.

In the present case, Plaintiff is seeking injunctive relief in the form of an order requiring that an explicit instruction and policy be made requiring employees of the Division of Child Protection and Permanency to refrain from abuse of process. Plaintiff lacks standing to seek this injunctive relief as there is no immediate threat he would be subject to abuse of process. Although Plaintiff's parental rights have been terminated, the future harm depends on the Division improperly seeking to terminate

-17-

Plaintiff's parental rights. Plaintiff's alleged injury is not "real and immediate." As discussed in *City of Los Angeles*, a Plaintiff must show continuing, present adverse effects to establish a case or controversy, and Plaintiff has failed to show any present adverse effects or future harm he may face in order to have standing for injunctive relief.

## CONCLUSION

Based on the foregoing, the State Defendants' motion to dismiss should be granted, and Plaintiff's Complaint and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 should be denied.

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY


By:    s/ Stephen R. Tucker
Stephen R. Tucker
Deputy Attorney General

Dated: May 11, 2015